Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel: 212.309.6000
Fax: 212.309.6001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Sam S. Shaulson**
212.309.6718
sshaulson@MorganLewis.com

November 4, 2010

**VIA ECF**

The Honorable Michael Dolinger
United States Magistrate Judge
United States Courthouse
500 Pearl St.
New York, New York 10007

Re:   *Winfield et al. v.Citibank, N.A., 10 Civ. 7304; Ruiz v. Citibank, N.A., 10 Civ. 5950*

Dear Judge Dolinger:

We write in response to Plaintiffs' November 3, 2010 letter in the above-referenced cases. Despite the extensive case law in support of the two-stage process and the proper timing of the production of a class list, Plaintiffs attempt to rely on a few decisions that have allowed plaintiffs access to a class list before a conditional certification decision has been made. With respect, these decisions not only run contrary to the majority view, but either directly (or rely on cases that) misread the case law, misapply Congressional intent, contain little or no analysis, and/or do not stand for the proposition for which they have been cited.

For example, Plaintiffs' counsel point to *Whitehorn v. Wolfgang's Steakhouse, Inc.*, No. 09-Civ-1148, 2010 WL 2362981 (S.D.N.Y. June 14, 2010), as an example of a case where the court ordered a defendant to produce putative class member information prior to conditional certification. In making this decision, the court in *Whitehorn*, 2010 WL 2362981, at *2, noted that there was a split of authority on the issue, but primarily relied on three cases within the district for the proposition that production would further the broad remedial goals of the FLSA: *Fei v. WestLB AG*, No. 07-Civ-8785, 2008 U.S. Dist. LEXIS 33310 (S.D.N.Y. Apr. 23, 2008), *Flores v. Osaka Health Spa, Inc.*, No. 05-Civ-962, 2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006), and *Morales v. Plantworks, Inc.*, No. 05-Civ-2349, 2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 1, 2006), all of which are also emphasized by Plaintiffs' counsel. These cases not only go against the majority and more reasoned view in the district, as reflected by the cases cited in Citibank's November 3 letter, but they are also based on a misinterpretation of the Supreme Court's decision in *Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989) as encouraging the discovery of identifying information prior to conditional certification.

DB1/65956849



Hon. Michael H. Dolinger
November 4, 2010
Page 2

The Court in *Sperling* addressed the question of "whether, in an ADEA action, district courts may play any role in prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought."[1] 493 U.S. at 169. The Court held "that district courts have *discretion, in appropriate cases*, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Id.* The *Sperling* Court endorsed the production of a class list *only* in connection with the district court's intervention and supervision of the notice to be provided to putative class members. *Id.* at 170 ("The facts and circumstances of this case illustrate the propriety, if not the necessity, for court intervention in the notice process."). In other words, the Court permitted the production of the class list only *after* the conditional determination that the case may proceed as a collective action with court supervised notice.

Nothing in *Sperling* permits the production of the identities and personal contact information of the putative class to plaintiffs' counsel for unsupervised notice or contacts. Indeed, the decision in *Sperling*, empowering the district courts to exercise discretion in appropriate cases to authorize and supervise notice, was designed to avoid the predictable results of the relief requested by Plaintiffs in this case. Specifically, the district court's initial determination of whether the case may proceed as a collective action, before requiring production of a class list and supervised notice to the class, deters the potential for misuse of the class list by plaintiffs' counsel. *Id.* at 171 ("the potential for misuse of the class device, as by misleading communications, may be countered by court-authorized notice").

The Court in *Sperling* also cautioned that the district court's discretion to authorize the production of a class list for purposes of court-supervised notice is not unlimited:

> Our decision does not imply that trial courts have unbridled discretion in managing ADEA actions. Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims. In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.

*Id.* at 174.

Under the approach urged by Plaintiffs, and the cases they cite, the Court has no opportunity to determine -- even at the initial stage – whether this case is an "appropriate" one for the Court to exercise its "discretion" to compel the disclosure of the class list and authorize notice to the class under the Court's supervision. Rather, Plaintiffs claim an entitlement to the class list – for them to use as they wish outside the view of the Court – simply by virtue of having filed a complaint

---

[1]  The ADEA permits plaintiffs to proceed collectively under 29 U.S.C. § 216(b) and, therefore, *Sperling* is applicable to FLSA actions.



