# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIGNA RUIZ, on behalf of herself and all others similarly situated, | **Civ. No.: 10-cv-5950 (JGK) (THK)** |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| CITIBANK, N.A., | |
| Defendant. | |
| FREDERICK WINFIELD, et al., | **Civ. No: 10-cv-7304 (JGK) (THK)** |
| Plaintiff, | |
| v. | |
| CITIBANK, N.A., | |
| Defendant. | |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AS AN FLSA COLLECTIVE ACTION AND FOR COURT-AUTHORIZED <u>NOTICE TO SIMILARLY SITUATED INDIVIDUALS</u>**

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................ 1

A.   CONDITIONAL CERTIFICATION AS A SECTION 216(b)
     COLLLECTIVE ACTION IS EMINENTLY WARRANTED. ..........................................1

    1.   Plaintiffs Have Shown the Requisite Colorable Basis for the
          Existence of Similarly Situated PBs. ........................................................2

    2.   The Supposed "Individualized Issues" Raised By Defendant Do
          Not Exist, or Do Not Preclude Conditional Class Certification. ...........................3

        a.   Citibank Promulgated Uniform Job Duties for PBs. ...........................3

        b.   Citibank's Nationwide Sales Quotas and Other
               Mandatory  PB Job Duties Required Overtime. ...................................4

        c.   The Threat of Discipline for Underperforming PBs
               Was Uniform, Real and Persistent. ........................................................6

        d.   Defendant's Other Attempts at Creating Differences
               Are Unpersuasive,  and its Attacks on Credibility of
               Witnesses Are Improper. ........................................................................7

    3.   Courts Have Conditionally Certified Classes Where Plaintiffs
          Alleged That Facially Lawful Policies Created an Unlawful *Sub
          Rosa* Policy of Denying Employees Overtime. ....................................................8

    4.   Defendant's Additional Arguments Are Without Merit. ......................................10

    5.   Citibank's Cases Are Distinguishable. ................................................................13

B.   THE SUPREME COURT'S RECENT *WAL-MART* RULING IS
     INAPPLICABLE. .......................................................................................................14

C.   THE PROPOSED NOTICE IS SUBSTANTIVELY PROPER. .......................................14

CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Aguirre v. SBC Communs., Inc.,*
Civ. A. No. H-05-3198, 2007 U.S. Dist. LEXIS 17259
(S.D. Tex. Mar. 12, 2007) ................................................................................................2

*Barrus v. Dick's Sporting Goods,*
465 F. Supp. 2d 224 (W.D.N.Y. 2006) .................................................................1, 8, 12

*Beauperthuy v. 24 Hour Fitness USA, Inc.,*
No. 06-0715 SC, 2008 U.S. Dist. LEXIS 115431
(N.D. Cal. Mar. 24, 2008) ..............................................................................................12

*Brickey v. Dolgencorp, Inc.,*
272 F.R.D. 344 (W.D.N.Y. 2011) ...............................................................................2, 13

*Cohen v. Gershon Lehrman Group,*
686 F. Supp. 2d 317 (S.D.N.Y. 2010) ..............................................................................1

*Cuzco v. Orion Builders, Inc.,*
477 F. Supp. 2d 628 (S.D.N.Y. 2007) ............................................................................12

*Damassia v. Duane Reade, Inc.,*
No. 04 Civ 8819 (GEL), 2006 U.S. Dist. LEXIS 73090
(S.D.N.Y. Oct. 4, 2006) ................................................................................................1, 2

*Davis v. Charoen Pokphand (USA), Inc.,*
303 F. Supp. 2d 1272 (M.D. Ala. 2004) ..........................................................................2

*Diaz v. Electronics Boutique of America, Inc.,*
No. 04-CV-0840E (Sr), 2005 U.S. Dist. LEXIS 30382
(W.D.N.Y. Oct. 13, 2005) ...............................................................................................13

*Eng-Hatcher v. Sprint, Nextel Corp.,*
No. 07 Civ 7350 (BSJ), 2009 U.S. Dist. LEXIS 127262
(S.D.N.Y. Nov. 13, 2009) ................................................................................................13

*Falcon v. Starbucks Corp.,*
580 F. Supp. 2d 528 (S.D. Tex. 2008) ...............................................................9, 11. 12

*Gilbert v. Citigroup*,
   No. 08-0385 SC, 2009 U.S. Dist. LEXIS 18981
   (N.D. Cal. Feb. 18, 2009)....................................................................................9, 10

*Gordon v. Kaleida Health*,
   No. 08-CV-3785, 2009 U.S. Dist. LEXIS 95729
   (W.D.N.Y. Oct. 13, 2009)..........................................................................................12

*Gorey v. Manheim Services Corp.*,
   No. 7:10-CV-1132, 2010 U.S. Dist. LEXIS 141868
   (S.D.N.Y. Nov. 10, 2010) ..........................................................................................15

*Hens v. ClientLogic*,
   No. 05-CV-3815, 2006 U.S. Dist. LEXIS 69021
   (W.D.N.Y. Sept. 22, 2006) ...........................................................................................8

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
   239 F.R.D. 363 (S.D.N.Y. 2007) .................................................................................15

