UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DIGNA RUIZ, on behalf of herself and all others similarly situated, | : : : | **Civ. No.: 10-cv-5950  (JGK) (THK)** |
| | : | **Judge John G. Koeltl** |
| Plaintiff, | : : | **Magistrate Judge Theodore H. Katz** |
| v. | : : | |
| CITIBANK, N.A., | : : | |
| Defendant. | : : : | |
| FREDERICK WINFIELD, et al., | : : | **Civ. No: 10-cv-7304 (JGK) (THK)** |
| Plaintiffs, | : : : | |
| v. | : : | |
| CITIBANK, N.A., | : : | |
| Defendant. | : : : | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF
CONDITIONAL CLASS CERTIFICATION**

The evidence uncovered in documents recently produced by Citibank further reinforces the compelling basis for conditional class certification already provided in Plaintiffs' Opening and Reply Briefs.[1]

    **I.**    **The New Evidence Shows That Citibank's Policies
Generated the Alleged FLSA Violations at Issue.**

Plaintiffs have alleged that the Fair Labor Standards Act ("FLSA") violations at issue here occurred as a result of Citibank, N.A.'s ("Citibank" or the "Company") dual-edged policies: on the one hand, imposing job duties and demands that necessitated overtime, while at the same

---

[1] These briefs are hereinafter referenced as "Pls' Opening Br." and "Pls' Reply Br."

time, imposing strict limitations on the amount of overtime that could be paid. Courts have conditionally certified FLSA collective actions under precisely the same scenario, where a company has created an environment for FLSA violations to occur. *See* Pls' Opening Br. at 20-21; Pls' Reply Br. at 9-10.

As detailed in Plaintiffs' earlier briefs, Plaintiffs' deposition testimony and declarations submitted by additional Personal Bankers provide a forceful portrayal of Personal Bankers having to put in overtime because of the nature of their job duties, including meeting high sales quotas, servicing customers and performing various other branch responsibilities. *See* Pls' Opening Br. at 9-10. The duties of Personal Bankers were set by a nationwide corporate policy, and branch managers had no discretion to change them. Furthermore, Personal Bankers who failed to meet their sales quotas were subject to a nationwide system for discipline, including termination. Thus, a strong inference arises that numerous other Personal Bankers also were subject to similar pressure to work overtime to perform all of their job duties.

Plaintiffs' Opening Brief further details testimony that Personal Bankers were not paid for all of the overtime they worked, because they were told that overtime was not acceptable and should be kept to a minimum. In some instances, employees were pressured to underreport their hours; in others, branch managers actually altered timesheets to only reflect forty hours. *See* Pls' Opening Br. at 2, 10-14.

In its brief opposing conditional certification, Citibank argued that there was no evidence that the failure to pay overtime was widespread, or the result of any corporate policy. Defendant overstates Plaintiffs' burden on this motion, which is simply to show that some "similarly situated" individuals exist. In any event, the newly unearthed internal Citibank documents undermine Defendant's argument on this point. Confidential Material Redacted

Confidential Material Redacted

.[2]  For example, in forwarding an email from an area director concerning overtime costs, a Branch Manager instructed a Citibank employee that:



Confidential Material Redacted

*See* Ex. 2, at CR-011541 (emphasis supplied).[3]

Thus, despite the reality that the set duties of Personal Bankers required them to frequently work overtime, Citibank's competing policy against payment of more than minimal overtime expenses effectively forced Personal Bankers to work "off the clock," and thus they were not properly compensated for all time worked.

Citibank executives kept a hawk-like watch over overtime expenses. For example, the



Confidential Material Redacted

Ex. 3, at

---

[2] In November 2010, the Court ordered certain conditional class certification discovery, which was designed to ascertain whether Citibank had a pattern or practice of not paying overtime to Personal Bankers.  In doing so, the Court recognized that, notwithstanding an official policy of paying overtime, Citibank could nonetheless have instituted a *sub rosa* policy of not paying all overtime worked.  The Court suggested the evidence of such a policy could be found in e-mails and other documents "at some level of the hierarchy discussing costs, reducing costs and overtime," and thus directed that Citibank make such disclosures.  *See* November 2, 2010 Hr'g Tr. at 22, Ex. 1 to the Declaration of Murielle J. Steven Walsh ("Walsh Decl.").  Exhibits to the Walsh Decl. are referred to hereafter as "Ex._").

[3] Bates numbers beginning in "CR-" refer to "CITI-RUIZ."

CR-008663. Confidential Material Redacted [4].

      Consistent with their mandate from above to keep overtime expenses minimal, area directors heavily pressured their branch managers to "control" overtime and keep it to a minimum. For example, a form email from Confidential Material Redacted

Confidential Material Redacted

Ex. 9, at CR-008667-8668; *see also* Ex. 10, at CR-011325 Confidential Material Redacted [5]

---

[4] *See, e.g.,* Confidential Material Redacted

[5] *See also* Confidential Material Redacted

The evidence also suggests that branch managers informed area managers about the difficulty of Personal Bankers getting everything done in only forty hours, as illustrated by the following email:

> Confidential Material Redacted

Ex. 14, at CR-007925.

