1CKURUIC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x
    DIGNA RUIZ, DARA SW HO,
3
                    Plaintiffs,
4
             v.                          10 CV 5950(JGK)(THK)
5
    CITIBANK, N.A.,
6
                    Defendant.
7   ------------------------------------x
    FREDRICK L. WINFIELD, et al.,
8
                    Plaintiffs,
9
             v.                          10 CV 7304(JGK)(THK)
10
    CITIBANK, N.A.,
11
                    Defendant.
12  ------------------------------------x
                                         New York, N.Y.
13                                       December 20, 2011
                                         10:30 a.m.
14  Before:

15                    HON. JOHN G. KOELTL

                                         District Judge
16
                         APPEARANCES
17
    POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP
18       Attorneys for Ruiz Plaintiffs
    BY:  MURIELLE STEVEN WALSH
19       MARIE OLIVER

20  EGLESTON LAW FIRM
         Attorneys for Winfield Plaintiffs
21  BY:  GREGORY M. EGLESTON
         -and-
22  RIGRODSKY & LONG, P.A.
    BY:  TIMOTHY J. MacFALL
23       SCOTT J. FARRELL

24  MORGAN, LEWIS & BOCKIUS LLP
         Attorneys for Defendant
25  BY:  THOMAS A. LINTHORST
         SAM SCOTT SHAULSON

1CKURUIC

```
 1            (Case called)

 2            THE COURT:  Good morning all.

 3            Whenever I have a Citibank case, I explain that I have

 4     a checking account and a mortgage with Citibank.  My former

 5     firm, Debevoise, has represented Citibank, used to be the trust

 6     side of Citibank and it may or probably is broader.  So far as

 7     I know, they are not involved in this case.  I never did any

 8     work with Citibank that places it on the list of people for

 9     whom I did sufficient work in practice 17 years ago for which I

10     disqualify myself, but I bring all of that to your attention at

11     the outset.  There is nothing about any of that that would

12     affect anything that I do in the case.

13            There are several motions before me.  Let me raise a

14     minor one with you all first.

15            There was a motion to seal that was brought by the

16     plaintiffs.  It was to seal certain documents in connection

17     with the motion, and I don't believe the motion was opposed.

18     Am I correct?

19            MR. MacFALL:  That's correct, your Honor.

20            THE COURT:  That motion is docket number 63 and that

21     motion is granted without opposition.

22            There are three other motions, I believe.

23            One is the motion to dismiss the ERISA claims and the

24     California class claim and the injunctive relief claim.  I will

25     listen to that motion first and listen to the conditional
```

1    certification motion.  There is also a motion to strike that

2    goes with the conditional certification.

3         MR. LINTHORST:  Thank you, your Honor.

4         Your Honor, we bring a motion to dismiss and request

5    that the Court do three things:  That it dismiss the ERISA

6    causes of action which are the first and second claims; that it

7    dismiss or strike the California class claim which is the sixth

8    claim; and that it strike the claims for injunctive and

9    declarative relief.

10        I would like to start with the ERISA claims.  As I am

11   sure your Honor is aware, this is an overtime case.  Plaintiffs

12   are former personal bankers who allege that they worked at

13   Citibank and that they were not paid for all overtime work.

14   The ERISA claims that they bring are entirely derivative of

15   their overtime claims.  They essentially say, the failure to

16   pay them overtime, as they claim they should have been, is also

17   an ERISA violation.  Numerous courts, including courts in this

18   circuit and in the Third Circuit and others have rejected this

19   attempt.

20        There are essentially two claims.  One is a

21   recordkeeping claim and one is a breach of fiduciary claim.

22        ERISA requires an employer to maintain records with

23   respect to each of its employees "sufficient to determine the

24   benefits due or which may become due to such employees."  That

25   is from Section 209(a)(1) of ERISA.

1          So in order to determine what records need to be kept

2    and whether there is any breach of a recordkeeping requirement,

3    it has to be determined what records are sufficient to

4    determine the benefits, and that depends on how benefits are

5    calculated.  So we have submitted --

6          THE COURT:  You also maintain at the outset that there

7    is no private right of action for a violation.

8          MR. LINTHORST:  That is correct, your Honor.  That

9    seems to be essentially undisputed.  Plaintiffs don't purport

10   to bring a Section 209(a)(1) cause of action.  They seek to

11   bring a recordkeeping claim under Section 502(a)(3), the

12   illicit catchall for injunctive and declaratory relief.  So

13   that is true.  We don't believe that there is any private right

14   of action under 209.  I don't think that is disputed, but we

15   can hear from the plaintiffs next.

16         We also believe that 502(a)(3) is not an appropriate

17   vehicle for that claim because it is essentially a claim for

18   benefits.  But before even getting there the question -- that

19   is certainly an issue --

20         THE COURT:  It is a chicken-and-egg as to which comes

21   first.

22         MR. LINTHORST:  Sure.  Just touching on that --

23         THE COURT:  No.  I understand the argument, so you

24   don't have to repeat it and I didn't see an answer to it.

25         MR. LINTHORST:  So, facially, the question is what

1CKURUIC

1    does the plan require for crediting benefits under the 401K

2    plan, and we have quoted the language at page 6 of the SPD

3    which says that credited with eligible pay which must be earned

4    and paid by an eligible employee of the company and is made up

5    of the following:  Base pay plus overtime and shift

6    differential paid to you during the calendar year.  So in order

7    to maintain records sufficient to determine benefits under a

8    plan that requires credit for amounts paid to you during the

9    calendar year, you must maintain records of what was paid to

10   you during the calendar year.

11          THE COURT:  Right.  The plaintiff would say that

12   that's an invitation to circumvent ERISA by simply having

13   people not record their hours which they should be paid for and

14   for which they should accrue benefits under the plan.

15          MR. LINTHORST:  Well, it is not an invitation to

16   circumvent ERISA.  It may give rise to an FLSA claim, but it

17   doesn't give rise to an ERISA claim because the terms of the

18   plan say that you pay the benefits based on amounts paid, and

19   it is not an ERISA violation to have that term in an ERISA

20   plan.  What they are essentially saying is, even though that

21   was a lawful term of an ERISA plan, you should have done

22   something different than what the plan said.  You should have

23   maintained records of hours of work or what should have been

24   paid when the plan itself says, we credit based only on amounts

25   paid.  So that's the Henderson case from the Third Circuit

1CKURUIC

1    which dismissed on that basis.

2             There was a factual dispute over what the plan said.

3    The plaintiffs said that the plan doesn't say only that amounts

4    actually paid are what gets credited but that it is actually

5    hours of service and they cite to the hours of service

6    definition.

7             THE COURT:  But the hours of service that they are

8    using relates to another provision of the plan for part-time

9    employees.

10            MR. LINTHORST:  Correct.  It only applies to people

11   scheduled to work 20 hours or less or temporary employees.

12            THE COURT:  Neither side put in the full plan,

13   right -- that is not before me -- you put in extracts of the

14   plan?

15            MR. LINTHORST:  We put in the full SPD and, I believe,

16   an extract of the plan, together with a declaration.

17            THE COURT:  Could you give me the full plan?

18            MR. LINTHORST:  Sure.

19            THE COURT:  Just submit the plan with an affidavit by

20   the end of the week.

21            MR. LINTHORST:  So, initially, there is no

22   recordkeeping violation because we kept the records sufficient

23   to determine benefits.  There is also no recordkeeping

24   violation because there is no private right of action under 209

25   and courts have rejected efforts to bring it under 502(a)(3).

1CKURUIC

1          The breach of fiduciary duty claim essentially follows

2     the same logic which is, even assuming Citibank is a fiduciary

3     and even assuming this is a fiduciary function, Citibank

4     couldn't have breached a fiduciary duty by doing exactly what

5     the plaintiff said, namely, crediting people with amounts paid.

6     But beyond that, it is not a fiduciary as it relates to this.

7     Fiduciary functions are discretionary functions.  There are no

8     facts pled that Citibank had discretionary decision-making as

9     to what to credit to the plan.  The plan is very clear, it is

10    amounts paid and not amounts that should have been paid for

11    hours worked.

12          And, essentially, this is, again, a wage-and-hour

13    case.  Payment of wages is a business function, and numerous

14    courts, including the <u>Barrus</u> case and the <u>DeSilva</u> case that we

15    cite have held to such and have rejected the plaintiff's

16    authority, which is the <u>Stickle</u> case out in California which

17    has been rejected by these courts and numerous others.

18          And essentially the policy is this.  Courts have been

19    unwilling to turn ERISA plans and ERISA fiduciaries into

20    wage-and-hour plans.  They have a claim under the FLSA.  This

21    just isn't an ERISA matter.  Even if it was, we also submit

22    that it should be dismissed for failure to exhaust plan

23    remedies.

