UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

FREDERICK L. WINFIELD, ZULMA G.
MUNIZ, JAMES STEFFENSEN and ADORAM
SHEN, Individually and On Behalf of          10 Civ. 7304 (JGK)
All Others Similarly Situated,               10 Civ. 5950 (JGK)

                    Plaintiffs,              OPINION AND ORDER

          - against -

CITIBANK, N.A.,

                    Defendant.
————————————————————————————
DIGNA RUIZ, Individually and On
Behalf of All Others Similarly
Situated,

                         Plaintiffs,

               - against –

CITIBANK, N.A.

                         Defendant.
————————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiffs, Frederick L. Winfield, Zulma G. Muniz,

James Steffensen, Adoram Shen, and Digna Ruiz, and other

putative class members (collectively the "plaintiffs"), move for

this Court to grant a conditional certification and provide

notice to a proposed nationwide class pursuant to § 216(b) of

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.

The defendant, Citibank, N.A. ("the defendant"), opposes this

motion, arguing that the class should not be conditionally

certified because the plaintiffs have failed to demonstrate that

they are similarly situated to one another and to potential opt-in plaintiffs, and have also failed to show that they and potential opt-in plaintiffs were subject to a common, unlawful policy or practice.  The defendant also moves to strike all hearsay statements relied upon by the plaintiffs in their papers in connection with this motion.

## I.

The plaintiffs were previously employed by the defendant as "Personal Bankers."  (Winfield Am. Compl. ¶ 12; Ruiz Compl. ¶ 9.)  They bring this motion for conditional certification with respect to two actions that have been consolidated for the purposes of this motion and general pre-trial proceedings.  In the Ruiz action, plaintiff Digna Ruiz, a resident of New York, brings claims under the FLSA and the New York Labor Law ("NYLL"), § 650 et seq.  (Ruiz Compl. ¶¶ 32-41.)  She seeks to bring her FLSA claims on behalf of all current and former Personal Bankers employed by the defendant nationwide since August 6, 2007, and her NYLL claims on behalf of all current and former Personal Bankers employed in the defendant's New York branches since August 6, 2004. (Ruiz Compl. ¶¶ 3-4.)  Dara Ho, also a New York resident, has opted-in to this action.

In the Winfield action, plaintiffs Frederick Winfield, Zulma G. Muniz, James Steffensen, and Adoram Shen bring claims

under the FLSA, purportedly on behalf of all Personal Bankers employed at the defendant's branches nationwide since September 22, 2007.[1]  (Winfield Am. Compl. ¶ 13.)  Plaintiffs Winfield, Muniz and Shen also bring purported class claims on behalf of District of Columbia, Illinois, and California subclasses, respectively, alleging violations of those states' laws. (Winfield Am. Compl. ¶¶ 14-16.)

As Personal Bankers, the plaintiffs' primary job responsibility was to sell the defendant's financial products and services to the general public in Citibank branches. (Winfield Am. Compl. ¶ 21; Ruiz Compl. ¶ 15).  The plaintiffs were employed in several different Citibank branches throughout the United States.  The plaintiffs allege that all Personal Bankers were classified as "non-exempt" employees and were therefore eligible for overtime payments under federal and state laws.  (Winfield Am. Compl. ¶ 22; Ruiz Compl. ¶ 9.)  The plaintiffs contend that the defendant engaged in a policy and practice of failing to pay overtime compensation for all hours worked in excess of forty hours per week.

The plaintiffs assert that the defendant employed a "dual-edged" policy of strictly limiting the amount of overtime that Personal Bankers could accrue while imposing rigorous sales

---

[1] The Winfield action also asserts claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., which are not at issue on this motion.

quotas that could not feasibly be met in a forty-hour work week.
The plaintiffs contend that Personal Bankers faced an untenable
position where they needed to work overtime to meet sales quotas
that, if not met, would subject them to discipline or
termination, but were told by their Branch Managers[2] that
accruing any such overtime was forbidden.  (Ho Dep. 124-30;
Muniz Dep. 44, 45, 48-49, 51, 53-54, 141; Ruiz Dep. 98-99, 157-
60, 336-37, 344; Shen Dep. 143-44, 172, 198-99; Steffensen Dep.
128-29, 161-64; 167, 171; Winfield Dep. 176, 189, 196-97, 321-
22.)  The result of these conflicting imperatives, according to
the plaintiffs, was that Personal Bankers worked overtime but
were not compensated for all hours worked, because their Branch
Managers instructed or pressured them not to record these hours
or altered timesheets to remove overtime hours recorded.  (Ho
Dep. 124-30, 219, 240, 242-43; Muniz Dep. 48-49, 51, 53-54, 141;
Winfield Dep. 182, 215, 241-42; Steffensen Dep. 161-64; Ruiz
Dep. 157-60; Shen Dep. 143-44.)  The plaintiffs also submit four
signed affidavits in support of their motion from other Personal
Bankers who similarly state that they were instructed not to
report or were discouraged from reporting overtime hours or had
their timesheets altered by Branch Managers.  (Ash Decl. ¶¶ 7,
10-12; Handy Decl. ¶¶ 10-13; Ijaz Decl. ¶¶ 8, 10; Wilson Decl.