Hon. Michael H. Dolinger
November 4, 2010
Page 3

that alleges a collective action. Plaintiffs' request for automatic production of a class list for unlimited and unsupervised contact with and notice to the putative class is inconsistent with *Sperling*'s emphasis on court-supervised notice only in appropriate cases, and the two-step conditional certification process spawned by *Sperling*.

Further, Plaintiffs' request is not supported by the cases they cite. *Morales*, the oldest of the four cases and the one from which the other three decisions sprang, devotes no analysis to the production of the class list, beyond a single sentence stating that production would be appropriate in light of the remedial purpose of the FLSA discussed by *Sperling*. 2006 U.S. Dist. LEXIS 4267, at *7. The court in *Flores*, in turn, devotes little analysis to the appropriateness of producing the class list, but merely states in two sentences that ordering the production of the list would be appropriate in light of the remedial purpose of the FLSA as stated in *Morales*. 2006 U.S. Dist. LEXIS 11387, at *9. The court in *Fei*, in turn, relies on *Sperling*, *Flores*, and *Morales* for its decision, 2008 U.S. Dist. LEXIS 33310, at *5, and *Whitehorn* then relies on all three preceding cases. *Wolfgang*, 2010 WL 2362981, at *2.[2]

This line of authority, based on the conclusion that producing a class list without any evidentiary showing that the class is similarly situated advances the remedial purpose of the FLSA described in *Sperling*, however, is a tower of cards that is easily toppled by an examination of the *Sperling* decision. As previously discussed, the Supreme Court held in *Sperling* that production of class lists should only occur after having determined that this is an "appropriate" case for the use of such power, and only in connection with the dissemination of court-supervised notice to the class. *Sperling*, 493 U.S. at 174. In other words, production is appropriate only after the first step of the two-step process for certification of a collective action. Any order requiring that Citibank produce name and contact information for all Personal Bankers nationwide prior to conditional certification must be done with the tacit acceptance that Plaintiffs will use this information to send unsupervised notice to solicit additional putative class members, which is contrary both to the Supreme Court's decision in *Sperling* and Congressional intent reflected by the legislative history of the FLSA.

Quite simply, the *Whitehorn, Fei, Flores*, and *Morales* decisions all violate the two-step paradigm for managing collective actions, disregard Congressional intent, and are squarely contrary to the reasoning laid out in Judge Cote's decision in *Gold*, Judge Smith and Judge McMahon's decision in *Anglada*, Judge Freeman's decision in *Clarke*[3], Judge Lindsay's decision

---

[2] In *Fei*, the court also suggested that providing the class list to plaintiffs prior to conditional certification would be helpful to Fei in his effort to define the class which was ambiguously defined as "executives, managers, or comparable positions with different titles." 2008 U.S. Dist. LEXIS 3310, at *5-6. There are no similar concerns here since Plaintiffs have defined the class as all "Personal Bankers" and production of a class list will do nothing to clarify such definition.

[3] Magistrate Judge Freeman issued the ruling on the class list in *Clarke* during a conference with the parties. Although the court in *Clarke* did not issue a separate written order embodying this ruling to deny plaintiff's the

**Morgan Lewis**
COUNSELORS AT LAW

Hon. Michael H. Dolinger
November 4, 2010
Page 4

in *Searson*, and the majority of cases around the nation, that providing putative class member contact information to plaintiffs' counsel prior to conditional certification undermines the entire point of the court-supervised notice process. As Judge Cote aptly stated: "*I am not going to give you discovery of the contact information because that is the whole point of whether or not the notice can be provided.*" See Exhibit A to Citibank's November 3, 2010 letter; s*ee also Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 480 (S.D.N.Y. 2008) (rejecting pre-certification discovery of putative FLSA collective action members, holding: "FLSA defendants are not obligated from the inception of a litigation . . . to provide contact information of putative collective action members . . ."); *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545 (E.D. Mich. Apr. 1, 2004) (rejecting demand for discovery of names and addresses of loan officers where plaintiffs failed to meet the "similarly situated" standard); *In re Mortgagors of Temple-Inland Mortgage Corp.*, No. 99-CV-4633, 2001 WL 177181, at *2, n.3 (E.D. Pa. Jan. 24, 2001) (stating that plaintiffs' attorneys cannot use the discovery process as a means to identify prospective class members); *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400-01 (E.D. Tex. 1999) (concluding that courts have a responsibility to "refrain from stirring up unwarranted litigation" and burdening employers with "a frivolous fishing expedition" where plaintiffs failed to meet the "similarly situated" standard) (internal quotations omitted); *Crabtree v. Hayden, Stone Inc.*, 43 F.R.D. 281, 283 (S.D.N.Y. 1967) (stating, in context of pre-certification discovery, that "the purpose of the pre-trial discovery rules . . . is to enable the parties to prepare for trial with respect to their own bona fide existing claims, not to determine whether third parties may have similar claims"). The cases cited in Plaintiffs' brief neither acknowledge nor address the inherent contradiction (recognized by Judge Cote) in ordering class contact information to be produced to plaintiffs in discovery prior to the court addressing whether conditional certification and court-supervised notice is even appropriate.