*Kuebel v. Black & Decker, Inc.*,
   No. 10-2273-cv, 2011 U.S. App. LEXIS 9448
   (2d Cir. May 5, 2011) .................................................................................................10

*Levy v. Verizon Information Services*,
   Nos. 06 CV 1583 (NG)(SMG), 2007 U.S. Dist. LEXIS 43223
   (E.D.N.Y. June 11, 2007) ..............................................................................................9

*Morisky v. Public Serv. Electric & Gas Co.*,
   111 F. Supp. 2d 493 (D.N.J. 2000) ...............................................................................2

*Parks v. Dick's Sporting Goods, Inc.*,
   No. 05-CV-6590 (CJS), 2007 U.S. Dist. LEXIS 20949
   (W.D.N.Y Mar. 23, 2007).............................................................................................3

*Pineda v. Jim-Maritime Consultants, Inc.*,
   741 F. Supp. 2d 398 (E.D.N.Y. 2010) ...........................................................................1

*Prizmic v. Armour, Inc.*,
   No. 05 Civ. 2503 (DLI)(MDG), 2006 U.S. Dist. LEXIS 42627
   (E.D.N.Y. June 12, 2006) ..............................................................................................2

*Realite v. Ark Restaurants Corp.*,
   7 F. Supp. 2d 303 (S.D.N.Y. 1998)..............................................................................15

*Rehwaldt v. Electronic Data System Corp.*,
   No. 95 876, 1996 U.S. Dist. LEXIS 22125 (W.D.N.Y. Mar. 28, 1996).............................1

*Robinson v. Metropolitan-North Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001).............................................................................7

*Rubery v. Buth-Na-Bodhaige, Inc.*,
    569 F. Supp. 2d 334 (W.D.N.Y. 2008) ..........................................................3

*Rudd v. T.L. Cannon Corp.*,
    No. 3:10-CV-0591 (TJM)(DEP), 2011 U.S. Dist. LEXIS 21061
    (N.D.N.Y. Jan 4, 2011)...................................................................................15

*Russell v. Ill. Bell Telegraph Co.*,
    721 F. Supp. 2d 804 (N.D. Ill. 2010) ............................................................10

*Scholtisek v. Eldre Corp.*,
    229 F.R.D. 381 (W.D.N.Y. 2005).....................................................................2

*Searson v. Concord Mortg. Corp.*,
    No. CV 07-3909 (DRH)(ARL), 2009 U.S. Dist. LEXIS 88926
    (E.D.N.Y. Aug. 31, 2009)..................................................................................3

*Seever v. Carrols Corp.*,
    528 F. Supp. 2d 159 (W.D.N.Y. 2007) ..........................................................13

*Sexton v. Franklin First Finance, Ltd.*,
    No. 08-CV-04950 (JFB)(ARL), 2009 U.S. Dist. LEXIS 50526
    (E.D.N.Y. June 16, 2009) ..................................................................................3

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316 (DAC), 2006 U.S. Dist. LEXIS 74039
    (S.D.N.Y. Sept. 28, 2006)..................................................................................2

*Vaughan v. Mortg. Source LLC*,
    No. CV 08-4737 (LDW)(AKT),
    2010 U.S. Dist. LEXIS 36615 (E.D.N.Y. Apr. 14, 2010) ...........................8, 12

*Wal-Mart Stores, Inc. v. Dukes*,
    __S. Ct.____, No. 10 277, 2011 U.S. LEXIS 4567 (June 20, 2011) .................14

*Wilks v. Pep Boys*, No. 3:02-0837,
    2006 U.S. Dist. LEXIS 69537 (M.D. Tenn. Sept. 26, 2006),
    *aff'd*, 278 Fed. Appx. 488 (6th Cir. 2008)......................................................12

Plaintiffs respectfully submit this Reply Memorandum in further support of their motion for conditional class certification.

## ARGUMENT

### A.  CONDITIONAL CERTIFICATION AS A SECTION 216(b) COLLLECTIVE ACTION IS EMINENTLY WARRANTED.

As detailed in Plaintiffs' Opening Brief ("Brief" or "Br."), courts apply a lenient standard in assessing whether conditional class certification and authorization of notice are warranted.  Br. at 18-19.  Plaintiffs need only provide a modest showing supportive of the existence of "similarly situated" potential opt-ins.  *Barrus v. Dick's Sporting Goods,* 465 F. Supp. 2d 224, 231 (W.D.N.Y. 2006).

Contrary to Defendant's contention (Def. Br. at 13), Plaintiffs do not need to show they are in fact identical to all the "thousands of current and former PBs."[1]  *See Cohen v. Gershon Lehrman Group*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010).  A court "does not need to evaluate the merits of the claims in order to determine that a definable group of "similarly situated" plaintiffs can exist." *Pineda v. Jim-Mar Consultants, Inc.*, 741 F. Supp. 2d 398, 402 (E.D.N.Y. 2010); *Rehwaldt v. Electronic Data Sys. Corp.*, 1996 U.S. Dist. LEXIS 22125, at *8 (W.D.N.Y. Mar. 28, 1996) (notice should issue '"even if plaintiffs' claims turn out to be meritless, or, in fact, all the plaintiffs turn out not be similarly situated'") (citation omitted).  Citibank further errs in suggesting that evidence is required that each PB "has been a victim of a common unlawful policy."  *See* Def. Br. at 13.  Plaintiffs need provide only a '"colorable basis'" of improper common practices.  *See Barrus*, 465 F. Supp. 2d at 231.