Thus, branch managers were faced with conflicting mandates. On the one hand, branch managers and their Personal Bankers were subject to strict limitations on overtime. At the same time, however, Personal Bankers were faced with the reality of having to work overtime to meet challenging sales quotes while juggling other job duties. Branch managers' implementation of these dueling policies was predictable—they resorted to the FLSA violations at issue here of effectively refusing to pay their Personal Bankers for all overtime worked, whether by pressuring people to under-report their hours, or even altering their employees' time sheets to show only forty hours.

The new documents also substantiate that FLSA violations occurred at additional branches other than those of the Individual Plaintiffs and Opt-In Ho. Together with the factual record already developed, the new evidence provides more than the minimum showing of "similarly situated" persons required to warrant conditional certification. For example, a newly produced e-mail reveals that FLSA violations occurred at the Confidential Material Redacted

Confidential Material Redacted

5



Ex. 15, at CR-010011; *see also id.* at CR-010011 (identifying the three affected employees).

In its July 21, 2011 letter responding to Plaintiffs' request for supplemental briefing, Defendant claimed that the "evidence would show" that the affected employees described in the above-referenced e-mail were compensated for their unpaid overtime. Ex. 16. Defendant cited no evidence at that time to support this assertion, and since then has produced only a handful of payroll records showing that the affected employees were paid some overtime. Defendant has produced no evidence showing how much time was actually worked, which is obviously necessary to determine whether they were properly compensated. Most significantly, there is no evidence that Defendant undertook a company-wide investigation of the failure to pay overtime to root out any other instances of FLSA violations and compensate other people who had been subject to the misconduct.

According to another newly produced e-mail, a Washington, D.C. Personal Banker complained that his branch manager Confidential Material Redacted

Ex. 17, at CR-008522.

Even where branch managers stopped short of directing falsification of time entries, they exerted extreme pressure on their Personal Bankers that overtime would not be "tolerated" and even threatened discipline. Branch manager Confidential Material Redacted



. . .

6

[Confidential Material Redacted]

Ex. 18, at CR-011943 (emphasis supplied).

Similarly, [Confidential Material Redacted]

[Confidential Material Redacted]

Ex. 19, at CR-07651 (emphasis added).  Another branch manager stated:

[Confidential Material Redacted]

Ex. 20, at CR-008825 (emphasis added).  Another branch manager in Los Angeles assured his

[Confidential Material Redacted]

Regardless of how the overtime directive was implemented, the common result was the same, providing the common "answer" that Defendant is seeking here – Personal Bankers were working overtime, but not being paid for all of it.

## II. The New Evidence Refutes Defendant's Arguments That *Wal Mart* Precludes Conditional Certification.

In its Notice of Supplemental Authority, filed on July 1, 2011 after the Supreme Court's decision in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011), Defendant suggested that Plaintiffs have

no evidence of a common policy or practice of FLSA violations, and therefore cannot show the existence of sufficient common questions with common "answers" that would justify class certification under *Wal-Mart*.

As Plaintiffs have already explained to the Court (*see* Ex. 22, Plaintiffs' July 19, 2011 Letter), *Wal-Mart* is inapplicable to conditional class certification in FLSA cases. In *Ramos v. Simplex Grinnell LP*, No. 07-CV-981 (SMG), 2011 U.S. Dist. LEXIS 65593 (E.D.N.Y. June 21, 2011), the court rejected the defendant's argument that *Wal-Mart* precluded full Rule 23 certification in an FLSA collective action, reasoning:

> Indeed, and of significance with respect to commonality as well as each of the other Rule 23 requirements discussed below, claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the prerequisites for class certification.

*Ramos*, 2011 U.S. Dist. LEXIS 65593, at *14.

In *Creely v. HCR ManorCare, Inc.*, No. 3:09 CV 2879, 2011 U.S. Dist. LEXIS 77170, at *4-5 (N.D. Ohio July 1, 2011), the court reached the same conclusion, in part, on the reasoning that:

> [T]he plaintiffs' claims in *Dukes* are fundamentally different from those in this case. In *Dukes*, resolution of the plaintiffs' gender-based Title VII claims depended on the reasons for each particular employment decision. [citation omitted] That the plaintiffs wished to sue over "literally millions of employment decisions at once" concerned the Supreme Court because "without some glue holding the alleged reasons for all those decisions together, it [would] be impossible to say that examination of all the class members' claims for relief [would] produce a common answer to the crucial question why was I disfavored." *Id*. By contrast, the FLSA claims before this Court do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights.

Similarly, here, the FLSA claims at issue here simply do not implicate the same type of concerns that drove the Supreme Court's reasoning in *Wal-Mart*.