24          Turning to the California class claim, I would like to

25    start with what we think is the common sense proposition that

```
 1    the Federal Court in New York need not and should not
 2    adjudicate California state law claims with respect to a
 3    California-only class when those claims are already being
 4    litigated by a California state court that was filed before
 5    this case.
 6         THE COURT:  Aren't all of your claims with respect to
 7    the California class and with respect to Colorado River
 8    premature?  Mr. Shen is a resident of California.  He has a
 9    California claim.  Your arguments under Colorado River are that
10    it would be really duplicative of the class action that is
11    pending in California to have a class action here in New York.
12    I have not been asked to certify a class.  I have an individual
13    claim now by Mr. Shen.
14         Do you contend that under Colorado River, I should
15    dismiss or stay Mr. Shen's claim because he is a member of the
16    class in California?
17         MR. LINTHORST:  Well, if Mr. Shen would like to
18    maintain an individual claim before this Court, he may do so.
19         THE COURT:  So that claim in the case, which is a
20    claim under California law which is being asserted by Mr. Shen
21    has to be, first of all, a personal claim.  He has to have a
22    valid claim under California law and then he seeks to represent
23    a class of others similarly situated.  But I don't have any
24    class action motion before me, and in order to maintain a class
25    action, the plaintiffs would have to show by a preponderance of
```

1  the evidence that they in fact have met all of the requirements

2  for a California class claim.

3          Why wouldn't it be appropriate at that point when

4  there is a class action motion to deal with the issues of

5  Colorado River, whether I should certify a class when there is

6  a California class in California and to deal with the issue of

7  standing for injunctive relief?  There could be other members

8  of the class, if I thought so, if I certified a class who in

9  fact were current employees, right?

10         MR. LINTHORST:  The answer is, your Honor, if the

11 class claim persists, we are subject to class discovery with

12 respect to the California class that could be duplicative of

13 what is going on in California and we shouldn't have to brief

14 and your Honor shouldn't have to decide the question of class

15 certification for a California class that is already going to

16 be decided by a California court.

17         THE COURT:  I don't have that motion before me.  If in

18 fact such a motion were made, then I would have it.  It seems

19 that this motion, as I said, is premature; it seems like an end

20 run around the class procedures.

21         MR. LINTHORST:  Your Honor, the point of this

22 abstention is to avoid the exertion of time in litigating and

23 going through discovery and deciding that question when it is

24 already being litigated and going through discovery and being

25 decided in California.

1CKURUIC

1      THE COURT:  I don't know.  For example, you say all of

2   the exertion that would be made with respect to discovery of a

3   possible class action in California, I don't know what the

4   scope of that discovery is.  I don't know what the burden of

5   that discovery is.  I know that I have an individual claim on

6   behalf of Mr. Shen under California law.  There is nothing in

7   the papers before me that says this is going to be burdensome.

8   I also don't have, I don't believe, the details of the status

9   of the case in California.  I know that there is a class

10  action, obviously, in California.  Has it been certified?

11      MR. LINTHORST:  It has not been certified.  They have

12  been proceeding through discovery with respect to the

13  plaintiffs filing a motion for class certification.

14      THE COURT:  And that is pending in state court in

15  California?

16      MR. LINTHORST:  The case is pending in state court.

17      THE COURT:  You know, the normal rule is, absent

18  extraordinary circumstances, the Court does not decline to

19  exercise jurisdiction.  This is, to me, a curious motion

20  because, normally, Colorado River says, dismiss or stay in

21  favor of a state court action, but you should do that only

22  under extraordinary circumstances, and there's no prohibition

23  against the federal case and the state case proceeding until

24  such time as there becomes some sort of conflict.  Indeed, both

25  cases could move on toward judgment.  And here, I have an

1CKURUIC

1    individual claim.  I am not being asked to dismiss the claim.

2    Colorado River normally is, you dismiss a case or you dismiss a

3    claim.  I am not being asked to dismiss a claim.  I am being

4    asked to dismiss part of a claim, the class action aspect of

5    the claim.

6              Is there another case under Colorado River that is in

7    that posture?

8              MR. LINTHORST:  I think it is a unique posture and I

9    think, technically, we have moved to dismiss the claim.  But if

10   Mr. Shen's position was that he wanted to proceed with an

11   individual claim and would opt out of any class in California,

12   well, he obviously has the right to do that.

13             THE COURT:  But his claim, necessarily, is an

14   individual claim that he also seeks to bring on behalf of a

15   class.  So he does have an individual claim.  And you have

16   moved to dismiss his claim because he also seeks to bring the

17   claim on behalf of the class.

18             MR. LINTHORST:  Right, because that claim is pending

19   in California in a previously filed case.

20             THE COURT:  No case that supports the use of Colorado

21   River in those circumstances?

22             MR. LINTHORST:  Well, we cited cases that say that the

23   actions don't need to be identical.

24             THE COURT:  I know.

25             MR. LINTHORST:  But I don't have a specific case where

1CKURUIC

1   there is an individual claim and a class claim, but because

2   there is a class claim, we will be litigating that claim.  We

3   don't know the scope of it, but whatever the scope of it is,

4   the claim is duplicative of what is in California, and we will

5   be litigating whether it can be litigated on a class basis

6   which is duplicative of the issue in California.  If it was in

7   federal court, it would be the first-filed rule and it would be

8   well settled that the case should go to where the first-filed

9   case was.  Because it is in state court, we have the <u>Colorado</u>

10  <u>River</u> issue, but it is guided by wise judicial administration

11  and conservation of resources.  And if you look at the factors,

12  they all line up in favor of the California case.  It was first

13  filed.  It is state --

14       THE COURT:  That's OK.  I know the factors.  I don't

15  know the details of the California action.  I don't know how

16  long it's been pending, the state of the action, whether the

17  claims in California are going to be timely adjudicated in

18  California.

19       The normal rule is, as you know, you don't stay a

20  proper federal case simply because there is a parallel state

21  case.  Both cases can move on to judgment.  And the caveat to

22  that is that the federal claim -- if there is a problem in

23  terms of timeliness -- but OK, no case but I will look at it.

24       Whatever I do in terms of the <u>Colorado River</u> issue,

25  seems -- unless I dismiss it -- is without prejudice to the

1CKURUIC

1    issue being raised again either at the class action stage when

2    there's a motion for class certification or, subsequently, if

3    in fact the discovery, if there is discovery on the class claim

4    for the California claim, turns out to be burdensome and

5    duplicative of the discovery that is going on in California --

6    I am not saying that is dispositive, but I am saying that it

7    would tilt the balance in favor of staying federal

8    jurisdiction, but at least it is an issue to be concerned.

9            The gist of the motion at this point is, Judge, there

10   is another class action that is pending in California, and it

11   was brought first and it is in state court, so save your time,

12   save your breath, even though you are still going to have an

13   individual claim by the California resident under California

14   law.

15           MR. LINTHORST:  The scope of that claim in terms of

16   discovery, in terms of motion practice, in terms of issues is

17   very different than the individual claim.

18           THE COURT:  We are going to have to take a break for a

19   few minutes because I have a criminal matter, and then we will

20   resume with this.

21           You can probably leave your papers on the desk.

22           (Recess)

23

24           (Continued on next page)

25

1CKURUIC

1          THE COURT:  Mr. Linthorst.

2          MR. LINTHORST:  So just continuing, your Honor, I

3    believe we have submitted the complaints from the <u>Davis</u> case.

4    I don't believe there is any dispute that the California claims

5    in this case are subsumed within the <u>Davis</u> case.  I am happy to

6    provide some evidence as to the status of the <u>Davis</u> case.

7          THE COURT:  No.  I will decide the motion based on

8    what I have been given, not based upon afterthoughts.

9          You also argue that I should strike the class action

10   allegations with respect to the California claim because Mr.

11   Shen fails the adequacy requirement and class action is not

12   superior to other forms of adjudication.

13         But, again, why aren't those claims appropriately

14   raised in response to a class action motion in which the

15   plaintiffs would have to establish by a preponderance of the

16   evidence that those requirements were met, and why would you

17   want a decision which says that the plaintiff has alleged

18   enough under the notice requirements of Rule 23 to make

19   sufficient allegations for a class?  Whether those requirements

20   will ever be established by a preponderance of the evidence, we

21   don't know, but you make a motion and you start behind because

22   all the plaintiff has to do is to make sufficient plausible

23   allegations at the pleading stage.  We are not at the class

24   action certification stage.  So why isn't that motion

25   premature, if not ill-advised?

1CKURUIC

1          MR. LINTHORST:  It essentially goes to the same

2     substantive question for the Court, at least the superiority

3     piece, which is, why are we litigating a putative California

4     class action as to California claims when those same putative

5     claims and that same putative class are being litigated in a

6     California state court?

7          THE COURT:  Because the California claims overlap with

8     the federal claims which are here in this case and because

9     plaintiffs say that the policy that applied in California was

10    similar to the policy applied in other states and they seek

11    classes, subclasses in individual states and the case that is

12    pending in California is a smaller case and in state court

13    dealing only with the state class.  And so it doesn't

14    immediately jump out at you if you have to have discovery on a

15    FLSA claim which goes to many different states but includes

16    California.  It doesn't immediately jump out that you can say

17    at the pleading stage that a California state class action

18    would be the superior way of adjudication.  We are only dealing

19    at the pleading stage.