---

[2] The plaintiffs refer to the managers at their individual
branches as "Branch Managers" and to those managers in charge of
a specific region as "Regional Managers" or "Area Managers."

¶¶ 7, 10-11.)

The plaintiffs now seek an order pursuant to 29 U.S.C. § 216(b) granting conditional certification and authorizing the plaintiffs to send notice to all Personal Bankers identified on a Class List provided by the defendant, representing approximately 4,000 Personal Bankers employed by the defendant nationwide during the FLSA class periods identified in the complaints.  (Decl. of Murielle J. Steven Walsh ("Walsh Decl."), Ex. 7.)  The plaintiffs have included a proposed notice to all prospective class members and consent to joinder.  (Walsh Decl. Ex. 2.)

The defendant opposes the plaintiffs' motion, arguing that the plaintiffs have failed to show that they are similarly situated to one another and to potential opt-in plaintiffs nationwide.  The defendant also contends that the plaintiffs have not shown that they were subject to a common, unlawful policy or practice rather than merely to anomalous FLSA violations committed by individual, rogue managers.  The defendant argues that, even if the Court does conditionally certify the class, it should not authorize nationwide notice but should instead limit notice to those branches where the plaintiffs or declarants personally worked.  Finally, the defendant objects to certain aspects of the plaintiffs' proposed notice.

The defendant also brings a motion to strike all hearsay statements relied upon by the plaintiffs in their papers in connection with this motion.

## II.

Under § 216(b) of the FLSA, employees may maintain actions to recover unpaid wages collectively where the employees are "similarly situated" and give consent in writing "to become . . . a party [to the action] and such consent is filed [with the Court]." 29 U.S.C. § 216(b). "District courts have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Klimchak v. Cardrona, Inc., No. 09 Civ. 4311, 2011 WL 1120463, at *4 (E.D.N.Y. Mar. 24, 2011) (internal quotation marks and alterations omitted) (quoting Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010)). The Second Circuit Court of Appeals has endorsed a two-step method of certification in an opt-in collective action under the FLSA. Myers, 624 F.3d at 554-55. At the first step, the Court must determine whether it is appropriate to send notice to potential opt-in plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," Myers, 624 F.3d at 555, thus issuing a "conditional certification" of the

collective action, see Schwerdtfeger v. Demarchelier Mgmt.,
Inc., No. 10 Civ. 7557, 2011 WL 2207517, at *3 (S.D.N.Y. June 6,
2011); Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469,
475 (S.D.N.Y. 2010) ("Orders authorizing notice are often
referred to as orders 'certifying' a collective action, even
though the FLSA does not contain a certification requirement.").

In exercising its discretion at the conditional
certification stage, "the court does not resolve factual
disputes, decide substantive issues going to the ultimate
merits, or make credibility determinations." Cunningham v.
Elec. Data Sys. Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)
(internal citations omitted). The plaintiffs need only make a
"modest factual showing that they and potential opt-in
plaintiffs together were victims of a common policy or plan that
violated the law." Myers, 624 F.3d at 555 (internal quotation
marks and citations omitted).[3]

_____

[3] The defendant contends that the plaintiffs should be required
to meet a more exacting standard because substantial discovery
has already been conducted in this case. However, the defendant
does not cite any case in this Circuit that has adopted this
approach. Instead, the case law is clear that a heightened
standard is not appropriate during the first stage of the
conditional certification process and should only be applied
once the entirety of discovery has been completed. See, e.g.,
Harper v. Gov't Employees Ins. Co., No. 09 Civ. 2254, 2011 WL
4963770, at *2 (E.D.N.Y. Oct. 13, 2011) ("Defendant's main
objection is that because some discovery has been completed,
. . . a more stringent post-discovery analysis should have been
applied . . . . [However], courts in this circuit hold
generally that until the completion of discovery, the first tier

If the plaintiffs demonstrate that "similarly situated" employees exist, the Court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a "collective action throughout the discovery process." Cunningham, 754 F. Supp. 2d at 644. "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555.

### III.

The defendant moves to strike all hearsay statements relied upon by the plaintiffs that are contained in the deposition testimony and declarations submitted in support of this motion. The defendant contends that this testimony recounts statements made by others, namely statements by other Personal Bankers that they were not paid for all overtime hours worked, and statements

---

analysis set forth in Myers applies."); Cunningham, 754 F. Supp. 2d at 645 ("Even where the parties have undertaken substantial discovery, our courts have continued to use the first-stage certification analysis.") (collecting cases).

by Branch Managers allegedly repeating what Area or Regional
Managers told them about overtime policies.