In addition, many of the cases cited by Plaintiff were very limited in their scope. *Whitehorn*, 2010 WL 2362981, at *2 (wage and hour action on behalf of tipped employees against two New York restaurants) (*see also* 09-01148, Docket No. 1, Complaint ¶ 5); *Flores*, 2006 U.S. Dist. LEXIS 11378, at *3 (overtime action relating to certain spa facilities); *Morales*, 2006 U.S. Dist. LEXIS 4267, at *6 (overtime action relating to "over 20" landscapers). These cases do not support the request in this case – compelling the disclosure of personal identities and contact information for thousands of current and former employees across the nation.

Many of the remaining cases cited by Plaintiffs outside of the Second Circuit do not support Plaintiffs' request for nationwide contact information here -- for example, only permitting the production of names and addresses at the facility where the named plaintiffs were employed, *see Acevedo v. Ace Coffee Bar*, 248 F.R.D. 550, 556 (N.D. Ill. 2008) (limiting production of names and addresses to those at the facility where the named plaintiffs worked); *Hammond v. Lowes' Home Centers, Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003) (permitting production of contact

---

class list, as counsel of record for JPMorgan Chase in that action, I have personal knowledge that the court denied the plaintiff's request for the class list after the submission of numerous letter briefs from the parties.

DB1/65956849



Hon. Michael H. Dolinger
November 4, 2010
Page 5

information of employees at the Shawnee, Kansas store where plaintiffs worked); or involving production of names in only one state based on class claims under Rule 23, rather than a collective action under the FLSA, *see Burkhart-Deal v. CitiFinancial, Inc.*, No. 08-129, 2009 U.S. Dist. LEXIS 52222, at *8-11 (W.D. Pa. June 18, 2009) (discussing production of names of Pennsylvania putative class members in Rule 23 class action); *Wiegele v. FedEx Ground Package Sys.*, No. 06-cv-01330, 2007 U.S. Dist. LEXIS 9444, at *5-7 (S.D. Cal. Feb. 8, 2007) (discussing production of names in a California Rule 23 class action); *Jimenez v. Domino's Pizza*, No. 04-1107, 2006 U.S. Dist. LEXIS 66510, at *5-6 (C.D. Cal. Jan. 11, 2006) (same).

Other courts have refused to compel the disclosure of telephone numbers, finding that there is no legitimate purpose to be served by subjecting individuals who are not parties to the case to telephone calls from plaintiffs' lawyers. *See, e.g., Aguilar v. Complete Landsculpture, Inc.*, No. 3:04-cv-0776-D, 2004 WL 2293842, at *5 (N.D. Tex. Oct. 7, 2004) (granting conditional certification of FLSA claims and ordering production of name and address of putative class members, but denying telephone numbers since "highly personal information about persons who may in fact have no interest in this litigation should not be disclosed on the thin basis that [plaintiff's] counsel desires it.") (internal quotations omitted); *Hill v. R&L Carriers Shared Servs., LLC*, No. 09-1907, 2010 WL 4175958, at *2 (N.D. Cal. Oct. 20, 2010) (after conditional certification, stating that it was "inappropriate to order Defendant to provide the . . . telephone numbers of non-opt-in plaintiffs").

Accordingly, Citibank respectfully requests that the Court deny Plaintiffs' request for the production of the identities and personal contact information for thousands of current and former Personal Bankers nationwide unless and until the Court grants Plaintiffs' conditional certification motion and authorizes notice to putative collective action members.

Respectfully submitted,

Sam S. Shaulson (SS 0460)

cc:   Seth D. Rigrodsky
      Timothy J. MacFall
      Gregory M. Egleston
      Marc I. Gross
      Shaheen Rushd
      Murielle J. Steven Walsh
      D. Maimon Kirschenbaum

DB1/65956849