Citibank's further call for the application of a stricter standard because some limited discovery has occurred, has been routinely rejected.  *See Damassia v. Duane Reade, Inc.*, 2006

---

[1] Personal Bankers are referred to herein as "PBs."

U.S. Dist. LEXIS 73090, at*12-*13 (S.D.N.Y. Oct. 4, 2006) (although some discovery had been completed, "[i]t would be inappropriate…to require plaintiffs to meet a more stringent standard than typically applied at the early stages of litigation"); *Prizmic v. Armour, Inc*., 2006 U.S. Dist. LEXIS 42627, at *6 (E.D.N.Y. June 12, 2006) ("Only after discovery has been *completed* should the Court engage in a second more heightened stage of scrutiny . . .") (emphasis added); *Scholtisek v. Eldre Corp*., 229 F.R.D. 381 (W.D.N.Y. 2005).[2]  These holdings should apply with particular force here, as there has been no merits discovery (other than of the named Plaintiffs), and only incomplete discovery on conditional class certification issues.  While Defendant has produced its written policies regarding overtime, job duties and sales incentive plans, it has largely stalled production of relevant e-mail.

### 1. Plaintiffs Have Shown the Requisite Colorable Basis for the Existence of Similarly Situated PBs.

As detailed in the Brief at pages 9-14, Plaintiffs have provided the requisite supporting facts regarding similarly situated PBs who frequently had to work overtime to meet Citibank's strict sales quotas and perform required job duties (such as customer service), but without receiving full compensation for it.  Ten PBs from various regions have testified to this effect. Br. at 9.  Witnesses have identified an additional thirteen PBs who they believed worked overtime because of the same pressures and were not fully compensated.  *Id*. at 15.  Witnesses

---

[2] Citibank's own citations recognize this principle. *Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344, 347 (applying lenient standard although document production and depositions had taken place). Its other cases are distinguishable. *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497-98  (D.N.J. 2000) ("over 100 potential plaintiffs already opted [in]," and discovery had closed); *Aguirre v. SBC Communs., Inc.,* 2007 U.S. Dist. LEXIS 17259, at *12, *27 (S.D. Tex. Mar. 12, 2007) (actually refusing to "proceed directly to the second stage" of the certification analysis even where plaintiffs deposed the supervisors of all plaintiffs and "several" of defendant's representatives); *Davis v. Charoen Pokphand (USA), Inc.,* 303 F. Supp. 2d  1272, 1276 (M.D. Ala. 2004) (discovery was so advanced that plaintiffs "filed supplemental evidence in support" of conditional certification); *Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039, at *23, & n.7, *29 (S.D.N.Y. Sept. 28, 2006) (applying heightened scrutiny, only where discovery had  apparently closed, *i.e*  "post discovery").

also testified that their timesheets did not reflect all the overtime work because of the strong policy against overtime. *Id*. at 11-14.[3]

When this testimony is understood in the context of the fact that all Citibank PBs nationwide had substantially similar job duties and were subject to the same nationwide compensation plan, with a nationwide disciplinary plan for those who failed to meet their sales goals, there is no question that Plaintiffs have made the requisite showing of similarly situated PBs.  Br. at 8-9.

> ### 2. The Supposed "Individualized Issues" Raised By Defendant Do Not Exist, or Do Not Preclude Conditional Class Certification.

Defendant's principal argument against conditional certification is the purported existence of individual differences among the Plaintiffs, and between Plaintiffs, the Opt-Ins and Declarants.  It is well-settled, however, that "evidence of discrepancies between putative class members is insufficient to defeat FLSA certification at the initial stage, due to plaintiff's 'relatively lenient' burden . . . "  *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 337 (W.D.N.Y. 2008) (explaining *Parks v. Dick's Sporting Goods, Inc.*, 2007 U.S. Dist. LEXIS 20949, at *9-*10 (W.D.N.Y. Mar. 23, 2007)).[4]  Furthermore, Citibank tries to create individual issues where none exist.

> ### a. Citibank Promulgated Uniform Job Duties for PBs.

The job duties that led to Plaintiffs' overtime were promulgated in nationwide policies

---

[3] Citibank points to testimony from Plaintiff Shen that he could not recall underreporting his hours.  Def. Br. at 9. However, Shen previously explained that he was not paid for time he worked during "call nights."  *See* Shen Dep. 143.  The testimony cited by Citibank merely reflects Shen's inability to otherwise recall specific details of when he underreported the hours he worked.  *See* Shen Dep. 228-29 ("Q. Do you recall under what circumstances, if any, you performed work without recording it in your time records?  A. Again, it happened a few years ago.  I – I really don't remember all those specifics.").