Moreover, in *Wal-Mart*, the plaintiffs failed to make any substantial connection between the alleged Title VII violations and a corporate policy that created or fostered discrimination. The plaintiffs were attacking Wal-Mart's "policy to delegate" employment decisions to lower level managers. Wal-Mart's corporate headquarters gave their managers little or no objective guidance for managers to make these decisions. In contrast, Citibank corporate executives set the stage for the FLSA violations at issue—Citibank corporate instituted the nationwide sales quotas and job responsibilities that necessitated the overtime. Citibank corporate also created the environment of not paying all overtime worked, through regular and urgent directives to their underlings that overtime expenses must be minimized or eliminated. The resultant FLSA violations were the direct result of competing policies that were "common" to Personal Bankers as a group. These violations were also a foreseeable consequence of Citibank corporate directives, and therefore can be imputed to the Company.

Moreover, the Court in *Wal-Mart* expressed due process concerns in certifying such a massive and diverse class in a Rule 23(b)(2) class action, where part of the relief was for money damages, but class members received no notice and had no right to opt out. "However, the same concerns do not arise in an FLSA claim. Indeed, the FLSA's 'opt-in' procedure ensures that plaintiffs who wish to preserve their individual claims may readily do so." *Creely*, 2011 U.S. Dist. LEXIS 77170, at *6 -7.

Defendant also argued that *Wal-Mart* should preclude conditional class certification, in part, because calculating collective action members' damages would create overly individualized inquiries, and that Plaintiffs have not shown that internal computer records could show actual time worked. In fact, Defendant's recent production reveals that its computer records *do* reflect actual time worked. [Confidential Material Redacted]

9

Confidential Material Redacted

Confidential Material Redacted *See*, *e.g.*, Ex. 23, at CR-8276-8277.  Thus, calculation of unpaid overtime would be a simple calculation, Confidential Material Redacted

Confidential Material Redacted

Further, these audit logs are evidence that Citibank branch managers had information at their disposal that would easily show whether, and how much, overtime had been worked by each Personal Banker.  As noted, Citibank managers were supposed to regularly review these logs to ensure that time entries were not being falsified. Thus, this evidence would help refute any defense that Citibank managers were unaware of the existence of unpaid overtime.

### III.   Conclusion

In sum, the new evidence, coupled with the evidence detailed in Plaintiffs' Opening and Reply Briefs, strongly suggests that overtime denials were widespread and persistent, and that there are sufficient amounts of "similarly situated" persons warranting conditional class certification.  Plaintiffs respectfully request that the Court grant their motion for conditional class certification and authorize notice to potential collective action members.[6]

---

[6] Plaintiffs reserve the right to further supplement their briefing on conditional certification as Defendant continues to produce the documents that this Court directed it to produce many months ago. In a letter to Plaintiffs' counsel yesterday, Defendant proposed that Plaintiffs either defer submitting a supplemental brief until after Defendant's production is finished, or file their supplemental brief and defer additional discovery until after the Court rules on conditional certification.  Respectfully, neither option is viable.  Plaintiffs are now in their eighth month after submitting proposed search terms to Defendant.  The statute of limitations continues to run every day, and Plaintiffs cannot continue to wait any more for Defendant to complete its production.  Moreover, Plaintiffs should not be penalized for filing their brief now, by not getting the additional discovery they are entitled to.

Dated:   August 5, 2011                                    Respectfully submitted,

                                                  **POMERANTZ HAUDEK**
                                                     **GROSSMAN & GROSS LLP**

By: */s/Murielle J. Steven Walsh*
Murielle J. Steven Walsh
Jeremy A. Lieberman
100 Park Avenue - 26th Floor
New York, New York 10017
Telephone: 212-661-1100
Facsimile: 212-661-8665
Email: mjsteven@pomlaw.com
Email: jalieberman@pomlaw.com

**JOSEPH HERZFELD HESTER &**
    **KIRSCHENBAUM LLP**
D. Maimon Kirschenbaum
757 Third Avenue - 25th Floor
New York, New York 10017
Telephone: 212-688-5640
Facsimile: 212-688-2548
Email: maimon@jhllp.com

*Attorneys for Plaintiff Digna Ruiz*

**RIGRODSKY & LONG, P.A.**
Timothy J. MacFall
Seth D. Rigrodsky
Timothy J. MacFall
585 Stewart Avenue, Suite 304
Garden City, NY 11530
Telephone (516) 683-3516
Facsimile: (302) 654-7530
Email: sdr@rigrodskylong.com
Email: tjm@rigrodskylong.com

**EGLESTON LAW FIRM**
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, New York 10016
Telephone: (212) 683-3400
Facsimile: (212) 683-3402
Email: egleston@gme-law.com

*Attorneys for Plaintiffs Winfield, Muniz,*
*Steffensen, and Shen*

11

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 5th day of August, 2011, a copy of the above and the foregoing documents in support were served via the CM/ECF system which will automatically send email notification of such filing to the attorneys of record registered with the CM/ECF system, as listed below:

      Thomas Linthorst, Esq.
      Stephanie R. Reiss, Esq.
      Morgan Lewis & Bockius LLP
      502 Carnegie Center
      Princeton, NJ 08540-6289

      /s/  Murielle J. Steven Walsh
      **POMERANTZ HAUDEK**
        **GROSSMAN & GROSS, LLP**
      100 Park Avenue
      New York, New York 10017
      Telephone: (212) 661-1100
      Facsimile: (212) 661-8665