20         MR. LINTHORST:  There are a number of California

21    claims beyond overtime -- incorrect wage statements, meal and

22    rest, failure to pay wages that are not part of the --

23         THE COURT:  And you say he is not an adequate

24    representative with respect to all of those?

25         MR. LINTHORST:  With respect to those, and that

litigating those distinct claims that are not duplicative or

overlapping with the FLSA claims in this case does not make

wise judicial administration when it is happening in

California.  If it would be wise judicial administration for

the Court to send that claim to another federal court under the

first-filed rule, it doesn't seem to be any less wise because

the same claims are pending in the state court.

THE COURT:  Presumably, it is not so clear that the

case would be divided up, and we have the FLSA claim which

doesn't exist in the California state court.  There is no FLSA

claim in the California state court?

MR. LINTHORST:  There is not.

THE COURT:  If there was, maybe it would have been

removed.

MR. LINTHORST:  Presumably.

THE COURT:  Anything else?

I have the same issue with respect to injunctive

relief and whether that is premature, whether there can be

plaintiffs who have a claim who are current employees and,

therefore, entitled to injunctive relief.

MR. LINTHORST:  In terms of class injunctive relief,

what the Supreme Court recently said in <u>Wal-Mart v. Dukes</u> that

the Ninth Circuit appropriately dismissed the claim when former

employees brought the claim because former employees don't have

standing and the appropriate remedy by the District Court would

1CKURUIC

1    not be to call the class of the former employees but not to

2    have a (b)(2) class at all.

3            THE COURT:  Right.  I understand <u>Wal-Mart</u>.

4            If the class includes current employees, the

5    injunctive relief would be proper, right -- could be, at least

6    in overcoming a standing argument?

7            MR. LINTHORST:  Not in a Rule 23 class action where

8    the named representative is a former employee.

9            THE COURT:  But they can join other representatives.

10           MR. LINTHORST:  If they joined a current employee

11   plaintiff, which they have not done, that current employee

12   plaintiff might have an individual claim for declaratory

13   injunctive relief, but could not have a (b)(2) class claim.

14           THE COURT:  Are the class claims here only (b)(2) or

15   are they also (b)(3)?

16           MR. LINTHORST:  Also (b)(3).

17           THE COURT:  The Supreme Court decision was really

18   talking about the (b)(2) claim.  There is no (b)(3) claim?

19           MR. LINTHORST:  Right, it wasn't (b)(3), but it was

20   Rule 23(a) and (b)(2).

21           THE COURT:  But the injunctive relief, really, the

22   issue went to the (b)(2) claim?

23           MR. LINTHORST:  Correct.

24           THE COURT:  Thank you.

25           Plaintiff.

1CKURUIC

1          MR. MacFALL:  Good morning, your Honor.

2          THE COURT:  Good morning.

3          MR. MacFALL:  Your Honor, with respect to the ERISA

4    claim --

5          THE COURT:  Refresh my recollection who you are.

6          MR. MacFALL:  Timothy MacFall.

7          THE COURT:  Thank you.

8          MR. MacFALL:  Your Honor, we have obviously cited

9    authority in our papers that is contrary to that cited by the

10   defendant, but I would like now to focus on the authority

11   actually cited by the defendant.  And we respectfully submit

12   that even under that authority, plaintiffs should prevail on

13   the ERISA claims.  The reason for that is that the defendants

14   have, to some extent, mischaracterized the nature of the duty

15   and the language of the plan from which it derives.

16         The defendants have taken the position in their papers

17   that the plan requires only that contributions be made based

18   upon what was paid to the plan participants.  What the SPD

19   actually states at page 6, which is Exhibit A, under the

20   caption "Eligible Pay," that is defined -- it says:  "Eligible

21   pay must be earned and paid while you are an eligible

22   employee."

23         While admittedly it does have the term "paid," the

24   inclusion or the other requirement that eligible pay must be

25   earned gives rise to implications and requirements that don't

1    pertain solely, if it only included compensation that was paid.

2    That's probably most clearly articulated in one of the cases

3    that defendants rely upon, the DeSilva case.  In that case, the

4    court carefully analyzed a claim similar to that asserted here.

5    The court noted that, if the claim was solely based on language

6    in a plan that was limited to compensation paid, then

7    plaintiffs would lose.

8            The court, however, undertook an analysis of the

9    relevant precedent concerning that and noted that, where the

10   plan provides for some other factor in the definition of

11   "compensation" such as hours worked or compensation earned,

12   that that gives rise to a fiduciary obligation on the part of

13   the employer to actually insure that the contribution is being

14   made to the plan on behalf of plan participant is accurate.

15           Your Honor, the SPD makes clear in its definition of

16   "eligible pay" that that includes pay that is earned or

17   compensation that is both earned and paid.  The SPD also in a

18   separate provision which does not control but is supportive

19   indicates that eligible pay for employees who are terminated --

20   it actually says, "any of the above amounts otherwise received

21   after your termination of employment but earned through

22   services performed before your termination of employment with

23   the company."

24           Again, we would note that it is significant because,

25   again, it is an emphasis in the plan on the notion of wages

1CKURUIC

1    having been earned.

2              With respect to the hours of service provision, the

3    defendant correctly notes it relates to part-time or temporary

4    employees.  Again, there is the notion or emphasis on

5    compensation being earned.  It is not simply a question of what

6    they were paid.

7              Perhaps, what best underscores this point is that in

8    the SPD the company itself makes clear, and I quote:  "Not all

9    of your taxable compensation is counted as eligible pay,

10   therefore, the amount of your taxable income as shown on your

11   Form W-2 Wage And Tax Statement is likely to be different from

12   your eligible pay."

13             THE COURT:  What is the page number?

14             MR. MacFALL:  I'm sorry, your Honor.  That is on the

15   same page, page 6.

16             Your Honor, that language that I just read

17   differentiates this case from those cases relied upon by

18   defendants that relates solely to pay.  Here, the company

19   itself is acknowledging that the amount that plan participants

20   receive is not necessarily the same as eligible pay, and in

21   that earlier provision that is defined as pay that is actually

22   earned and paid.

23             THE COURT:  That goes to deductions, doesn't it; it

24   doesn't go to hours worked and not paid?

25             MR. MacFALL:  The portion relating to the W-2, your

1CKURUIC

 1   Honor, probably does go to deductions and other compensation.

 2   The point I am making --

 3           THE COURT:  And the language with respect to how you

 4   treat someone after they are terminated, your right doesn't

 5   apply here.  So you are left with the one reference in the SPD

 6   to earned and paid which appears to require that it be paid,

 7   yes?  Earned but, yes, paid, and if not paid, not eligible,

 8   right?  Right?

 9           MR. MacFALL:  Your Honor, I believe that in order to

10   satisfy the plan requirements, that the company need determine

11   both earned and paid.

12           THE COURT:  Why?  The ERISA benefits apply only if it

13   is both earned and paid, and so if it is not paid, the benefits

14   don't accrue under ERISA, right?

15           MR. MacFALL:  They may not accrue under ERISA, your

16   Honor, but the question with regard to whether it gives rise to

17   a fiduciary obligation to ascertain the accuracy of those

18   contributions and whether everything that was paid was in fact

19   paid --

20           THE COURT:  If you say there's a fiduciary obligation

21   on the part of the administrator to assure that all overtime is

22   in fact paid so that ERISA benefits are triggered then, of

23   necessity, every violation of the Fair Labor Standards Act is a

24   violation of ERISA, right?

25           MR. MacFALL:  Yes, your Honor.

1CKURUIC

1          THE COURT:  And there is no case that tells that,

2    right?  They have cavilled and whatnot, but no case has held

3    that, right?

4          MR. MacFALL:  Right.

5          THE COURT:  And that would be a pretty dramatic sub

6    rosa expansion of the Fair Labor Standards Act because it would

7    turn every Fair Labor Standards collective action into a class

8    action, right?

9          MR. MacFALL:  Yes.

10         THE COURT:  They would all be turned into opt-outs

11   rather than opt-ins, right?

12         MR. MacFALL:  Correct.

13         THE COURT:  And there is no case that has ever said

14   that?

15         MR. MacFALL:  That's correct, your Honor.

16         But what it does say, however, is that where the

17   language of the plan is not limited exclusively to the amount

18   that is paid --

19         THE COURT:  But even if there is a case that said

20   that, what sense does it make, right?  If the plan says it has

21   to be earned and paid, then ERISA benefits wouldn't be

22   triggered if the underlying compensation wasn't paid, right?

23   Putting aside what some court -- no Court of Appeals -- but one

24   of us said makes no sense, does it?