On a motion for conditional certification "courts in this
Circuit regularly rely on [hearsay] evidence to determine the
propriety of sending a collective action notice." Moore v.
Eagle Sanitation, 276 F.R.D. 54, 59 (E.D.N.Y. 2011) (internal
quotation marks and citation omitted); see also Lujan v. Cabana
Mgmt., No. 10 Civ. 755, 2011 WL 317984, at *4 n.9, *6 (E.D.N.Y.
Feb. 1, 2011) (noting that "courts frequently consider hearsay
in deciding whether to issue class notice" and that striking
hearsay statements is "an approach not taken in this district
given the 'modest factual showing' required at the notice
stage") (citation omitted); Zivali v. AT&T Mobility LLC, 646 F.
Supp. 2d 658, 662 (S.D.N.Y. 2009) ("Defendants' argument that
plaintiffs' declarations are comprised of idiosyncratic,
unrepresentative, and conclusory allegations based on
impermissible hearsay is of no moment."); Fasanelli v. Heartland
Brewery, Inc., 516 F. Supp. 2d 317, 321-22 (S.D.N.Y. 2007)
(rejecting defendants' objection that declarations in support of
plaintiff's motion for conditional certification contained
"inadmissible hearsay, speculation, personal beliefs, and
conclusions"). That approach is consistent with the purpose of
conditional certification which is only a preliminary
determination as to whether there is a sufficient showing to

warrant notice being sent to the purported collective class to allow members to opt-in to the lawsuit.  Moreover, "the Defendant will have another opportunity to object to class certification after discovery." Fasanelli, 516 F. Supp. 2d at 322.

Thus, it is unnecessary to strike any hearsay statements at this preliminary stage of the litigation.  The Court will afford any such hearsay statements the weight to which they are entitled.[4]  The defendant's motion to strike is therefore **denied without prejudice.**


## IV.

### A.

In this case, the plaintiffs have satisfied their minimal burden of showing that they are similarly situated to one another and to potential opt-in plaintiffs.  Five plaintiffs, one opt-in plaintiff,[5] and four declarants each allege that they were employed as Personal Bankers, a position classified as non-exempt, and were not always compensated for time worked in

---

[4] Moreover, some of the statements that the defendant objects to as hearsay, namely statements attributed to managers employed by the defendant, are not hearsay.  See Fed. R. Ev. 801(d)(2)(D). In any event, there is sufficient non-hearsay evidence to support conditional certification.

[5] For ease of reference, the court will use the term "plaintiffs" to refer to both the named plaintiffs and the opt-in plaintiff.

excess of forty hours per week.  (Ho Dep. 124-30, 219, 240, 242-43; Muniz Dep. 48-49, 51, 53-54, 141; Winfield Dep. 182, 215, 241-42; Steffensen Dep. 161-64; Ruiz Dep. 157-60; Shen Dep. 143-44; Ash Decl. ¶¶ 7, 10-12; Handy Decl. ¶¶ 10-13; Ijaz Decl. ¶¶ 8, 10; Wilson Decl. ¶¶ 7, 10-11.)  Two of the plaintiffs and a declarant also testify that they are aware of other Personal Bankers who similarly worked overtime and were not always compensated for overtime worked.  (Ho Dep. 208-09, 263; Steffensen Dep. 187-91; Wilson Decl. ¶¶ 12-13.)  The plaintiffs and declarants assert that the failure to pay overtime was the result of the defendant's conflicting policies of strictly limiting the number of overtime hours that could be accrued while simultaneously encouraging Personal Bankers to work overtime by requiring them to meet strict sales quotas that could not reasonably be accomplished in a forty-hour work week. (Ho Dep. 124-30; Muniz Dep. 44, 45, 48-49, 51, 53-54, 141; Ruiz Dep. 98-99, 157-60, 336-37, 344; Shen Dep. 143-44, 172, 198-99; Steffensen Dep. 128-29, 161-64; 167, 171; Winfield Dep. 176, 189, 196-97, 321-22; Ash Decl. ¶¶ 6-12; Handy Decl. ¶¶ 5-6, 8-13; Ijaz Decl. ¶¶ 5-6, 8-10; Wilson Decl. ¶¶ 6-11.)  Moreover, the plaintiffs have presented evidence that their sales quotas were set by uniform nationwide standards in which the quotas were proportional to Personal Bankers' salaries, and that these quotas were enforced by a nationwide step-by-step disciplinary

process with penalties including probation and termination.
(Walsh Decl. Exs. 8, 11-14, 17-18.)