[4] *See also Sexton v. Franklin First Fin., Ltd*., 2009 U.S. Dist. LEXIS 50526, at *8-*9 (E.D.N.Y. June 16, 2009); *Searson v. Concord Mortg. Corp.*, 2009 U.S. Dist. LEXIS 88926, at *16 (E.D.N.Y. Aug. 31, 2009).

from the top levels of Citibank corporate, and applied to all PBs.  Br. at 7-8.  Further, PBs have testified that other PBs had the same job duties as they did.  *See, e.g.*, Wilson Decl. ¶ 12 ("I saw other Personal Bankers at my branch also perform the same duties that I described above.").  Defendant does not contend that branch managers had any discretion to alter the basic job duties.

Instead, Defendant asserts that there were "four" different levels of PB with varying job duties.  Def. Br. at 4 (citing a document which identifies only three categories).  Significantly, the facts suggest that PBs' day-to-day job duties, regardless of category, were in fact similar in all material respects.  All PBs were in the same "job family" and had the same primary "job function"—sales.  *See* Walsh Decl. Ex. 10.  Indeed, a Citibank document lists tasks for PBs without differentiating by job level.  Walsh Reply Decl. Ex 1.[5]  PBs have testified the job was uniform regardless of level.  Steffensen Dep. at 226 (job duties of "Personal Banker Associate" and "Personal Banker 1" were the same).   Any purported "differences" were negligible and do not counsel against conditional certification. For example, the basic task and goal of "Personal Banker 1" and "Personal Banker 2" are to generate more sales, despite any variations in descriptive language used by Citibank.  Walsh Decl. Ex. 10.

### b.  Citibank's Nationwide Sales Quotas and Other Mandatory PB Job Duties Required Overtime.

Defendant's mantra that Plaintiffs' need to work overtime arose from "aberrational" circumstances, (Def. Br. at 18), rather than from PBs' standard duties is without merit.  Further, Plaintiffs never alleged that meeting sales quotas alone required more than 40 hours a week, but rather that the quotas were onerous enough that *all* required job duties could not be completed in that time without frequent recourse to overtime.

---

[5] Exhibits to the Declaration of Murielle J. Steven Walsh, filed on June 24, 2011, are referred to as "Walsh Reply Decl. Ex __."

Defendant concedes that the same nationwide compensation plan applied to all PBs at any given time.  Neither Branch managers nor PBs had any discretion to deviate from this plan. Thus, Citibank tightly controlled, from its highest levels, the aggressive sales quotas that helped create the environment of FLSA wrongdoing.

While Citibank claims that each PB had "individual" sales goals, it ignores the fact that were set by uniform guidelines set forth in the compensation plan.  The most important criterion is that all PBs had to meet a set percentage of their base salaries in sales points.   In 2008, all PBs were subject to the same flat percentage of their base salaries.  Br. at 8.  While Defendant claims that PBs' set percentages varied on the age of the branch, that policy began in 2009, and then, too, the age-based variance was slim—a 7% variance between oldest and youngest branches— and each range applied nationwide. Defendant fails to explain why any variance undermines Plaintiffs' claim of similarly situated PBs when *all* of Plaintiffs' witnesses, including those in different salary ranges, testified they could not always meet their goals and other job duties without working overtime. *See* Br. at 9.  Further, Defendant's assertion that PBs earned different points for different products sold ignores that the number of points varies by *product*, not by individual PBs. *See, e.g.,* Walsh Decl. Ex. 13.

Citibank's additional claim of aberrations based on PBs' language proficiency, experience, personality, and their branches' customer activity levels is undermined by the fact that PBs in all these "varying" circumstances had to work overtime.   For instance, Citibank argues that Ruiz could not meet her sales quotas within the regular work day because she was the only PB who spoke Spanish in a branch that serviced mostly a Spanish-speaking population. Ruiz, however, testified that job duties other than service also required overtime.  Ruiz Dep. at 97-98, 249-51.  Further, PBs worked overtime even in the absence of any language-related

issues.  *See* Br. 9.  Indeed, Ruiz testified that other PBs worked overtime to make their quotas. Ruiz Dep. at 200:10-201:20, 318-19.

Defendant focuses on Ho's testimony that she "easily" met her sales quotas, but ignored testimony that she missed sales quotas for five months in 2009 (which cannot be explained away by vacations).  *See* Costa Decl. Ex. 1 at 4-6; Walsh Reply Decl. Ex. 2.[6]  Significantly, Ho identified by name six other PBs at her branch who complained about working overtime without receiving full compensation for it.  Br. at 14-15.  Citibank posits that Winfield's failure to meet his quotas and having to work overtime was because he worked at a young branch where the traffic was slow, requiring him to solicit customers outside his office.  Def. Br. at 9.  But going outside the office was within his duties as a PB, hardly an aberrational fact that defeats the assertion that there were other PBs similarly situated to him.  *See* Walsh Decl. Ex. 9.  Indeed, in offices with busy foot traffic, PBs had work overtime too.  *See*, *e.g.*, Ho Dep. at 371-72, 386.

The purported aberrations at best affect only the *amount* of overtime each PB worked, an issue of damages.  Indeed, the factors invoked by Citibank would apply to every FLSA case, and if determinative, would make conditional certification virtually impossible.