25         MR. MacFALL:  Well, your Honor, with respect to

1CKURUIC

1    whether or not the Court of Appeals has opined on this, what

2    the Third Circuit has done with this issue directly, it has

3    held that it is to insure that the contributions were being

4    properly provided to the plan -- I'm sorry, I will paraphrase,

5    it is easier -- the Third Circuit essentially has held that the

6    duties imposed upon the employer depend upon the language in

7    the plan itself.

8              THE COURT:  We can all agree on that.

9              MR. MacFALL:  I am starting at the beginning, your

10   Honor.

11             The defendant's position is that the plan requires

12   only -- or provides only that eligible pay is comprised of

13   compensation that is paid.

14             THE COURT:  The ERISA benefits are not triggered

15   unless the compensation is paid, and if the plan says earned

16   and paid, a requirement is payment and if the benefits are not

17   paid, the ERISA benefits are not triggered.

18             MR. MacFALL:  Your Honor, I guess what I am suggesting

19   is that the "earned" language in the plan for these purposes

20   also gives rise to a fiduciary obligation on behalf of the

21   employer to ascertain the --

22             THE COURT:  But the question would be, among others,

23   why an ERISA fiduciary duty -- it would appear to go beyond

24   what you would normally think of as the fiduciary duties of an

25   ERISA fiduciary to police the payroll practices of an employer.

1CKURUIC

1          MR. MacFALL:  Your Honor, it goes beyond that to the

2     extent that as fiduciary, there is an obligation to insure that

3     all of the contributions to the plan that are required are

4     actually made, and that is the plan benefits, separate and

5     apart from being policing payroll requirements.  It assures

6     that the plan receives and can invest for the benefit of its

7     participants overall -- all of that to which it is entitled by

8     the express provisions of the plan.

9          So to that extent it implicates the fiduciary

10    obligation of the employer.  Whereas here, the employer-- it is

11    the same entity that is basically making the determination that

12    it will not pay all of the overtime to which the employees are

13    due and, simultaneously, understands that under the SPD it is

14    required to ascertain the accuracy of the contributions to the

15    plan based on pay that is earned and paid.

16          THE COURT:  You don't dispute that there is no private

17    right of action for the recordkeeping requirement of ERISA, is

18    that right?

19          MR. MacFALL:  Your Honor, the complaint alleges

20    violation and seeks relief under 502(a)(3).

21          THE COURT:  My question was, there is a specific

22    recordkeeping provision of ERISA, 209?

23          MR. MacFALL:  Yes, your Honor.

24          THE COURT:  You don't dispute that there is no private

25    right of action for a violation of that provision of ERISA, is

1CKURUIC

1      that right?

2              MR. MacFALL:  Your Honor, for these purposes, we do

3      not.  I would note that there are cases -- and which we have

4      cited -- that have held that there are.  I am aware of other

5      cases that hold -- for these purposes, we will not dispute

6      that.

7              THE COURT:  So no private right of action for

8      violation of Section 209(a)(1), right?

9              MR. MacFALL:  Right.

10             THE COURT:  If that's right, why wouldn't it be an end

11     run around that proposition to attempt to have a private right

12     of action for exactly the same violation and just say it is now

13     brought under 502(a)(3)?

14             MR. MacFALL:  Your Honor, it really depends on the

15     purposes for which the relief is sought.  Here, it is being

16     brought under 502(a)(3).  We submit that it is brought on

17     behalf of the plan by plan participants, based upon defendants'

18     inadequate contributions to the plan --

19             THE COURT:  That provision only applies for equitable

20     relief, right, not a claim for benefits?

21             MR. MacFALL:  Yes, your Honor.

22             THE COURT:  Aren't these really claims for benefits?

23             The plaintiffs are seeking their ERISA benefits for

24     the overtime that they worked and allegedly were not paid,

25     right?  They are not eschewing money, right?  They are looking

1CKURUIC

1    for the ERISA benefits that they claim should have been paid,

2    right?

3            MR. MacFALL:  Yes, your Honor, most respectfully, but

4    that would be a byproduct, we would submit, of the

5    equitable relief.

6            THE COURT:  I'm sorry?

7            MR. MacFALL:  That would be a natural byproduct or

8    result of the equitable relief if it were granted.

9            Your Honor, we would note that even the cases relied

10   upon by defendants don't go so far as to say that there can

11   never be an equitable claim under 502(a)(3) if it is consistent

12   with the language of the plan.  For example, one of the clear

13   examples cited by the cases is, if the plan provided that

14   contributions would be made based upon hours worked -- just

15   using that as a hypothetical for the moment -- if all else were

16   equal, the plaintiffs in such scenario would also receive

17   monetary benefits to the extent that they would obtain those

18   ERISA contributions that had previously been withheld from

19   them.

20           However, the courts that have looked at that have

21   indicated that you could bring a recordkeeping violation

22   through 502(a)(3) seeking injunctive relief on behalf of the

23   plan under those circumstances, even though there would be a

24   monetary benefit conferred upon the plaintiffs as a consequence

25   of obtaining that equitable relief.

1CKURUIC

1          THE COURT:  Those are a minority of cases.

2          MR. MacFALL:  I believe, your Honor, that the majority

3     of the authority cited by the defendants and of which I am

4     aware have not held that there is a -- or that plaintiffs are

5     precluded from seeking equitable relief under 502(a)(3) for

6     recordkeeping violations simply because they would also obtain

7     a monetary benefit.

8          My understanding of those cases is that really the

9     decision turned -- as well as on plaintiffs' case -- on the

10    language contained in those plans for the most part, if not

11    exclusively, have indicated that eligible pay was limited to

12    compensation actually paid.  And some of the cases go as far as

13    to say that compensation is reported on the W-2 form.

14         THE COURT:  I know you haven't turned to the class

15    issues and <u>Colorado River</u>.  Anything else that you want to tell

16    me on this?

17         MR. MacFALL:  No, your Honor.

18         THE COURT:  Then I can deal with the criminal case now

19    and we will resume.

20         (Recess)

21

22         (Continued on next page)

23

24

25

1CKURUIC

| | |
|---|---|
| 1 | THE COURT:  Mr. MacFall. |
| 2 | MR. MacFALL:  Thank you. |
| 3 | I will be very brief with respect to the California |
| 4 | class claims. |
| 5 | As your Honor indicated, it is premature at this |
| 6 | point.  Certainly prior to the time that we moved for class |
| 7 | certification with respect to defendant's complaint, that is, |
| 8 | that Mr. Shen is a former, and to protect the interests of |
| 9 | current employees, we would note that it is not uncommon under |
| 10 | Rule 23 to proffer a class representative different than the |
| 11 | named plaintiff just to satisfy standing requirement.  If and |
| 12 | when the time comes to make that motion, certainly those are |
| 13 | issues that need to be addressed at that juncture. |
| 14 | One of the issues that your Honor picked up on and we |
| 15 | would note is, to the extent that defendant argues burden and |
| 16 | duplication of effort, many of the issues that would arise in a |
| 17 | California case would necessarily arise in the context of the |
| 18 | FLSA claim because the underlying nexus of both claims is the |
| 19 | same. |
| 20 | Because both claims deal with common issues and in |
| 21 | view of the fact that the same factual determinations would be |
| 22 | made in connection with the California claim or the FLSA claim, |
| 23 | we do not believe that this -- |
| 24 | THE COURT:  Keep your voice up. |
| 25 | MR. MacFALL:  -- Court is any less convenient than the |

1CKURUIC

1    California state court for the adjudication of these claims.

2             Your Honor, I would just note as an additional matter,

3    because Mr. Linthorst did indicate that the state case has not

4    yet been certified, the prematurity of the relief they seek

5    here is underscored by the possibility that the state action

6    may never be certified as a class action and that this Court is

7    being asked, at this premature juncture, to abstain from

8    exercising jurisdiction over a claim before it knows that it

9    would necessarily result in unnecessary duplication.

10            THE COURT:  How burdensome is the discovery?  Is there

11   any discovery that is being sought in connection with the

12   California class claim that is not being sought with respect to

13   the FLSA claim in California?

14            MR. MacFALL:  None currently and none that I can think

15   of, your Honor.

16            THE COURT:  Thank you.

17            MR. MacFALL:  Thank you, your Honor.

18            THE COURT:  I will now listen to the collective action

19   motion.

20            MS. WALSH:  Good morning, your Honor.

21            Murielle Steven Walsh for plaintiff Ruiz.

22            THE COURT:  Please keep your voice up or speak from

23   the podium.

24            MS. WALSH:  I think I might need the podium.

25            We are asking that the Court --

1CKURUIC

1          THE COURT:  You are Ms. Steven Walsh?

2          MS. WALSH:  Steven Walsh.

3          THE COURT:  Thank you.

4          MS. WALSH:  We are asking the Court to conditionally

5    certify for FLSA purposes a collective of all current and

6    former Citibank employees who worked in the position of

7    personal banker.  The potential class is approximately 4,000

8    personal bankers.  Citibank has branches in about 13 states.