Other courts have found plaintiffs to be similarly situated
when they made common allegations that dual-edged policies
similar to those alleged here effectively required them to work
uncompensated overtime.  See Burkhart-Deal v. Citifinancial,
Inc., No. 07 Civ. 1747, 2010 WL 457127, at *2 (W.D. Pa. Feb. 24,
2010) ("In this case, all affidavits submitted by Plaintiff
contain a sufficiently similar allegation of injury, based on an
unwritten 'policy' involving sales targets, job
responsibilities, and managerial personnel, that discouraged
them from recording or requesting overtime.  They . . . all
allege that they worked for Defendant . . ., were de facto
required to work more than forty hours per week, and were not
always compensated for that overtime."); Falcon v. Starbucks
Corp., 580 F. Supp. 2d 528, 536-37 (S.D. Tex. 2008) (concluding,
on motion for decertification, that plaintiffs were similarly
situated where they presented evidence that the defendant's
policy of requiring them "to perform job duties that could not
easily be completed within 40 hours while, at the same time,
strongly discouraging overtime" resulted in off-the-clock work
and time shaving); Levy v. Verizon Info. Servs., Inc., No. 06
Civ. 1583, 2007 WL 1747104, at *2, *4 (E.D.N.Y. June 11, 2007)
(finding telephone sales representatives similarly situated

where they alleged that they were encouraged to work overtime to
meet strict sales quotas but that overtime had to be and rarely
was pre-approved, resulting in a failure to pay overtime hours
worked).

The defendant contends, however, that the plaintiffs are
not similarly situated to one another and to other potential
opt-in plaintiffs because their testimony reveals
inconsistencies regarding the plaintiffs' motives for working
overtime; how much overtime, if any, they were paid; and what
job duties they performed, among other purported discrepancies.
However, the relevant "issue . . . is not whether Plaintiffs and
[potential opt-in plaintiffs] were identical in all respects,
but rather whether they were subjected to a common policy to
deprive them of overtime pay when they worked more than 40 hours
per week." Raniere v. Citigroup, Inc., No. 11 Civ. 2448, 2011
WL 5881926, at *25 (S.D.N.Y. Nov. 22, 2011) (internal quotation
marks and citation omitted).  The plaintiffs need not
demonstrate that they are similarly situated in every respect,
provided they are similarly situated with respect to the FLSA
violations they allege.  See, e.g., Falcon, 580 F. Supp. 2d at
536-37 (rejecting argument that differing job duties and
motivations for working overtime defeated a similarly situated
finding where all employees alleged that they were not
compensated for overtime hours worked); Hallissey v. Am. Online,

No. 99 Civ. 3785, 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008) (noting that "[t]he proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated <u>with respect to their allegations that the law has been violated</u>" and rejecting the argument that "circumstances unique to each [employee]" precluded a similarly situated finding) (internal quotation marks and citation omitted).

Thus, the plaintiffs' and declarants' common allegations that they were effectively required to work more than forty hours per week but were not compensated for all overtime hours worked suffice to meet their minimal burden of showing that they are similarly situated to one another and to potential opt-in plaintiffs.

### B.

The defendant argues, however, that the plaintiffs have not made a modest factual showing that they and potential opt-in plaintiffs are similarly situated in that they were subject to "a common policy or plan that violated the law." <u>Myers</u>, 625 F.3d at 555. Instead, the defendant contends, the plaintiffs have at best shown that they may have been victims of anomalous FLSA violations committed by individual, rogue managers.

The defendant first contends that the Court should not rely on facially lawful policies of limiting the amount of overtime

accrued as a basis for presuming a common pattern or practice of FLSA violations.  The defendant emphasizes that it has a written policy requiring that all overtime hours worked be recorded and paid.  However, the existence of a formal policy that is facially unlawful is not a prerequisite for conditional certification.  Instead, it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations.  Indeed, several courts have held that "de facto policies" of this nature can be actionable under the FLSA.  See Burkhart-Deal, 2010 WL 457127, at *3 ("An unwritten policy or practice resulting in unpaid overtime, such as hinging management pay on meeting hours targets, may be actionable under the FLSA."); Falcon, 580 F. Supp. 2d at 536 ("Defendants correctly note that it is not unlawful for an employer to have a policy of discouraging overtime.  Where such a policy, however, in combination with other factors, leads to a consistent pattern of FLSA violations, it can support a finding that plaintiffs are similarly situated for purposes of section 216."); Blakes v. Illinois Bell Tel. Co., No. 11 Civ. 336, 2011 WL 2446598, at *5 (N.D. Ill. June 15, 2011) ("[Plaintiffs] assert that AT&T Illinois enforces an unwritten de facto policy that discourages employees from seeking compensation for work performed outside their shift and that forces them to perform uncompensated work off-the-clock.

Courts in this district regularly allow plaintiffs to pursue collective actions under the FLSA in these circumstances." (internal quotation marks and citations omitted)).