### c.  The Threat of Discipline for Underperforming PBs <br> <u>Was Uniform, Real and Persistent</u>.

Ruiz and other PBs were "frightened" they would lose their jobs because despite working "crazy hours," "they were not able to accomplish the [sales quota]."  Br. at 14.  They had good reason.  As with job duties and sales quotas, Citibank had a nationwide disciplinary policy for PBs who failed to meet their required sales quotas, including the ultimate sanction of

---

[6]  The time code "PLN" indicates vacation time.  *See* Walsh Reply Decl. Ex. 2.

termination.  Br. at 8-9.  Regardless of whether exceptions were ever granted,[7] Citibank policy

ensured that *the threat* of termination was real and persistent.  *Id*.  There is already evidence of

one termination (Steffensen Dep. at 128:14-19, 129:18-24), and of warnings to other PBs.  Walsh

Decl. Ex. 19; Muniz Dep. at 34-36, 40.

### d.  Defendant's Other Attempts at Creating Differences Are Unpersuasive, and its Attacks on Credibility of Witnesses Are Improper.

Citibank raises other "variations" that are equally without basis. For instance, while it

claims that some PBs had to be pre-approved to work overtime while others did not, (Def. Br. at

22), it does not explain why this would require individualized treatment where it is undisputed

that all PBs were supposed to be paid for overtime worked, regardless of pre-approval.

Citibank also argues that Plaintiffs are not similarly situated because it paid some

overtime to some Plaintiffs and other PBs.  Def. Br. at 23. The significant fact, however, is that

Citibank did not pay for *all* of the overtime incurred.  *Robinson v. Metro-North Commuter R.R.*,

267 F. 3d 147 (2d Cir. 2001).   Differences in the amounts paid go to the determination of

damages and are not relevant at this stage.  Furthermore, Citibank is simply wrong in claiming

that Plaintiffs' theory is that the bank had a "zero overtime" policy.  Thus, that Citibank may

have paid over $7.8 million in overtime to PBs from 2008 to the present is entirely irrelevant.

Def. Br. at 7.

Defendant also argues that Plaintiffs conceded individual inquiries of every PB are

necessary to determine whether they were owed overtime compensation.  Def. Br. 17.  This can

be proven by uniform evidence, obviating individualized inquiries.  PBs logged in and out of

---

[7] Citibank strictly regulated the granting of exceptions from the disciplinary process. Branch managers had to generate an "exceptions report" identifying underperforming PBs for Brad Dinsmore, Citibank's Head of Retail Banking for North America, as well as to Regional Managers.  Walsh Decl. Ex. 18.  Contrary to Citbank's suggestion, branch managers did not have unfettered discretion.

computers every day, creating a record of actual time worked. *See* Muniz Dep. at 104, 129-30; Ruiz Dep. at 222-25, 341; Winfield Dep. at 314; Ash Decl. ¶ 13; Wilson Decl. ¶ 13.

 To the extent Citibank attacks the credibility of witnesses' testimony that they were not fully compensated for the overtime they worked, based on the fact that it paid *some* overtime, that argument is improperly made at this stage. *Barrus*, 465 F. Supp. 2d at 230 (courts do not need "to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented") (citation and internal quotation marks omitted); *Vaughan v. Mortg. Source LLC*, 2010 U.S. Dist. LEXIS 36615, at *15-*25 (E.D.N.Y. Apr. 14, 2010) (similar). *Accord Hens v. ClientLogic,* 2006 U.S. Dist. LEXIS 69021, at *11 (W.D.N.Y. Sept. 22, 2006) (where defendant's argued that the claim of "an unlawful policy of uniformly denying overtime pay" was negated "because several named Plaintiffs received overtime compensation," court granted conditional certification, reasoning that it did not have to "resolve whether Plaintiffs were actually denied compensation").

### 3.   Courts Have Conditionally Certified Classes Where Plaintiffs Alleged That Facially Lawful Policies Created an Unlawful *Sub Rosa* Policy of Denying Employees Overtime.

Plaintiffs have alleged that Citibank had a practice of effectively requiring PBs to work overtime to meet strict sales quotas and other job duties, while enforcing a strict policy of keeping overtime very low.  Plaintiff have made a colorable showing that these two policies created a "Catch-22" situation, where PBs had to work overtime but did not receive full compensation for  it.

Magistrate Judge Dolinger (who was initially assigned to this case) endorsed the plausibility of Plaintiffs' theory that Citibank's conflicting mandates could create a *sub rosa* policy to deny and discourage the reporting of overtime, although its "official" policies required that it be recorded and paid, stating:

> [I]t is at least plausible that an entity like Citibank might have some other way of trying to reduce overtime, other than putting on page 39 of the handbook, there will be no overtime.  I don't know if that's the case factually or not, but that's certainly a plausible scenario.

Walsh Reply Decl. Ex. 3, Hr'g Tr. at 23:1-5 Nov. 2, 2010.  The Court ordered the parties to engage in discovery on the issue—focusing on internal Citibank e-mails among higher level Citibank executives who may have sought to limit costs by reducing overtime and then instructed their branch managers accordingly.  As noted, Citibank has yet to produce the ordered e-mails.