9          As the Court is aware, certification of an FLSA

10   collective is a two-step process.  Right now we are at the

11   first stage.  And our burden is quite lenient.  We only need to

12   make a modest showing that there are others who may be

13   similarly situated to our client and make some kind of

14   plausible claim that there is a common practice that results in

15   the personal bankers being denied overtime.  We feel that we

16   have more than met our burden at this stage.

17         Our clients have testified to a dual-edged policy

18   that, on the one hand, personal bankers were given very

19   vigorous job duties that required that they work overtime

20   pretty regularly and that included meeting very high sales

21   quotas.  And they testified that these high sales quotas played

22   a large part in requiring overtime.

23         On the other hand, Citibank corporate had implemented

24   a directive that overtime was not permitted or, at a minimum,

25   strongly discouraged.  The natural result of this policy, your

1CKURUIC

1    Honor, was that overtime was performed but not all of it was

2    paid.  We haven't contended that no overtime was paid, just not

3    all of it.  Whether through branch managers altering time

4    records or through personal bankers being intimidated into

5    underreporting their hours, the common effect was the same --

6    not all personal bankers were compensated for all overtime

7    worked.

8            THE COURT:  You argue for two aspects of what you

9    claim is similarly situated, right, a policy that requires

10   quotas, but the quotas can't be satisfied except by working

11   overtime and reporting overtime or paying overtime is

12   discouraged.  The second aspect of similarly situated is that

13   people work overtime and either don't put in or falsify their

14   records, but they work overtime and they are not paid?

15           MS. WALSH:  Right.

16           THE COURT:  The first aspect of the similarly

17   situated, is that a violation of the FLSA, or is it only the

18   second -- they work hours and they are not paid.

19           MS. WALSH:  It is the effect, your Honor, that is the

20   violation of the FLSA.

21           THE COURT:  The violation of the FLSA is they work

22   hours that are overtime and they are not paid, right?

23           MS. WALSH:  That's right.

24           THE COURT:  If this case went to trial, what would the

25   relevance of the first part be?  It is not a violation of the

1CKURUIC

1   FLSA, right?  Background?

2           MS. WALSH:  I think it is more relevant at this

3   juncture because we are trying to show that, for purposes of

4   notifying potential collective members, we are trying to show

5   that we think that more than just our clients were effected.

6   We think that because Citibank had these nationwide job duties

7   and sales quotas that, very likely, there are other people who

8   are similarly situated to ours.

9           At the end of the day when we go to trial, after we

10  have had discovery, then we would have access to Citibank's

11  records and we can simply compare the time that people worked

12  versus the time that they were actually paid.  And we think

13  that will be a fairly simple thing to do because we know that

14  Citibank maintained audit logs that recorded personal bankers'

15  log-in and log-out times.  And they actually used those audit

16  logs to verify that personal bankers were recording their time

17  accurately.

18          What they did with those audit reports, we don't know

19  yet; we have gotten very little discovery so far, but we think

20  that the results of that discovery will be very helpful.

21          THE COURT:  But all of this information about the

22  policy and the quotas and everything else is irrelevant to the

23  violation of the FLSA, right; the violation of the FLSA is only

24  worked overtime not paid?

25          MS. WALSH:  To the ultimate proof, I would agree with

1    that, your Honor.

2              THE COURT:  Why then is it really relevant for

3    purposes of a collective action that the plaintiffs and the

4    opt-ins are allegedly similarly situated with respect to a

5    policy that is not an element of an FLSA violation and not

6    determinative of any issue that will be an issue for trial?

7              MS. WALSH:  Again, I think it is really more relevant

8    to this stage --

9              THE COURT:  I know you say that.  I know you say that,

10   but what I am trying to get at is what that really means.

11             To say that the plaintiffs are similarly situated for

12   purposes of an FLSA collective action, you say, they can be

13   similarly situated for an aspect that is irrelevant to the

14   elements of the FLSA claim, they just have to be similarly

15   situated.  And I'm saying, what does that mean?

16             Of course, they are similarly situated.  They are all

17   personal bankers employed by Citibank.  So they are similarly

18   situated.  They are personal bankers employed by Citibank.  The

19   question is, when the cases talk about similarly situated, do

20   they mean similarly situated in terms of background or do they

21   mean similarly situated under the terms of Wal-Mart, an aspect

22   that can be decided, the answer to which will resolve a

23   dispositive issue at trial, or is that principle of Wal-Mart

24   which arises in the context of Rule 23 simply irrelevant to

25   what you term is the first step of the FLSA consideration?

1CKURUIC

1          Is the first step of the FLSA consideration simply,

2     get a group of people together who are similarly situated in

3     order to encourage the disposition of FLSA claims, even though

4     they are gathered together on a similarly situated principle,

5     which is not an element of an FLSA claim and will not be an

6     element at trial?

7          Maybe that is right, but I want to find out what your

8     answer is.

9          MS. WALSH:  I will try to answer.  There are about

10    three questions in there.

11         In terms of what we need to show right now, who is

12    similarly situated to who, I tend to agree with your Honor that

13    the fact that all of these personal bankers have the same job

14    duties and there are thousands of them across the country, I

15    think that makes a very good, at least, beginning of a showing

16    that they are similarly situated people to our client.

17         But the defendants would argue that we need to show

18    more than that even at this early stage, that we need to show

19    that there are others similarly situated who were impacted with

20    the same FLSA violations and in the same manner.  And so to

21    that end, I think it is rather relevant the fact that these

22    sales quotas, these nationwide job duties apply to everybody

23    and impose the same type of pressure from coast to coast,

24    Wherever a personal banker is working.

25         In terms of Wal-Mart, I would never agree that

1CKURUIC

1    <u>Wal-Mart</u> applies to an FLSA action.  Judge Berman recently

2    ruled in, I believe it is the <u>Youngblood</u> case that <u>Wal-Mart</u>

3    doesn't have a place in an FLSA case because <u>Wal-Mart</u> involves

4    highly subjective inquiries that simply can't be done on a

5    class-wide basis.  It is too individualized.

6            THE COURT:  The issue is whether <u>Wal-Mart</u> was a large

7    opinion which included many things and a huge class and it was

8    Rule 23.  The issue is, whether there are individual parts of

9    <u>Wal-Mart</u> that would apply to an FLSA.  For example, whether the

10   principle that <u>Wal-Mart</u> set out with respect to the need for an

11   issue, the answer to which is dispositive on an issue in the

12   case and that can be answered on a class-wide basis, whether

13   that applies to the first-step certification in an FLSA action.

14           Yes, there are differences.  The specific <u>Wal-Mart</u> is

15   Rule 23, the unifying principle in <u>Wal-Mart</u> was the exercise of

16   discretion which was unsatisfactory to the Supreme Court.  But

17   the question is whether the legal principle set out in <u>Wal-Mart</u>

18   is simply irrelevant, not whether the facts are similar but

19   whether the legal principle that was set out for purposes of

20   Rule 23 is irrelevant to the first step of the collective

21   action determination.

22           MS. WALSH:  So the first step I would say it is

23   absolutely relevant and I would argue that the second step to

24   <u>Wal-Mart</u> doesn't apply.

25           I do anticipate that if this is authorized to class

1CKURUIC

1   members and we proceed as a collective, I do anticipate that

2   the defendants, of course, would raise <u>Wal-Mart</u> in its

3   de-certification motion.  And I would expect that they would

4   raise the whole issue of discretion as a basis for

5   de-certifying our class and what they would argue is that the

6   branch managers were not acting as the -- they were acting as

7   rogue managers and they were falsifying their employees' time

8   sheets and putting pressure on their personal bankers and that

9   Citibank corporate did not know anything about it because it

10  gave its branch managers discretion.

11          This is going back to the sales quotas and the

12  nationwide policies, we would rely on those policies in

13  addition to any other discovery that we uncovered to show that

14  Citibank did not give discretion to branch managers.  They kept

15  them on a very tight leash and they --

16          THE COURT:  You have to let me get a word in edgewise,

17  otherwise, you will never hear my question.