The plaintiffs here concede that the defendant's policies of strictly limiting the number of overtime hours that could be accrued and of requiring Personal Bankers to meet strict sales quotas were lawful on their face. The plaintiffs do not contend that these policies themselves constitute the "common policy or plan that violated the law" that they must show for conditional certification. Myers, 625 F.3d at 555. However, they present evidence that these policies resulted, in practice, in a pattern of FLSA violations. The plaintiffs allege that their Branch Managers reconciled the competing imperatives of limiting overtime and meeting sales quotas by permitting or encouraging Personal Bankers to work overtime to meet their quotas but at the same time forbidding them from or pressuring them not to report overtime; refusing to approve timesheets indicating overtime hours worked; or shaving hours off timesheets they submitted. (Ho Dep. 124-30, 219, 240, 242-43; Muniz Dep. 48-49, 51, 53-54, 141; Winfield Dep. 182, 215, 241-42; Steffensen Dep. 161-64; Ruiz Dep. 157-60; Shen Dep. 143-44; Ash Decl. ¶¶ 7, 10-12; Handy Decl. ¶¶ 10-13; Ijaz Decl. ¶¶ 8, 10; Wilson Decl. ¶¶ 7, 10-11.) For example, plaintiff Muniz testified that: "[My Branch Manager] said that I needed to do whatever it took to

meet my goals.  That Regional was not approving overtime, and
that even if I work overtime, I was not allowed to put it on the
sheet." (Muniz Dep. 141.)  Similarly, plaintiff Steffensen
testified that: "They didn't want to give you overtime, but at
the same time they still wanted us to get the business people
walking in [as potential customers], so they would tell us to
stay, work." (Steffensen Dep. 167.)  However, according to
plaintiff Steffensen, his Branch Manager would not always
approve timesheets reflecting these overtime hours worked.
(Steffensen Dep. 161-64.)  In addition, one email from a Branch
Manager at the Richmond Hill, New York branch indicated that the
conflicting imperatives of limiting overtime and enforcing sales
quotas had led to some employees in her branch not being paid
overtime.  She explained that:  "The [Personal Bankers] have
been working way more than 40 hours and not getting paid for it.
. . . It seems that they were pressured to work overtime in
order to meet goals but were told that overtime is not
acceptable and will not be accepted and therefore [was] not
allowed to be entered into the system." (Suppl. Decl. of
Murielle J. Steven Walsh ("Walsh Suppl. Reply Decl."), Ex. 15.)
The email also indicates the need to find a way to
"maintain/avoid overtime" but to "do so with integrity and time
management and not by falsifying time sheet entries." Id.   A
follow-up email states that three Personal Bankers at that

17

branch "confirmed" these findings, presumably indicating that they worked uncompensated overtime.  Id.  This evidence, in combination with the plaintiffs' and declarants' testimony that their managers implemented the defendant's overtime reduction policy in an unlawful manner, is sufficient to make a modest factual showing that the plaintiffs were victims of an unlawful plan or practice whereby they were effectively required to work uncompensated overtime.

The defendant contends, however, that even if the plaintiffs and declarants were themselves subject to a common, unlawful policy or practice, the de facto policy alleged here cannot serve as a basis for inferring that their experiences are typical of Personal Bankers nationwide.  In support of this argument, the defendant cites several cases that have refused to grant nationwide conditional certification where the plaintiffs made similar allegations that a facially lawful policy resulted in employees being effectively required to work uncompensated overtime.  However, none of those cases held that facially lawful policies like those at issue here could never serve as a basis for inferring a nationwide pattern or practice of FLSA violations.  Instead, those cases held that certain aspects of the facially lawful policies at issue or certain deficiencies in the evidence presented made it inappropriate to infer that the FLSA violations alleged by individual plaintiffs were likely to

be widespread across a nationwide class.  See, e.g., Eng-Hatcher v. Sprint Nextel Corp., No. 07 Civ. 7350, 2009 WL 7311383, at *3-*4 (S.D.N.Y. Nov. 13, 2009) (no evidence other than plaintiff's own deposition to show that there was a widespread pattern of FLSA violations); Seever v. Carrols Corp., 528 F. Supp. 2d 159, 173-74 (W.D.N.Y. 2007) (denying nationwide conditional certification of class of 100,000 where only evidence was allegations of two plaintiffs who worked at one store, one affidavit from employee at another store, and additional affidavits that were "incomprehensibly vague as to the material circumstances" surrounding the alleged policy); Simmons v. T-Mobile USA, Inc., No. H-06-1820, 2007 WL 210008, at *6-*7 (S.D. Tex. Jan. 24, 2007) (refusing conditional class certification of all Senior Retail Sales Representatives (SRSRs) in Texas, reasoning that there was "no admissible proof from any specific SRSR other than [the plaintiff] that supports his claim that SRSRs commonly work unpaid overtime").