Defendant claims that Plaintiffs cannot use lawful policies as the predicate for a policy of FLSA violations.  In *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008), the court rejected similar defense arguments in declining to decertify a class of Starbucks assistant managers who alleged that Starbucks effectively forced them to work "off-the-clock," reasoning that:

> Plaintiffs have made a strong showing that Starbucks' general policy of requiring ASMs to perform job duties that could not easily be completed within 40 hours while, at the same time, strongly discouraging overtime after the reclassification, failing to increase labor budgets, and basing bonuses, at least in part, on labor hours *created an environment that at least strongly motivated managers to commit the alleged FLSA violations. This is true despite the fact that Starbucks had an official "time worked is time paid" policy. Defendants correctly note that it is not unlawful for an employer to have a policy of discouraging overtime. Where such a policy, however, in combination with other factors, leads to a consistent pattern of FLSA violations, it can support a finding that Plaintiffs are similarly situated for purposes of section 216.*

(Emphasis added; citations omitted).  *See also Levy v. Verizon Info. Servs.*, 2007 U.S. Dist. LEXIS 43223, at *4-*5 (E.D.N.Y. June 11, 2007) (similar).

In addition, in *Gilbert v. Citigroup*, 2009 U.S. Dist. LEXIS 18981 (N.D. Cal. Feb. 18, 2009), in circumstances almost identical to here, the court conditionally certified a class of Citibank Business Bankers.  *See* Br. at 19-20.  There, plaintiff and only four other witnesses alleged that the recording and claiming of overtime was strongly discouraged (because of

budgetary constraints), but that they needed to work overtime to complete all of their duties, including high sales quotas which were set forth in a compensation plan much like the one here, but without proper compensation   *See* Walsh Reply Decl. Ex. 4, at 2, 4-6; *Gilbert*, 2009 U.S. Dist LEXIS 18981, at *5.  By granting conditional certification, the court clearly recognized that this served as a plausible basis for a common practice of not compensating for all overtime worked.  Defendant's attempt to distinguish *Gilbert* as a misclassification case is without basis. The court specifically stated that plaintiffs "provided evidence showing that . . . BBOs were subject to the same allegedly illegal company-wide policy—namely, Citibank's failure to pay overtime compensation to BBOs both before and after their reclassification." *Gilbert*, 2009 U.S. Dist. LEXIS 18981, at *5 (emphasis added).

Significantly, the Second Circuit has held in the summary judgment context—where plaintiffs have a high burden on proof, unlike at conditional certification—that the existence of an official policy for payment of all overtime does not automatically shield a defendant. *Kuebel v. Black & Decker, Inc.,* 2011 U.S. App. LEXIS 9448, at *32 (2d Cir. May 5, 2011); *accord Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 815 (N.D. Ill. 2010) ("lawful written (or verbal) policies will not shield the company from liability if plaintiffs can show other company-wide practices that may have been contrary to those policies and violated the FLSA.") (citation omitted).

### 4.   Defendant's Additional Arguments Are Without Merit.

Defendant claims that Ruiz "fool[ed]" her managers by underreporting her overtime. Def. Br. at 8.  Ruiz made clear she did not record her overtime because her branch manager communicated to her that overtime was "forbidden" unless there were "special circumstances." Br. at 12.  Citibank claims that Ruiz's managers could not know she worked overtime because they sat on a different floor, but fails to mention they had security cameras at their desks

10

permitting them to monitor PBs' every move, on a real-time basis.  Br. at 9-10.  Finally, while Citibank claims that Plaintiff Ruiz worked overtime without pre-approval, Citibank's own policy required that she be paid regardless.  Br. at 11.

Citibank claims that Plaintiffs have provided zero facts that it had a "common policy" to under compensate overtime worked by PBs.  Plaintiffs, however, have made a colorable showing that they and PBs in many different regions had to work overtime to meet demanding and similar sales quotas and perform their other required similar duties.  They have also made a colorable showing that Citibank's dual-edged policies of limiting overtime, while imposing demanding sales quotas created a situation where PBs had to frequently work overtime, but without proper compensation.  *See* sections A.2, A.3, *supra*.  This foundation is further supported by the testimony that branch managers were pressured by different Regional Managers to reduce overtime.  As Plaintiff Muniz testified, Regional had told her manager that it was not approving overtime, and that "even if [Muniz] work[ed] overtime, [she] was not allowed to put it on the sheet."  Muniz Dep. at 141.[8]  *See also* Steffensen Dep. at 161:14-162:9, 163:16-164:25 (branch manager refused to approve timesheets showing overtime because the regional manager "doesn't want overtime on the [time] sheets.; Ijaz Decl. ¶ 8 (policy came from Regional office).[9]  Even if branch managers did not act in "lockstep" manner, and even if some did not engage in FLSA violations, conditional certification is warranted.  As the *Falcon* Court aptly reasoned:

---

[8] According to Citibank, Ruiz's testimony about the directive of the regional manager is based on double hearsay and should be excluded.  However, as detailed in Plaintiffs' Memorandum in Opposition to Defendant's Motion to Strike, these statements are admissible.