18          What difference does that make for purposes of an FLSA

19  action, because the issue is not whether there was a

20  discriminatory practice as was the issue in <u>Wal-Mart</u>; the issue

21  is whether these people worked and were not paid?  So whether

22  the branch managers had discretion or didn't have discretion,

23  there is no dispute that if the people worked the hours and

24  were not paid, they should be paid.  And if they were not paid,

25  it is a violation of the FLSA whether the branch managers had

| | |
|---|---|
| 1 | discretion or didn't have discretion.  The issue is not whether |
| 2 | there was a practice that violated the FLSA in terms of giving |
| 3 | branch managers discretion or not; the issue is, were employees |
| 4 | working overtime and not being paid, right? |
| 5 | MS. WALSH:  I completely agree with you. |
| 6 | THE COURT:  Hard to understand how the issue of |
| 7 | whether there was discretion or not discretion even is an |
| 8 | issue. |
| 9 | MS. WALSH:  I hope the defendants never raise it.  I |
| 10 | am not that optimistic.  I think they will raise it down the |
| 11 | road, but I completely agree with you, your Honor.  This is not |
| 12 | a Wal-Mart case.  This is not a case involving discrimination |
| 13 | and decision-making that -- |
| 14 | THE COURT:  Isn't the issue whether there were, and |
| 15 | you can correct me if I am wrong, a reasonable number of people |
| 16 | who worked overtime and were not paid overtime and whether |
| 17 | under the FLSA it is appropriate to bring together a collective |
| 18 | action on behalf of those people, so you have to know whether |
| 19 | there were sufficient people and sufficient indications that |
| 20 | there were sufficient people to make a determination on a |
| 21 | collective action basis? |
| 22 | MS. WALSH:  That's right.  That is really the only |
| 23 | inquiry at this stage is whether or not we have made a |
| 24 | sufficient showing that there are other people other than our |
| 25 | clients who worked overtime and were not paid for it.  And we |

1CKURUIC

1    have evidence from California, D.C. --

2            THE COURT:  -- or whether sending out the notice is

3    simply churning litigation which otherwise wouldn't exist?

4            MS. WALSH:  First of all, the remedial purposes of the

5    FLSA are favorable to the plaintiffs in that at this point all

6    we are doing is issuing a notice to the class.  We already have

7    the class list identifying the class members.  This is merely a

8    time to inform people that they have a possible claim.

9            THE COURT:  Have you been in contact with, if you can

10   say, the various class members?  There is only one opt-in.

11           MS. WALSH:  That's right.  And what we have done --

12   and we will be careful here -- I can tell you what we have not

13   done.  We have not solicited any clients.  We have not sent any

14   direct mailings to the collective members.  And we can't be

15   reprimanded -- the defendants were trying to chastise us for

16   not, effectively, soliciting more people from the class list

17   even though we have had it for a while.  We have been acting

18   above board and not sending solicitation letters, so we really

19   cannot be faulted for that.  We have done two investigations

20   and that is how we have obtained the declarations that we have

21   obtained.

22           And I can tell you, your Honor, that we have run into

23   a lot of current employees which has constrained our

24   investigation somewhat.

25           Also, we think that we have obtained testimony from

1CKURUIC

1    people in six states out of the 13 states where Citibank does

2    business.  And we think that is more than sufficient to satisfy

3    our modest thresholds right now.

4           In addition, we have gotten some discovery from the

5    defendants in terms of showing emails from regional managers

6    and branch managers which made it pretty clear that Citibank

7    corporate was not condoning the payment of overtime, that they

8    were trying to limit it as strictly as possible.  It was part

9    of the company-wide urgent initiative to keep expenses down

10   and --

11          THE COURT:  Yes.  There was a company-wide initiative

12   to keep expenses down, to keep overtime down, but emails don't

13   really stand for the proposition that you shall keep overtime

14   down by not paying it when it is earned.

15          MS. WALSH:  I think --

16          THE COURT:  Wholly understanding of having a policy --

17   don't let people work overtime, we cannot afford it.  We cannot

18   afford to pay time and a half.

19          MS. WALSH:  I agree with you that on its face it is

20   lawful to have a policy --

21          THE COURT:  After all of the discovery of the emails

22   there is precious little, except one case where remedy --

23          MS. WALSH:  We have gotten precious little discovery

24   on the topic.  We have only gotten emails from the branch

25   managers that supervised our plaintiffs and their supervisors.

1CKURUIC

1          THE COURT:  There are limits.  I have had no

2     objections from the magistrate judge's ruling on my discovery,

3     and there are proportionality limits as to what the appropriate

4     scope of discovery is.  You should have gotten the most

5     relevant discovery.

6          Is it your suggestion that if I were to approve this

7     at the first stage of the collective action, that that would

8     dramatically increase the amount of discovery that you were

9     seeking from the defendant?

10         MS. WALSH:  Yes, because so far we have only been

11    given --

12         THE COURT:  That is a pretty good reason not to

13    certify it.

14         MS. WALSH:  I think, in terms of we have only gotten

15    conditional class certification discovery, we have gotten a

16    very limited amount of information.

17         THE COURT:  But you have had the class list.  There is

18    one opt-in.  And you say that approving the collective will

19    dramatically increase the discovery.  The number of cases that

20    you have come up with where overtime was not paid are

21    relatively few out of a universe of 4,000.  And one of the

22    issues then becomes, OK, we have a total number added up --

23    including putting aside whether they are hearsay or not --

24    total number of individuals out of 4,000 that you say we have

25    evidence that they were not paid overtime is how many?

1CKURUIC

1          MS. WALSH:  I would say several dozen, about 27, 28

2    identified.

3          THE COURT:  You say 27 identified.  And you say 4,000

4    potential.  And you say, if you certify this on the first

5    stage, this will dramatically increase the discovery.

6          MS. WALSH:  Down the road as we proceed --

7          THE COURT:  That then is a strong reason not to

8    certify this.  27 individuals out of a class of 4,000.  And on

9    the other side you say, if I certify it, it will dramatically

10   increase the burden and cost of discovery in the case and we

11   have evidence because we have 27 people to impose on the

12   defendant individual discovery with respect to 4,000 people.

13          That's not a good answer.  Trust me.

14          MS. WALSH:  Courts have conditionally certified

15   nationwide cases on --

16          THE COURT:  I know that.  Usually, a response to a

17   question of what the impact on discovery would be, would be an

18   answer that it will be proportional to what is involved and

19   that you have means and methods of limiting the discovery --

20   not that certification at the first stage of an FLSA action

21   will impose burdensome cost on the defendant, to cause the

22   defendant to settle a case that might otherwise have been

23   defended.

24          All of that skews the purpose of the FLSA.

25          MS. WALSH:  If your Honor is concerned about the scope

1CKURUIC

```
1    of discovery, plaintiffs would be open to --

2             THE COURT:  Keep your voice up.

3             MS. WALSH:  If your Honor has concerns about the scope

4    of discovery, we would be willing to engage in some kind of

5    proportional basis on a case-by-case basis.

6             THE COURT:  You say am I concerned.  Of course I am

7    concerned.  I am concerned partially because of your answer,

8    right?  You tell me that if I certify it, that that will

9    dramatically increase the costs of the discovery, right?

10   Right?

11            MS. WALSH:  I think I just backtracked a bit on that,

12   that we would be willing to engage in proportionate discovery.

13   If the Court conditionally certifies, what you can be certain

14   is that we will get notice out to potentially collective

15   members and that's really what is important for present

16   purposes.

17            I understand your Honor's concern about discovery --

18            THE COURT:  And you say that this case can be easily

19   tried because what you really need is the audit records which

20   just show when did people check in, when did they leave and

21   what were they paid, right?

22            MS. WALSH:  They showed when people checked in and

23   when they left.

24            THE COURT:  So that you could see whether they worked

25   overtime or not?
```

1          MS. WALSH:  I think that definitely that would be very

2     helpful in that regard, sure.

3          THE COURT:  The rule says the Court must limit the

4     frequency or extent of discovery otherwise allowed by these

5     rules or by local rules if it determines that the burden or

6     expense of the proposed discovery outweighs its likely benefit,

7     considering the needs of the case, the amount in controversy,

8     the parties' resources, the importance of the issues at stake

9     in the action and the importance of the discovery in resolving

10    the issues.  The Court must do that.

11         And you say, if I grant your motion, the scope of

12    discovery will be "dramatically increased" because you have 27

13    individuals out of a potential collective class of 4,000.

14         MS. WALSH:  Right.  Like I said, your Honor, we are

15    open to engaging in some kind of step-by-step discovery

16    process, something that would satisfy your Honor's concerns

17    that the defendant is being overly burdened in the early stage

18    of the litigation.  But there is nothing in the FLSA that says

19    you cannot send out notices -- that's what we are really trying

20    to get at here is sending out notice to potential class

21    members.  And the showing that we have to make in order for us

22    to do that, your Honor, is very minimal.

23         THE COURT:  What do you think are the strongest cases

24    that you have with respect to certifying a comparable class

25    with the showing that you have made and the number of potential

1CKURUIC

1    people not paid overtime?

2              MS. WALSH:  One of the strongest cases I would say is

3    Gilbert.  It is a California case, but it was the same

4    defendant.  The case was filed in 2008.  The California court

5    certified a nationwide class of Citibank business bankers which

6    are the business equivalent of personal bankers.  They allege

7    very similar facts to what we have here, and I believe that was

8    based on only four declarations.

9              THE COURT:  It was a smaller class, wasn't it?

10             MS. WALSH:  Yes, presumably, it was a smaller class.

11             THE COURT:  It was how many, 2,000 versus 4,000?

12             MS. WALSH:  I am not sure exactly how big the class

13   was.  I believe the ultimate opt-in was several hundred.