Here, in contrast, the plaintiffs have made a stronger showing that the defendant's facially lawful policies of limiting overtime and enforcing strict sales quotas resulted in widespread FLSA violations.  Unlike in the cases cited by the defendant, the plaintiffs here provide testimony from Personal Bankers employed in different branch locations across the nation.  The five plaintiffs, one opt-in plaintiff, and four

declarants have worked, collectively, in thirteen different
branches in six of the thirteen states where the defendant
operates, as well as the District of Columbia, and allege that
they were not properly compensated for overtime worked at each
of these locations.  Moreover, three of the plaintiffs and
declarants testify that they are aware of other Personal Bankers
who similarly worked overtime without proper compensation.  (Ho
Dep. 208-09, 263; Steffensen Dep. 187-91; Wilson Decl. ¶¶ 12-
13.)  The plaintiffs also submit emails indicating that FLSA
violations may have occurred at other branch locations.  As
described above, an email from one Branch Manager at the
Richmond Hill, New York branch expressed concern that Personal
Bankers at the branch had been working unpaid overtime, and a
follow-up email referenced three affected individuals by name.
(Walsh Suppl. Reply Decl. Ex. 15.)  In addition, an email from a
Personal Banker at the District of Columbia branch states that
his Branch Manager had instructed him to falsify his timesheets
to indicate that he had not worked overtime.  (Walsh Suppl.
Reply Decl. Ex. 17.)  Thus, in total, the evidence produced by
the plaintiffs spans over a dozen branches and six states, as
well as the District of Columbia.[6]  This evidence provides a much

---

[6] The defendant urges the Court to weigh the twenty-three
declarations the defendant has submitted from other Personal
Bankers disputing the plaintiffs' allegations against the
evidence the plaintiffs have submitted.  (Decl. of Thomas A.

stronger basis for inferring that the plaintiffs' experiences were representative of those of Personal Bankers nationwide than existed in those cases where the only evidence of FLSA violations stemmed from one plaintiff at one store location.

Moreover, in this case, the nature of the defendant's facially lawful policies supports the plaintiffs' allegations that those policies caused managers to commit FLSA violations. The plaintiffs here have offered evidence that those managers who allegedly committed FLSA violations did so because they were instructed, compelled, forced, or encouraged to do so by the policies of preventing accrual of overtime while still requiring Personal Bankers to meet rigorous sales goals.  Several plaintiffs testified that their Branch Managers, in instructing them not to report overtime or in refusing to approve timesheets reflecting overtime hours worked, linked these actions to a directive from regional management to keep overtime costs to a minimum.  For example, plaintiff Muniz stated that her Branch Manager told her on several occasions to remove overtime hours

---

Lindhorst ("Lindhorst Decl."), Exs. 16-38.)  However, the plaintiffs have not had an opportunity to depose these declarants, and courts in this Circuit regularly conclude that such declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process.  See, e.g., In re Penthouse Executive Club Comp. Litig., No. 10 Civ. 1145, 2010 WL 4340255, at *4 (S.D.N.Y. Oct. 27, 2010) (defendants' submission of competing affidavits "amounts to a premature request to make credibility determinations and factual findings, something that is inappropriate at the notice stage").

from her timesheets, explaining that: "there's no time approved. The Regional [Manager] said he's not paying any overtime, so you need to correct that." (Muniz Dep. 51.) Similarly, plaintiff Steffensen testified that his Branch Manager would not always approve timesheets indicating overtime hours worked and would explain that the Area Manager said that Personal Bankers could not get overtime. (Steffensen Dep. 161-64.) Other plaintiffs and declarants similarly aver that their managers told them of a policy to avoid any accrual of overtime. (Ruiz Dep. 336-38; Muniz Dep. 51, 141; Winfield Dep. 189; Steffensen Dep. 161-64; Shen Dep. 143-44; Handy Decl. ¶ 8; Ijaz Decl. ¶ 8; Wilson Decl. ¶ 7.)

The defendant next contends that, because the defendant had a written policy requiring payment for all overtime worked, any violations of this policy must have been anomalous incidents instigated by rogue managers. However, the existence of a formal policy of requiring overtime pay should not immunize the defendant where the plaintiffs have presented evidence that this policy was commonly violated in practice. See, e.g., Burkhart-Deal, 2010 WL 457127, at *3 (concluding that "[t]he fact that Defendant has a written policy requiring overtime pay . . . does not defeat conditional certification" and noting that such arguments "skirt the merits" and are inappropriate for resolution on motion for conditional certification); Beauperthuy

v. 24 Hour Fitness USA, Inc., No. 06-0715 SC, 2008 WL 793838, at
*4 (N.D. Cal. Mar. 24, 2008) ("An employer's responsibility
under the FLSA extends beyond merely promulgating rules to
actually enforcing them. . . . That Defendants published a
handbook cannot immunize them against an FLSA violation where
there is substantial evidence that they did not follow their own
guidelines."); Levy, 2007 WL 1747104, at *2 (granting
conditional certification despite argument that defendant's
written policy requiring payment of overtime meant that "any
deviations from this provision . . . are at best isolated
incidents and do not implicate the company's overtime policy");
Vennet v. Am. Intercontinental Univ. Online, No. 05 Civ. 4889,
2005 WL 6215171, at *7-*8 (N.D. Ill. Dec. 22, 2005) (rejecting
argument that defendant's written policy requiring payment for
all overtime necessarily meant that "any contrary instruction
from individual supervisors would have to be proven on an
individualized basis and be based on anecdotal evidence").