[9] Defendant says that Shen "recanted" testimony that the no overtime directive came from his Area Manager.  Def. Br. at 9.  Shen could not have recanted such testimony, because he did not originally testify that he communicated with his Area Manager.  He first explained that he did not record all of his time because of the "directive received" from the area manager, and that working overtime would "take money from the P and L of the branch," so overtime was "discouraged by management."  Shen Dep. at 143-144.  When later pressed to identify communications with the Area Manager, he explained he did not earlier testify to any specific communications.  Shen Dep. at 233-234.

>Although the incentives created by Starbucks' conflicting mandates may not have led all managers nationwide to act in lockstep, the deposition testimony supports a finding that the opt-in plaintiffs currently before the Court were, in fact, affected similarly.

580 F. Supp. 2d at 536; *see also id.* ("An employer should not be allowed to escape class liability simply because some managers do not commit FLSA violations as long the evidence shows that there is a factual or legal nexus that binds together the claims of the opt-in plaintiffs before the Court.").

Defendant's declarations from some *current* PBs stating that their managers allowed and paid overtime do not counsel against conditional class certification. Plaintiffs have had no opportunity to depose these current employees. Even if their statements were true, however, contradictory evidence from defendants will not bar conditional certification. *Gordon v. Kaleida Health,* 2009 U.S. Dist. LEXIS 95729, at *8-9, 21 (W.D.N.Y. Oct. 13, 2009) (conditionally certifying class despite fifty-three declarations that were directly at odds with plaintiffs' statements); *Vaughan*, 2010 U.S. Dist. LEXIS 36615, at *16, 21 (refusing to make credibility determination based on competing declarations); *Barrus*, 465 F. Supp. 2d 224 at 230 (same).

Defendant is also wrong in claiming that Plaintiffs do not have enough declarations to meet their burden. There is no minimum amount of opt-ins at this stage. *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007); *see also Falcon,* 580 F. Supp. 2d at 538  (even at decertification level, court declined to "draw any particular inference from the response size" because [i]ndividuals may have myriad reasons for not wishing to opt-in to a lawsuit against their employer ranging from fear of retaliation to sheer inertia . . .").[10]

---

[10] S*ee also Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2008 U.S. Dist. LEXIS 115431, at *13-*23 (N.D. Cal. Mar. 24, 2008); *Wilks v. Pep Boys*, 2006 U.S. Dist. LEXIS 69537 (M.D. Tenn. Sept. 26, 2006), *aff'd*, 278 Fed. Appx. 488 (6th Cir. 2008).

**5.  Citibank's Cases Are Distinguishable.**

Citibank states that the court in *Eng-Hatcher v. Sprint*, *Nextel Corp.*, 2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009) found that policies maximizing sales and reducing costs were insufficient to infer a company-wide policy, when in fact the court denied conditional certification because the plaintiff had failed to offer any evidence, other than her own testimony, that others were similarly situated.  That is not the case here.

In *Diaz v. Electronics Boutique of Am., Inc.*, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005), the court concluded that individualized issues would dominate regarding each class member's job duties because one plaintiff was not exempt, while another was.  Here, all PBs were non-exempt.  The *Diaz* court also noted that one plaintiff's allegations concerning non-payment of overtime pay and alleged alteration of timesheets were "particular to his experiences at [his] store," and the utter absence of evidence that timesheet alterations were at the direction of management.  *Id.* at *14-*15.  Here, PBs from different regions have testified about under-payment of overtime and off-the-clock work under similar circumstances.  Further, some have stated that this was policy came from the Regional level.  *See* discussion *supra*.[11]

At this early stage, no conclusions can be drawn regarding whether branch managers were rogue employees.  *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159 (W.D.N.Y. 2007), does not require a different conclusion.  There, unlike here, the court's "rogue" manager reasoning was in the context of a request to send nationwide notice to over 100,000 potential class

---

[11]  In *Brickey*, another of Defendant's cases, the court found that the plaintiffs failed to offer evidence that their employer's policies "compelled, caused or necessitated FLSA violations," and that there was no admissible evidence supporting the plaintiffs' allegations that their managers were "forced" to violate FLSA by threat of discipline.  272 F.R.D. at 348.  Unlike *Brickey*, Plaintiffs offer substantial evidence that PBs were forced to work off the clock to meet their sales goals and perform their other job duties, or else face a real threat of termination.  Not only does Citibank have a formal disciplinary process—but one Plaintiff was actually terminated for failing to meet his sales quotas, (Steffensen Dep. at 128:14-19, 129:18-24), while others received written warnings.  Walsh Decl. Ex. 19; Muniz Dep. at 34-36, 40.

members based on allegations from plaintiffs who worked at a single store, one affidavit that provided similar allegations at a different location, and the remaining affidavits were "incomprehensively vague." *See id.* at 173-74.