14             THE COURT:  Any other case but Gilbert?

15             MS. WALSH:  Hallissey v. AOL.

16             THE COURT:  Keep your voice up.

17             MS. WALSH:  Hallissey V. AOL, Southern District,

18   certifying a class of 13,000 former AOL community leaders.

19   There were 12 plaintiffs and their supporting affidavits.

20             THE COURT:  Any other?

21             MS. WALSH:  The other, it is not a nationwide class

22   but the courts have certified a reasonable amount of people in

23   the class based on --

24             THE COURT:  -- groups of restaurants in the New York

25   City area.

1CKURUIC

1          MS. WALSH:  That's correct.

2          THE COURT:  I know.

3          If I were to certify a collective and you've had so

4     few people want to opt-in so far, and affidavits from some

5     others, why should discovery be increased in any way until we

6     see how many people opt-in?  There may only be a few hundred

7     who opt-in to your collective.  If there are a few hundred

8     people who opt-in to your collective, why should you be able

9     to -- as your words were -- to dramatically increase the amount

10    of discovery?

11         MS. WALSH:  I think what your Honor is saying sounds

12    pretty reasonable.  We do have some leftover conditional class

13    certification discovery that we were at an impasse with the

14    defendants on it and there were some search terms we have been

15    haggling over.  We would, at a minimum, want to get the rest of

16    that discovery because it has been ordered.

17         THE COURT:  Well, if it was ordered then --

18         MS. WALSH:  We should have it by now, frankly.  It has

19    taken quite awhile, your Honor, for us to get these documents

20    from the defendants.  So it is kind of tough to defend our

21    seeming lack of evidence when we have had to pull every single

22    document out of the defendants --

23         THE COURT:  All right.  Thank you.

24         MS. WALSH:  Thank you.

25         THE COURT:  Yes.

1CKURUIC

1        MR. LINTHORST:  As the Court is aware, the Supreme

2   Court has indicated that a collective action should proceed

3   only in appropriate cases.  And the showing that plaintiffs

4   have to make is that they are bound together by a factual nexus

5   that they are all victims of a common and unlawful policy.  So

6   the similarly situated requirement, even at the first stage has

7   to at least be tethered to a common and unlawful policy.

8        Of course, as the Court noted, they are similarly

9   situated in a lot of irrelevant ways.  They are all bound by

10   Citibank's policy on taking bereavement leave, but has nothing

11   to do with claims for working time that is compensable under

12   the FLSA and not being paid for it with the supervisor's

13   knowledge or whether they should know it.

14        And the Second Circuit in the <u>Myers</u> decision has

15   indicated that that showing cannot be made on unsupported

16   assertions.

17        The decision to grant conditional certification is a

18   significant point in the case.  It is a significant one to

19   Citibank, and it is a significant use of the Court's power to

20   authorize notice to thousands of current and former employees

21   suggesting that Citibank has violated the law and potentially

22   turning Citibank into direct litigation adversaries with a

23   significant number of its current employees.

24        THE COURT:  Only those who opt-in.

25        MR. LINTHORST:  That's correct.

1CKURUIC

1      THE COURT:  And the notice would indicate it is those

2  who, in words or substance, believe that they have a claim

3  because they worked overtime and were not paid, right?

4      MR. LINTHORST:  We would say that any notice should

5  require that.  I don't believe the plaintiffs have proposed

6  that but, nonetheless, these are lay people --

7      THE COURT:  What would the notice that the plaintiff

8  want say?

9      MR. LINTHORST:  I don't believe that there is any

10  representation or qualification for opting in, that you have

11  worked overtime without being paid for it.

12      THE COURT:  Is that right?  How could the class be

13  determined other than by those who work as personal bankers and

14  who worked and were not paid overtime?  The class doesn't

15  include people who have no claim?

16      MR. LINTHORST:  I agree with that, your Honor, but

17  people opt-in when they get a court notice, whether they have a

18  claim or not.

19      THE COURT:  Ms. Steven Walsh, your notice of claim

20  definition of the class is people who worked and were not paid?

21      MS. WALSH:  It is to all persons currently and

22  formerly employed since August 6, 2007 --

23      THE COURT:  Please keep your voice and stand up when

24  you talk.

25      MS. WALSH:  -- by Citibank in a position of personal

1CKURUIC

banker in the United States to recover unpaid overtime and all

current and former personal bankers who were employed by

Citibank at any time since August 6, 2004 at Citibank branches

in New York to recover unpaid overtime pursuant to New York

State labor laws.

            THE COURT:  Doesn't it have to include some

explanation that the members of the class are those -- as you

define it in your complaint, I believe -- who worked overtime

and were not paid, right?

            MS. WALSH:  Right.

            THE COURT:  OK.

            MS. WALSH:  On page 2, the notice under Section 3 who

can join, we state that we sued on behalf of ourselves and all

affected current and former employees who are or were employed

at Citibank as personal bankers at Citibank branches and who

have failed to receive paid overtime for time worked over 40

hours in a week.

            We are happy it make it clearer.

            THE COURT:  Thank you.

            MR. LINTHORST:  Your Honor, that doesn't demonstrate

that they are similarly situated.  The consideration for a

conditional action is judicial economy.  Getting a group of

people who all claim that they worked overtime without proper

compensation based on their individual circumstances is not a

collective action.  And the plaintiffs have not articulated any

1CKURUIC

factual nexus that binds the class to a common and unlawful

policy.  You just have a small collection of people saying,

this is my story.  This is what my situation is.

          THE COURT:  Can I ask you the same questions that I

was asking the plaintiff.

          Why is that right, essentially?

          You are asking, and much of the papers are devoted to

whether there is this common policy of setting quotas which

require people to meet the quotas or they will be sanctioned,

and they can't meet the quotas within a 40-hour week so they

work overtime but the company has a policy of not wanting to

pay overtime and, therefore, they work the overtime and don't

get paid by any one of a number of means.  You say there has to

be a common policy which is more than simply having people work

for you and not paying them overtime, having people who work

more than 40 hours and don't get paid.  But all of this other

stuff that causes that would not be a violation of the FLSA.

The only violation of the FLSA is working more than 40 hours

and not getting paid.

          So my question is, why is it so -- and you can tell me

because the Supreme Court has said that -- the relevant be-all

and end-all inquiry as the first step of the process?

          MR. LINTHORST:  Let's break it down a little bit.

          So the employer has every right to say, this is what

we want from our employees in a 40-hour week.

1CKURUIC

```
1        THE COURT:  And every right to say, we don't want you
2    to work overtime, don't work overtime.
3        MR. LINTHORST:  Even as to those aspects of this case,
4    we don't think there is commonality and similarly situated.
5        The sales quotas were determined on an individual
6    basis.  There is wide variety in the sales quotas, even among
7    the handful of folks that are before the Court.  There is a
8    wide variety in the overtime.  All of the plaintiffs opt-in and
9    declarants recorded and were paid for overtime in over half of
10   their paychecks.  Citibank paid almost 8 million in overtime to
11   personal bankers during the relevant period.
12       THE COURT:  7.8.
13       What was the total payroll?
14       MR. LINTHORST:  I don't know, but it showed --
15       THE COURT:  In the context of Citibank, yes, I know it
16   shows and each of the plaintiffs were paid some overtime.  Does
17   it strike you as an enormous amount of money that was paid in
18   overtime, $7.8 million to all of the Citibank --
19       MR. LINTHORST:  It is not an enormous amount, and
20   there is no requirement to pay an enormous amount.
21       THE COURT:  Of course not.  But when that figure gets
22   constantly repeated, it doesn't strike me as saying, of course,
23   it is not reasonable to think that Citibank had a policy of
24   encouraging people to work overtime and not paying them because
25   we paid 7.8 million in overtime.
```

1CKURUIC

1         MR. LINTHORST:  I understand, but what is the factual

2    nexus?  If Ms. Ruiz can show that despite ignoring her

3    supervisor's request that she take lunch and leave on time and

4    Citibank's policy is to record all of her time, that

5    notwithstanding all of that that she worked overtime, that is

6    compensable under the FLSA standards and her employer knew

7    about it or should have known about it, what does that tell us

8    about a personal banker in Rochester and whether they did each

9    of those things?

10        It tells us absolutely nothing.  If a personal banker

11   in Rochester said, I also didn't get overtime, then litigate

12   those issues for them, but there is no factual nexus between

13   them that will result in any judicial efficiencies that would

14   cause us to have to invite claims to be filed that would never

15   be filed, to be concentrated in the court when we know now

16   there is no articulated connection, there will be no judicial

17   efficiency and we are just going to have a whole bunch of

18   individual claims that have been stirred up and never would

19   have been filed.

20        THE COURT:  Isn't that always the case with respect to

21   an FLSA hours worked and not paid, as opposed to a

22   misclassification case; you always have to ask with respect to

23   each of the employees, what hours did they work and weren't

24   they paid?

25        That's an FLSA case.  What are the efficiencies?  You

1CKURUIC

might be able to gather all of the records together, what hours
did they work.  Plainly, the defendant has to be allowed to
defend each of those individual claims.