     Conditional certification is appropriate even though the
plaintiffs allege that the FLSA violations were caused by a
widespread de facto policy carried out by individual managers.
See Falcon, 580 F. Supp. 2d at 539 (rejecting the notion that
"an informal policy requiring off-the-clock work cannot be
litigated collectively where a large number of plaintiffs were
employed at many different locations and the decision to allow

or require off-the-clock work was carried out by individual

managers"). As the court in Falcon stated:

> It simply cannot be that an employer may establish policies
> that create strong incentives for managers to encourage or
> allow employees to work off-the-clock, and avoid a FLSA
> collective action because a large number of employees at a
> number of different stores are affected.  To a certain
> extent, any large class of employees working for a
> nationwide employer alleging FLSA overtime violations will
> encounter these difficulties, and there is no indication
> that Congress intended section 216 to only allow small
> collective actions involving unpaid overtime to proceed.

580 F. Supp. 2d at 539-40.

The plaintiffs need not show that "all managers nationwide

[acted] in lockstep" in order to make a modest factual showing

that they were subject to a common policy or practice.  Id. at

536.  The plaintiffs and declarants here have testified that

managers at several branches nationwide committed FLSA

violations and that these managers tied their actions in some

instances to an overarching policy by the defendant of

minimizing the accrual of overtime.  It would risk "prejudg[ing]

the merits of these allegations," Lujan, 2011 WL 317984, at *7,

for the Court to conclude at this preliminary stage that each of

these managers was acting in an "errant" or "rogue" fashion.  If

further discovery reveals that such managers were indeed acting

aberrantly, the defendant remains free to renew this argument by

bringing a motion to decertify the class following the close of

discovery.

The plaintiffs have therefore made a modest factual showing that they and potential opt-in plaintiffs were subject to an unlawful policy or practice whereby they were effectively required to work uncompensated overtime.

### C.

The defendant also contends that the plaintiffs have not made a modest factual showing that they were subject to an unlawful common policy or practice because they have not satisfied the commonality requirement as articulated in the Supreme Court's recent decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011).  In Dukes, the Supreme Court held that, to satisfy the commonality requirement of Federal Rule of Civil Procedure 23(a), putative class members' claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." Id. at 2551.  The defendant asserts that, on this motion for conditional certification, the plaintiffs must similarly demonstrate that there is a common basis on which to generate common answers to the liability issues central to their claims.

However, the stringent requirements for class certification under Rule 23 are not identical to the minimal burden that

plaintiffs carry on a motion for conditional certification under
§ 216(b) of the FLSA.  Courts in this Circuit have repeatedly
emphasized that the more exacting Rule 23 requirements are not
applicable to conditional certification motions.  See Myers, 624
F.3d at 556; Rosario v. Valentine Ave. Discount Store, Co.,
Inc., No. 10 Civ. 5255, 2011 WL 5244965, at *3 (E.D.N.Y. Nov. 2,
2011).  Accordingly, numerous courts, including district courts
in this Circuit, have refused to apply Dukes on motions for
conditional certification under the FLSA, concluding that the
Rule 23 analysis had no place at this stage of the litigation.
See, e.g., Pippin v. KPMG LLP, No. 11 Civ. 0377, 2012 WL 19379,
at *7 (S.D.N.Y. Jan. 3, 2012); Ware v. T-Mobile USA, No. 11 Civ.
411, 2011 WL 5244396, at *6 (M.D. Tenn. Nov. 2, 2011); Faust v.
Comcast Cable Commc'ns Mgmt., LLC, No. 10 WMN 2336, 2011 WL
5244421, at *1 n.1 (D. Md. Nov. 1, 2011); Troy v. Kehe Food
Distribs., Inc., No. 09 Civ. 785, 2011 WL 4480172, at *8 (W.D.
Wash. Sept. 26, 2011); Alli v. Boston Market Co., No. 10 Civ. 4,
2011 WL 4006691, at *5 n.3 (D. Conn. Sept. 8, 2011); Sliger v.
Prospect Mortg., LLC, No. 11 Civ. 465, 2011 WL 3747947, at *2
n.25 (E.D. Cal. Aug. 24, 2011); but cf. MacGregor v. Farmers
Ins. Exch., No. 10 Civ. 3088, 2011 WL 2981466, at *4 (D.S.C.
July 22, 2011).

     Thus, to make a modest factual showing that they were
subject to a "common policy or plan that violated the law,"

Myers, 624 F.3d at 555, the plaintiffs need not demonstrate that they meet the commonality requirement of Rule 23 as articulated in Dukes.  Because the plaintiffs have made the requisite showing under Myers, their motion for conditional certification is **granted**.  The Court accordingly authorizes nationwide notice to the individuals identified on the Class List.[7]

## V.

The defendant also objects to certain aspects of the plaintiffs' proposed notice.  The defendant contends (1) that notice should only be provided to those Personal Bankers employed within three years of the date the notice was mailed rather than within three years of the date the Ruiz complaint was filed; and (2) that notice should not extend to Personal Bankers whose claims would be time barred under the three-year FLSA statute of limitations but not under the six-year New York Labor Law statute of limitations.