**B.  THE SUPREME COURT'S RECENT *WAL-MART* RULING IS INAPPLICABLE.**

On June 20, 2011, in a 5 to 4 decision, the Supreme Court reversed the grant of a Rule 23 class certification in a Title VII case alleging gender-based discrimination in pay and promotion, reasoning that plaintiffs had failed to satisfy the Rule 23(a) prerequisite that there are "common questions of law or fact." *Wal-Mart Stores, Inc. v. Dukes*, 2011 U.S. LEXIS 4567, at *21 (U.S. June 20, 2011). The Court acknowledged that "'[e]ven a single [common] question will do.'" *Id.* at *37. Its ruling that there were far too many differences among class members is hardly surprising given that it was facing a *1.5 million* member class, consisting of *every* current and former female Wal-Mart employee. Wal-Mart had 3,400 stores, and four very different types of retail stores, which were divided into seven divisions, comprising of 41 regions with as much as 85 stores in each region, with each store having 40 to 53 separate departments with 80 to 800 staff positions. Here, by contrast, the class is comprised of approximately 4,000 members, and involves only PBs, all of whom are subject to the same compensation plan and job duties, and who operated under the same disciplinary plan. Further, *Wal-Mart* was decided under the stricter Rule 23 analysis, not the lenient standard that is applicable here under the FLSA.

**C.  THE PROPOSED NOTICE IS SUBSTANTIVELY PROPER.**

Defendant argues that the Proposed Notice is improper because in addition to describing the FLSA opt-in collective action and the relevant three year statute of limitations, it is also directed to all current or former PBs who were employed by Citibank in New York State at any

time since August 6, 2004.[12]  Def. Br. at 29.  The *Ruiz* action, however, asserts claims under New York State labor laws, which carry a six-year statute of limitations.  Courts have allowed Plaintiffs to issue such notice where, as here, FLSA violations are coupled with violations of labor laws with longer statutes of limitations.  *See Realite v. Ark Restaurants Corp.,* 7 F. Supp. 2d 303, 308 n.4 (S.D.N.Y. 1998); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) (suggesting that in a hybrid case, "notice will be sent to employees who have worked for the defendants over the last six years whether or not the FLSA action is subject to a shorter statute of limitations") (citation omitted).

Finally, the Court should reject Defendant's attempt to place geographic limitations on the notice to PBs.  *See* Def. Br. at 29 n.15.  As already detailed, Plaintiffs have presented evidence from six of the total thirteen states and Washington D.C. where Citibank has branches, as well as evidence that Citibank PBs nationwide had substantially similar job duties and sales quotas.[13]

## CONCLUSION

Based on the foregoing, and for the reasons set forth in Plaintiffs' Opening Brief, conditional certification of this FLSA collective action is warranted.  If the Court is inclined to find otherwise, Plaintiffs request that the Court reserve decision to allow Plaintiffs to supplement their motion once Defendant finally completes its production of the relevant e-mails.

---

[12] If the Court grants Plaintiffs' motion for conditional certification, the correct date of the Notice should be three years from the date the motion is actually granted by this Court.  *See, Gorey v. Manheim Servs. Corp.*, 2010 U.S. Dist. LEXIS 141868, at *15-*17 (S.D.N.Y. Nov. 10, 2010) (applying equitable tolling beginning on earliest date that court could have granted conditional certification).

[13] Defendant's case, *Rudd v. T.L. Cannon Corp.*, 2011 U.S. Dist. LEXIS 21061 (N.D.N.Y. Jan 4, 2011), is distinguishable.  *See id.* at *3, *6-7, *27 (limiting conditional certification to the single location at which all plaintiffs worked under a single manager and some plaintiffs worked at other locations only occasionally).

Respectfully submitted,

**POMERANTZ HAUDEK**
   **GROSSMAN & GROSS LLP**

By: /s/ Murielle J. Steven Walsh
Marc I. Gross
Shaheen Rushd
Murielle J. Steven Walsh
Jeremy A. Lieberman
100 Park Avenue - 26th Floor
New York, New York 10017
Telephone: 212-661-1100
Facsimile: 212-661-8665
Email: migross@pomlaw.com
Email: srushd@pomlaw.com
Email: mjsteven@pomlaw.com
Email: jalieberman@pomlaw.com


**JOSEPH HERZFELD HESTER &**
   **KIRSCHENBAUM LLP**
D. Maimon Kirschenbaum
757 Third Avenue - 25th Floor
New York, New York 10017
Telephone: 212-688-5640
Facsimile: 212-688-2548
Email: maimon@jhllp.com

***Attorneys for Plaintiff Digna Ruiz***


**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Timothy J. MacFall
Scott J. Farrell
585 Stewart Avenue, Suite 304
Garden City, NY 11530
Telephone (516) 683-3516
Facsimile: (302) 654-7530
Email: sdr@rigrodskylong.com
Email: tjm@rigrodskylong.com
Email: sjf@rigrodskylong.com

16

**EGLESTON LAW FIRM**
Gregory M. Egleston
360 Furman Street, Suite 443
Brooklyn, NY 11201
Telephone: (646) 227-1700
Facsimile: (646) 227-1701
Email: egleston@gme-law.com
Email: greg.egleston@gmail.com

*Attorneys for Plaintiffs Winfield, Muniz,*
*   Steffensen, and Shen*