MR. LINTHORST:  What causes courts to certify is
something more.  They are at a restaurant where a manager told
them, you have to work off the clock.  That is a common factual
nexus.  They still have to show that they worked there and it
was compensable.  They have shown that their employer -- their
manager told them.  If you have enough people coming and
saying, yeah, this manager said that, then you have a common
factual nexus that binds this group of people.  When you have a
thousand locations nationwide, 4,000 people and an equal number
of branch managers, you don't have that factual nexus.

THE COURT:  You don't really think that as a result of
the opt-in, you would get 4,000, right?  You don't think that
you would get more than a relatively small number, right; if
you got a relatively large number, it would tend to support the
plaintiff's allegation?

MR. LINTHORST:  I don't think there is going to be
4,000, but what if it were 400?  That is a lot of claims that
never would have been filed.  Citi now is adverse to 400
people, many of whom could be current employees.  If we have no
reason now, no articulated factual nexus that binds them
together, then notice shouldn't go out to get those claims.

THE COURT:  What do you think are the strongest cases,

1CKURUIC

1  given the lenient standard under the first stage of collective

2  action certification, where it's been denied?

3            MR. LINTHORST:  I think Eng-Hatcher v. Sprint, Nextel.

4            THE COURT:  That was Judge Jones' case.

5            MR. LINTHORST:  Judge Jones.

6            THE COURT:  There was only one plaintiff there?

7            MR. LINTHORST:  There was one plaintiff.  She pointed

8  to 600 other pending cases and other internal complaints as

9  well as the same type of evidence that plaintiffs here

10  submitted like I knew other personal bankers who told me that

11  they were not paid overtime.

12            Simmons v. T-Mobile.

13            THE COURT:  What court?

14            MR. LINTHORST:  Southern District of Texas.

15            Those two cases are similar because they are sort of

16  de facto -- you had this lawful policy that must have resulted

17  in a nationwide unlawful policy and they declined to certify.

18            There are a number of cases that we cite on page 15 of

19  our brief that are not that specific theory but say, where the

20  employer has a policy against off-the-clock work, does claim to

21  pay overtime, the plaintiffs' allegations are, essentially,

22  that they were the victims of rogue managers.  That is the

23  Brickey case out of the Western District of New York, the

24  Steaver case out of the Western District of New York and the

25  Diaz case out of the Western District of New York.

1CKURUIC

1        I just want to touch base on the cases that the

2   plaintiff cited.

3        The Gilbert case was a case where during the

4   limitations period, the business banking officers had been

5   classified as exempt and were challenging that exempt

6   classification.  It also included after the reclassification,

7   but my read on the decision is that the misclassification seems

8   to drive the decision, so there was not a lot of analysis on

9   the off-the-clock piece.

10       The Hallissey case was a case where all of the reputed

11  class members were classified as volunteers so they didn't get

12  any overtime or any payment at all.  So that was a common

13  factual nexus that bound them together.

14       I just want to touch base on the discovery.

15       We are not at the outset of this case.  We are 16

16  months into the case.  Plaintiffs were afforded a significant

17  period in which to conduct discovery, to marshal the evidence

18  to support their motion.

19       At the Court's direction we produced the class list

20  with over 4,000 personal bankers.  While we certainly didn't

21  think that was license for plaintiffs to go soliciting claims,

22  it certainly gave them the tools they need to investigate and

23  find evidence of a common factual nexus of a much larger group

24  of people.

25       We also went through email discovery.  And,

1CKURUIC

1    essentially, where we landed is, we conducted email searches

2    through a little more than 50 custodians.  These were all of

3    the branch managers for the plaintiffs and the opt-ins.  These

4    were the branch managers for 10 additional branches -- not

5    randomly selected, but selected by the plaintiffs.  So these,

6    presumably, are the branches where they think you are most

7    likely to find off-the-clock violations.  It was the area

8    manager.

9            So the hierarchy is:  Personal banker, branch manager,

10   area manager, division director.  So we have also searched all

11   of the emails of all of the area managers with responsibilities

12   for the plaintiffs, all of the division directors with

13   responsibility for those area managers.  So you ended up

14   searching the emails of 35 branch managers, a number of area

15   managers who have responsibility across five states, and

16   division directors who, I am told, had responsibility for

17   almost all of the branches nationally.  We negotiated 82

18   searches to look for emails through these custodians, obviously

19   tailored to the allegations in this case -- on overtime, on

20   monitoring, reducing expenses -- all of these things.  82

21   different searches and we produced the results to the

22   plaintiffs and the plaintiffs have gone forward with what they

23   think from what the evidence shows.

24           And we respectfully submit that it doesn't show

25   anything, that it confirms no common policy of failing to pay

1CKURUIC

1    personal bankers off the clock.  They found potential

2    violations in two branches, one of which was remedied long

3    before the case was ever filed, the other in which the net

4    effect of what was being directed was to overpay the employee

5    by 14 minutes --

6              THE COURT:  I have read those supplemental

7    submissions.

8              MR. LINTHORST:  There is nothing we have been ordered

9    to produced that we haven't produced.

10             THE COURT:  There is a motion to strike.  Let me just

11   make an observation on that.

12             As I read the motion, there is no case in the Southern

13   District of New York which has granted a motion to strike.

14   There is one case, perhaps, where a judge in the Southern

15   District has said, I am not going to consider this hearsay, but

16   the motion to strike is -- was there permission to file the

17   motion to strike or was it just filed?

18             MR. LINTHORST:  I believe it was just filed.

19             THE COURT:  One reason why it is not a great idea is

20   that it really appears like an effort to circumvent the page

21   limits by saying, your evidence is no good and here are 10

22   pages in which I am going to explain to you why your evidence

23   is no good.  And the reason I suspect there are no cases in the

24   Southern District is, we discourage it.  We set page limits for

25   a reason and perfectly able in the motion itself to say that

1CKURUIC

1    the evidence in support of the motion doesn't support the

2    motion because it is based upon on hearsay or double hearsay --

3    just an observation on motions to strike.

4             MR. LINTHORST:  No.  I appreciate that, your Honor.

5    That was not our intent.  Our intent was to make sure that we

6    preserved the evidentiary objection to the hearsay.

7             THE COURT:  All right.  Anything else?

8             MS. WALSH:  Your Honor, can I address --

9             THE COURT:  No.  Hold on.

10            MR. LINTHORST:  Your Honor, I just would respectfully

11   submit that Citibank has done what it can do to comply with the

12   FLSA.  It has a policy.  It trains its managers.  It enforces

13   by threat of discipline.

14            Employers are searching for a way to not be sued all

15   the time and face this low standard where, with no

16   determination, they have potentially hundreds of claims against

17   them which creates pressure to settle, which creates problems.

18   There has to be a standard at the first level that gives

19   employers the incentive to comply with the statute and not be

20   worn down by case after case involving a collective action.

21            Thank you, your Honor.

22            THE COURT:  Thank you.

23            Yes.

24            MS. WALSH:  I would like to address defendant's

25   argument that you can't predicate an FLSA violation based on

1CKURUIC

 1    two lawful policies, on the one hand, requiring that people --

 2                THE COURT:  Would you use the mic.

 3                MS. WALSH:  Sure.

 4                The defendant has argued that you cannot predicate an

 5    FLSA violation based on the existence of two competing but

 6    lawful policies such as having people work very hard versus

 7    wanting to control costs on the other hand.

 8                The Courts have certified classes under these very

 9    scenarios.  One of the cases we rely on in our brief is the

10    Levy v. Verizon Info Services decision.  That's in the Eastern

11    District.  It is a 2007 decision.  The court conditionally

12    certified a class of telephone sales representatives who

13    basically made the same type of allegations that we are making

14    here, that their managers required that the sales

15    representative be paid for overtime only if they were

16    preapproved for the overtime.

17                THE COURT:  Next.

18                MS. WALSH:  Also, another very good decision in our

19    papers is Falcon v. Starbucks decision.

20                THE COURT:  Right.

21                MS. WALSH:  If I may provide one authority to your

22    Honor, to the extent that the Court is concerned that we have

23    not identified more than a few dozen opt-ins into the case, in

24    the Second Circuit, we are not required to identify a certain

25    threshold amount of opt-ins.  We had to make a minimal showing.

1CKURUIC

1    The Cuzco v. Orion Builders decisions states that the plaintiff

2    is not required to indicate specifically how many potential

3    opt-in plaintiffs may join the suit nor must the plaintiff join

4    with other potential plaintiffs at the time his is filed in

5    order for a representative action to be precertified.

6            The whole point of sending notice to the class is to

7    enable us to identify these additional collective action

8    members.  If people have a claim, then they simply won't

9    opt-in.

10           THE COURT:  Thank you.

11           I will take the motion under advisement.

12           I appreciate your briefs.  I appreciate the argument.

13           Thank you all.

14

15                              o    0   o

16

17

18

19

20

21

22

23

24

25