---

[7] The Court cautions the plaintiffs, however, that conditional certification of a nationwide class for the purpose of authorizing notice should not be a vehicle for generating burdensome and disproportionate discovery.  The burden or expense of discovery should be proportionate to "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C).  While the parties estimate that there are about 4,000 potential members of the purported collective action, it is unclear how many potential plaintiffs will actually opt-in to this action.  It is also unclear at this point what a realistic assessment of the actual damages in this case might be.

With respect to the defendant's first objection, it is true that, because the three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that plaintiff consents to join the action, notice should generally be directed to those employed within three years of the date of the mailing of the notice.  See 29 U.S.C. § 255; Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).  However, because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, "with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date."  Whitehorn, 757 F. Supp. 2d at 451; see also Thompson v. World Alliance Fin. Corp., No. 08 Civ. 4951, 2010 WL 3394188, at *7 (E.D.N.Y. Aug. 20, 2010); Fasanelli, 516 F. Supp. 2d at 323 n.3 (S.D.N.Y. 2007).  It is appropriate here for the plaintiffs to send notice to all Personal Bankers employed within three years of the date the Ruiz complaint was filed. The defendant is free, however, to challenge the timeliness of individual plaintiffs' claims in the future.

It is also permissible to extend the notice period to six years for those Personal Bankers who were employed in New York and might therefore have New York Labor Law claims.  Because the plaintiff in the Ruiz action also brings state law NYLL claims,

that are governed by a six-year statute of limitations, this
Court may exercise supplemental jurisdiction over those claims
pursuant to 28 U.S.C. § 1367.  There may be a number of
employees with both timely FLSA and state law claims, and
several courts in this Circuit have deemed it appropriate to
grant six-year rather than three-year notice periods in such
circumstances.  See, e.g., Schwerdtfeger, 2011 WL 2207517, at
*6; Klimchak v. Cardrona Inc., No. 09 Civ. 4311, 2011 WL
1120463, at *7 (E.D.N.Y. Mar. 24, 2011); Avila v. Northport Car
Wash, 774 F. Supp. 2d 450, 455-56 (E.D.N.Y. 2011); Gani v.
Guardian Serv. Indus. Inc., No. 10 Civ. 4443, 2011 WL 167844, at
*2 (S.D.N.Y. Jan. 13, 2011); Iglesias-Mendoza v. La Belle Farm,
Inc., 239 F.R.D. 363, 369 (S.D.N.Y. 2007); Realite v. Ark Rests.
Corp., 7 F. Supp. 2d 303, 308 n.4 (S.D.N.Y. 1998); but see
McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp. 2d 396, 400
(E.D.N.Y. 2011) (collecting cases).  The notice adequately
describes that there are claims under New York law and that
these claims, unlike the FLSA claims, have a six-year statute of
limitations.  (Walsh Decl. Ex. 2 at 1.)  The responses by any
former employees who have potential claims under New York law,
but not under the FLSA, may be relevant to a subsequent
determination as to whether a class should be certified under
New York law.  See Schwerdtfeger, 2011 WL 2207517, at *6.  Thus,
it is appropriate and in the interests of judicial economy to

29

permit the plaintiffs to provide notice to potential plaintiffs who were employed by the defendant in New York beginning on August 6, 2004,[8] even if those plaintiffs' FLSA claims might be time-barred because they were no longer employed by the defendant in the three years prior to the filing of the Ruiz complaint.

The defendant alludes to other potential defects in the plaintiffs' proposed notice.[9] To the extent that this Order does not resolve those issues, the parties should meet and confer to determine if there are any other disputes concerning the terms of the notice. If there are disagreements, the parties should submit their alternative language to the Court within **thirty days** of the entry of this Order.

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to strike hearsay

---

[8] The plaintiffs request that the defendant supplement the class list to include these individuals. This request is **granted**.

[9] The defendant also objects to the plaintiffs' reference to ERISA claims in their proposed notice. In light of the Court's Opinion and Order in Winfield v. Citibank, N.A., 10 Civ. 7304, also issued today, dismissing the plaintiffs' ERISA claims, reference to these claims should be removed, or the notice should state that these claims have been dismissed.

statements is **denied** without prejudice.  The plaintiffs' motion

for conditional certification of an FLSA collective action

pursuant to § 216(b) of the FLSA, and for court-authorized

notice is **granted**.  The defendant's request to amend the

Proposed Notice to the putative class is **denied** without

prejudice to the parties' ability to present any further

disagreements to the Court within thirty (30) days of the date

of this Order.  The defendant is directed to supplement the

Class List to include Personal Bankers who worked at New York

branches from August 6, 2004 to the present who do not already

appear on the list.  The Clerk is directed to close Docket No.

33 in Case No. 10 Civ. 5950.

      **SO ORDERED.**

Dated:     **New York, New York**
           **January 27, 2012**

                                       John G. Koeltl
                           United States District Judge