**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DIGNA RUIZ, on behalf of herself and all others similarly situated,

                     Plaintiff,

       v.

CITIBANK, N.A.,

                  Defendant.

**Civ. No.: 10-cv-5950  (KPF) (RLE)**

**ORAL ARGUMENT REQUESTED**

FREDERICK WINFIELD, et al.,

                     Plaintiff,

       v.

CITIBANK, N.A.,

                  Defendant.

**Civ. No: 10-cv-7304 (KPF) (RLE)**

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR**
**MOTION FOR RULE 23 CLASS CERTIFICATION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

    I.   FLSA CERTIFICATION WEIGHS IN FAVOR OF CLASS CERTIFICATION .......... 1

    II.  THIS ACTION SATISFIES TYPICALITY AND COMMONALITY ......................... 1

    III. INDIVIDUALIZED ISSUES DO NOT PREDOMINATE OVER COMMON ONES ... 8

    IV. RUIZ, WINFIELD AND MUNIZ ARE ADEQUATE REPRESENTATIVES ............ 12

    V.  RULE 23 GOVERNS D.C. WAGE ACT CLAIMS IN FEDERAL COURT ............... 14

    VI. CONCLUSION ......................................................................................... 15

CERTIFICATE OF SERVICE ................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**CASES:**

*Amador v. Morgan Stanley & Co. LLC*,
    No. 11 Civ. 4326, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) .......................................... 6

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946) ............................................................................................... 1, 9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) .......................................................................................... 13

*Brickey v. Dolgencorp, Inc.*,
    272 F.R.D. 344 (W.D.N.Y. 2011) .................................................................................. 7

*Chao v. Gotham Registry, Inc.*,
    514 F.3d 280 (2d Cir. 2008) ...................................................................................... 1, 2

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................................ 15

*Davis v. Abercrombie & Fitch Co.*,
    No. 08 Civ. 1859, 2008 WL 4702840 (S.D.N.Y. Oct. 23, 2008) ..................................... 3

*Driscoll v. George Washington Univ.*,
    No. 12-0690, 2012 WL 3900716 (D.D.C. Sept. 10, 2012) ............................................ 15

*Eng-Hatcher v. Sprint Nextel Corp.*,
    No. 07 Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) .................................... 7

*Falcon v. Starbucks Corp.*,
    580 F. Supp. 2d 528 (S.D. Tex. 2008) ..................................................................... 2, 3

*Fernandez v. Wells Fargo Bank, N.A*,
    No. 12 Civ. 7193, 2013 WL 4540521 (S.D.N.Y Aug. 28, 2013) ................................ 7, 8

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
    646 F.2d 413 (9th Cir. 1981) ...................................................................................... 2

*Gordon v. Kaleida Health*,
    No. 08-CV-378S, 2014 WL 1279170 (W.D.N.Y. Mar. 27, 2014) .................................... 7

*Gortat v. Capala Bros., Inc.*,
    257 F.R.D. 353 (E.D.N.Y. 2009) ................................................................................ 14

*Hinterberger v. Catholic Health Sys.*,
  No. 08–CV–380, 2014 WL 1278919 (W.D.N.Y. Mar. 27, 2014) ...................................7

*Holzapfel v. Town of Newburgh*,
  145 F.3d 516 (2d Cir. 1998).........................................................................................2

*In re Bank of Am. Wage & Hour Employment Litig.*,
  286 F.R.D. 572 (D. Kan. 2012)...............................................................................7, 11

*In re Community Bank of N. Va.*,
  622 F.3d 275 (3d Cir. 2010)......................................................................................14

*Jacks v. DirectSat USA, LLC*,
  No. 10 CV 1707, 2012 WL 2374444 (N.D. Ill. June 19, 2012)......................................6

*Jimenez v. Allstate Ins. Co.*,
  No. LA CV10-08486, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) ...........................7

*Johnson v. Wave Comm GR LLC*,
  No. 6:10-CV-346, 2014 WL 988512 (N.D.N.Y. Mar. 14, 2014) ...................................8

*Joza v. WW JFK LLC*,
  No. 07-CV-4153, 2010 WL 3619551 (E.D.N.Y. Sept. 10, 2010) ...................................9

*Kosakow v. New Rochelle Radiology Assocs.*,
  274 F.3d 706 (2d Cir. 2001)........................................................................................2

*Lee v. ABC Carpet & Home*,
  236 F.R.D. 193 (S.D.N.Y. 2006) .................................................................................1

*Lindsay v. Gov't Employees Ins. Co.*,
  448 F.3d 416 (D.C.C. 2006) ......................................................................................15

*Long John Silver's Rests., Inc. v. Cole*,
  514 F.3d 345 (4th Cir. 2008) ....................................................................................15

*Nerland v. Caribou Coffee Co.*,
  564 F. Supp. 2d 1010 (D. Minn. 2007).......................................................................8

*Pryor v. Aerotek Scientific, LLC*,
  278 F.R.D. 516 (C.D. Cal. 2011) ..............................................................................11

*Raniere v. Citigroup, Inc.*,
  827 F. Supp. 2d 294 (S.D.N.Y. 2011).........................................................................3

*Reich v. Dep't of Conservation and Natural Res.*,
  28 F.3d 1076 (11th Cir. 1994) ....................................................................................2

*Romero v. H.B. Auto. Group, Inc.*,
  No. 11 Civ. 386, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) .........................................7

*Rosario v. Valentine Ave. Discount Store*,
  No. 10 CV 5255, 2013 WL 2395288 (E.D.N.Y. May 31, 2013) ....................................3

*Seever v. Carrols Corp.*,
  528 F. Supp. 2d 159 (W.D.N.Y. 2007) ..........................................................................9

*Shabazz v. Morgan Funding Corp.*,
  269 F.R.D. 245 (S.D.N.Y. 2010) ....................................................................................1

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ......................................................................................................15

*Ventura v Bebo Foods, Inc.*,
  738 F. Supp. 2d 1 (D.D.C. 2010) ..................................................................................15

*Williams v. Superior Court*,
  165 Cal. Rptr. 3d 340 (Cal. Ct. App. 2013) ...................................................................6

*Winfield v. Citibank, N.A.*,
  843 F. Supp. 2d 397 (S.D.N.Y. 2012) ........................................................................7, 8

*Wirtz v. Bledsoe*,
  365 F.2d 277 (10th Cir. 1966) ........................................................................................2

*Zivali v. AT&T Mobility, LLC*,
  784 F. Supp. 2d 456 (S.D.N.Y. 2011) ..........................................................................11

**STATUTES AND RULES:**

28 U.S.C. § 2072 .....................................................................................................14, 15

29 C.F.R. § 785.13 ........................................................................................................2

720 Ill. Comp. Stat. 5/17-1(B) (2011) .........................................................................14

D.C. Code Ann. § 32-1012 (2013) ...........................................................................14, 15

Fair Labor Standards Act ......................................................................................*passim*

**OTHER AUTHORITIES**

Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Cert.
  (Dkt No. 190) ("Def.'s Opp. Br.") ..........................................................................*passim*

Plaintiffs' Memorandum of Law in Opposition to
  Defendant's Motion for Decertification of the FLSA Collective Action
  (Dkt. No. 188) ("Pls.' Opp. Br.")....................................................................... 1, 8, 10, 12

Plaintiffs' Motion for Class Certification
  (Dkt. No. 182) ("Pls.' Class Cert. Br.")........................................................ 1, 2, 4, 5, 12

## I.   FLSA[1] CERTIFICATION WEIGHS IN FAVOR OF CLASS CERTIFICATION.

Defendant Citibank, N.A. ("Defendant" or "Citibank") concedes that courts strongly favor Rule 23 certification where conditional certification of related FLSA claims has been granted. *See, e.g.*, *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 249 (S.D.N.Y. 2010); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006). This principle applies with particular force here, because the Court already rejected many of Citibank's arguments in granting conditional certification. Only one thing has changed since this case was conditionally certified—Plaintiffs have adduced substantial evidence of the alleged *de facto* policy against payment of overtime that easily surpasses the evidentiary threshold for Rule 23 certification.

## II.   THIS ACTION SATISFIES TYPICALITY AND COMMONALITY.[2]

Defendant concedes that even one common question of law or fact is sufficient to permit this litigation to proceed as a class action. FLSA liability attaches where a plaintiff proves that overtime work was performed but not properly compensated, and that the employer had actual or constructive knowledge of that work. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008).

Here, a preponderance of the evidence shows that the proposed Classes are united by a common nexus—Citibank's dual-edged policy of imposing job duties that could not be always performed within 40 hours, and a conflicting nationwide directive to minimize overtime to extremely low levels. The foreseeable impact was a common pattern of unpaid overtime. *See* Pls' Opp. Br. at 3-5. Thus, the legal elements of Personal Bankers' ("PBs") overtime claims will be proven on a class-wide basis. Liability is driven by a common question: Were PBs paid for all their overtime?

---

[1] All terms herein have the same meaning as in Pls.' Opp. Br. (Dkt. No. 188) & Pls.' Class Cert. Br. (Dkt. No. 182).

[2] Defendant concedes that the proposed classes satisfy the numerosity requirement of Rule 23.

Defendant greatly overstates Plaintiffs' burden of proof for overtime claims—a tactical effort to create individualized issues that will never materialize. For instance, Defendant claims that each PB must prove that Citibank required them to work overtime. Under the law, however, overtime must be paid when suffered or permitted, even if not required or pre-approved.[3] Defendant also argues that is lawful to require pre-approval. While the desire to minimize overtime may be facially lawful, as this Court recognized, it does not preclude liability where the employer permits overtime to be performed, but does not pay for it. It is well-settled that:

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed…. *The mere promulgation of a rule against such work is not enough*. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13 (emphasis added). This duty arises even where the employer has not requested overtime be performed, does not desire the employee to work, and the employee fails to report overtime. *Chao*, 514 F.3d at 288; *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 718 (2d Cir. 2001); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998); *accord Reich v. Dep't of Conservation and Natural Res.*, 28 F.3d 1076, 1084 (11th Cir. 1994); *Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir. 1966) ("It has long been established that the purpose of the [FLSA] cannot be frustrated by an employer's instructions or even a contract not to work overtime."); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation….").[4]

Defendant also challenges commonality by pointing out variations in PBs' overtime experiences, but the law does not require Citibank managers to have acted in "lockstep." *Falcon*

---

[3] Citibank's own "official" policy acknowledged this reality. Ex. 66.
[4] Citibank's related argument—that each class member will have to show actual or constructive knowledge of overtime, already has been addressed. *See* Pls.' Class Cert. Br. at 29-30. This element is amenable to class treatment.

*v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) ("An employer should not be allowed to escape class liability simply because some managers do not commit FLSA violations as long the evidence shows that there is a factual or legal nexus that binds together the claims of the opt-in plaintiffs before the Court."). Moreover, this challenge is based in large part on declarations that Defendant submitted *in direct violation* of the Magistrate's order governing discovery in this case. Specifically, Citibank cites declarations from current PBs, but none of them are part of the representative opt-in group which was the basis for discovery. Def.'s Opp. Br., Exs. 4, 5, 6, 11, 13, 16. Proffering these declarations blatantly violates Magistrate Ellis's specific order limiting discovery to a subset of PBs selected by the parties. Thus, the declarations should be stricken.[5] In fact, Defendant sought assurances from the Magistrate that Plaintiffs would not submit similar declarations from outside the sampling group.[6] Moreover, the new declarations show that these PBs did not work unpaid overtime and, thus, are not class members.[7] Thus, they are of no probative value. If anything, Citibank's supposedly "happy campers"—among a pool of *thousands* of New York and Illinois PBs—is indicative that Citibank's common practice was *not* to pay overtime.

While improperly relying on inadmissible evidence, Defendant ignores or grossly mischaracterizes material evidence properly before the Court. While claiming that it controlled overtime in a "lawful" manner, Citibank  ignores blatant overtime violations—*i.e.*, PBs were

---

[5] Defendant also cites self-serving declarations of some PBs' branch managers—the same bad actors about which Plaintiffs complain—which, at best, implicates credibility, a merits issue not determined at class certification. *See Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294, 324 (S.D.N.Y. 2011); *Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859, 2008 WL 4702840, at *7 (S.D.N.Y. Oct. 23, 2008).

[6]  MR. LINTHORST: So we file a motion for decertification and in opposition to that motion they file a declaration from person 101 saying here's why it should be a collective action when we had – we're limited to a sampling of 100 and didn't get to take discovery from that person. That would seem to be –

  THE COURT: That would be unfair, yes.

Ex. 207, Tr. from Aug. 30, 2012 Hr'g at 15-16.

[7] To the extent the class definitions in Plaintiffs' Class Certification Brief do not specifically exclude PBs with no overtime claim, the Court may amend the definitions at its discretion. *See Rosario v. Valentine Ave. Discount Store*, No. 10 CV 5255, 2013 WL 2395288, at *9 (E.D.N.Y. May 31, 2013).

3

threatened with discipline for reporting overtime; their time entries were routinely altered; PBs were targeted for overtime reduction because of their high base salaries; and Citibank was aware of numerous instances of PBs working unpaid overtime.[8]

Instead, Citibank disingenuously states that the "no overtime" policy is a fiction. In addition to Opt-Ins' testimony, Citibank's corporate representative testified that "the national directive was to maintain … a focus on expense management," and that overtime was one of five top expenses under scrutiny.[9] Citibank's documents show attempts to minimize overtime as close to possible as zero—creating an environment ripe for overtime violations. Despite Defendant's erroneous contention, Plaintiffs cite numerous emails from New York and Illinois directing branches to "go to zero" overtime. *See* Pls.' Class Cert. Br. at 8; Ex. 68 (NY area director told branch managers ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████) (emphasis added); Ex. 72 (email from NY area director stating █████████████████ (emphasis added); Ex. 77 (email from IL President stating ████████████████████████████████████████ and telling managers to keep this expense ████████████████"); Ex. 78 (IL area director instructed, ███████████████████████████….").

Additional evidence shows *all* levels of Citibank management monitored and enforced a policy to minimize overtime to extreme levels. *See* Ex. 165, CR-202799 (NY manager stated that overtime is ████████████████████████████████████████████████████ ████████████████████████████████████████████████ Ex. 166, CR-200319 (Area directors directed managers ██████████████████

---

[8] Though Defendant claims that Burgos was paid all overtime owed, Burgos testified that she was not paid all overtime and that she was instructed to change her time sheet. Ex. 49, Burgos Dep. 137:8-19, 31:19-25. In fact, even under Burgos' new manager, management continued to complain about Burgos' overtime. Ex. 164, CR-258509-510 (complaining about █████████████████ and directing that █████████████████).

[9] Ex. 69, Deloney Dep. 119:22–120:22.

4



████████████████████████ Ex. 167, CR-172898 (Citibank's Vice President stated,

███████████████████████████ ; Ex. 168, CR-173679 (NY Vice

President stated, ██████████████████ Ex. 169, CR-174077; Ex. 170, CR-

192724 ████████████████████████ Ex. 171, CR-194132; Ex. 172, CR-195101-102

(NY Sales Director reported, ███████████████████████████

██████████████████████████ Ex. 173, CR-195113

(Email reported ██████████████ Ex. 174, CR-201620-621 ████████

██████████); Ex. 175, CR-200165 (Manager directed to ████████

███████████); Ex. 176, CR-203245 ██████████

████████████"); Ex. 177, CR-250824 ████████

████████████████████████████████████

██████████████████████

Citibank monitored even tiny amounts of overtime using various detailed reports—demonstrating tight control by upper management to ensure overtime would not be paid. Incredibly, Citibank claims there is no evidence that managers actually "did run or review" overtime reports. This is yet another fabrication by Defendant. *Cf.* Def.'s Opp. Br. at 19 *with* Pls.' Class Cert. Br. at 9-10 (citing specific overtime reports used by management to monitor expenses).[10] All told, Citibank's internal documents, taken together and viewed in the context of the Opt-Ins' uniform testimony, strongly substantiate that Citibank enacted a *de facto* policy that resulted in companywide overtime law violations.

---

[10] Plaintiffs have compiled additional communications referencing and attaching overtime reports run by management. Ex. 178, CR-258500 (████████████████████████████████████████████████ ████████████████); Ex. 179, CR-194120; Ex. 180, CR-195333; Ex. 181, CR-196696; Ex. 182, CR-196712; Ex. 183, CR-204031; Ex. 184, CR-204122-123; Ex. 185, CR-204176-178; Ex. 186, CR-204194-196; Ex. 187, CR-204205-207; Ex. 208, CR-197020.

Defendant's remaining arguments dispute the merits of Plaintiffs' overtime claim—relying heavily on Citibank's "official" policies requiring accurate time reporting and payment of overtime. However, merits-based inquiries are "closely circumscribed" at the class certification level. Similar arguments were rejected in *Williams v. Superior Court*:

> Allstate disputes whether a company-wide practice existed of adjusters working off the clock…. We need not, however, address the accuracy of Allstate's assertions because doing so goes to the merits of the class claims…. [I]nquiries into the merits as part of a certification motion are "closely circumscribed." We instead assume [] that Allstate had a company-wide practice of adjusters working off-the-clock.

165 Cal. Rptr. 3d 340, 353 (Cal. Ct. App. 2013) (citation omitted). Thus, the extent to which PBs were affected by the practices is of no moment because "'[c]lass treatment does not require that all class members have been equally affected by the challenged practices—it suffices that the issue of whether the practice itself was unlawful is common to all.'" *Id.* (quoting *Jacks v. DirectSat USA, LLC*, No. 10 CV 1707, 2012 WL 2374444, at *6 (N.D. Ill. June 19, 2012)).

Attempting to rebut this strong evidence of its *de facto* "no overtime" policy, Citibank relies heavily on its payment of almost $13 million in overtime over the course of certain years. Citibank made the same argument in its opposition to the conditional class certification motion, to no avail. Ex. 188, Tr. from Dec. 20, 2011 Hr'g at 50. One court explained:

> ***The question for the Court is not whether Defendants paid* any *overtime to some of the Plaintiffs but whether they paid* all *overtime or had a policy of limiting the amount of overtime pay*—through the explicit or implicit actions of their managers and supervisors—that CSAs were entitled to receive.

*Amador v. Morgan Stanley & Co. LLC*, No. 11 Civ. 4326, 2013 WL 494020, at *8 (S.D.N.Y. Feb. 7, 2013) (some emphasis added) (citation omitted). In fact, the $13 million excludes years from the relevant period (extending back to 2007). After this lawsuit was filed, the amount of overtime paid by Citibank ***doubled***, by millions, from 2012 to 2013. Def.'s Ex. 48 ¶ 4.

In addition, Defendant's cases are distinguishable. Defendant cites a misclassification case where two exemptions were potentially applicable, so the employees "may have been subjected to *different* 'plans' or 'policies' to deprive [them] of legally due wages." *Romero v. H.B. Auto. Group, Inc.*, No. 11 Civ. 386, 2012 WL 1514810, at *7, 14 (S.D.N.Y. May 1, 2012). Conditional certification was denied because the "putative opt-ins [were] not [in fact] similarly situated with respect to their job duties or exempt-status." *Id.* at *14. Here, it is undisputed that PBs were non-exempt and had the same primary job duties. In other cases cited by Defendant, the plaintiffs failed to offer meaningful evidence of a company policy resulting in employees working unpaid through meal periods. *Hinterberger v. Catholic Health Sys.*, No. 08–CV–380, 2014 WL 1278919, at *29 (W.D.N.Y. Mar. 27, 2014); *Gordon v. Kaleida Health*, No. 08-CV-378S, 2014 WL 1279170, at *25 (W.D.N.Y. Mar. 27, 2014). In *Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344, 348 (W.D.N.Y. 2011), the court declined certification where the employer's policy was facially lawful *and*, unlike here, did not cause managers to violate the FLSA; *Brickey* is also at odds with the law of this case. In *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009), the plaintiff's *only* evidence of a *de facto* company policy was "her own deposition testimony as proof of these allegations."[11]

Defendant's heavy reliance on *Fernandez v. Wells Fargo Bank, N.A*, No. 12 Civ. 7193, 2013 WL 4540521 (S.D.N.Y Aug. 28, 2013), is misplaced. The court specifically distinguished *this* action because the "[p]laintiffs also offered significant evidence of a *de facto* policy to refuse overtime, including several informal communications between managers and employees about limits on overtime." *Id.* at *17 (citing *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 405-06

[11] *In re Bank of Am. Wage & Hour Employment Litig.*, 286 F.R.D. 572, 588 (D. Kan. 2012) denied certification "because there [was] no evidence that each class member in fact was affected by the unlawful policy." However, individual damages do not defeat class certification. *Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486, 2012 WL 1366052, at *19 (C.D. Cal. Apr. 18, 2012) ("[O]vertime claims may present a number of individualized questions, including whether individual employees worked off-the-clock…. Nonetheless, courts have certified classes and allowed collective actions to proceed notwithstanding such circumstances.").

(S.D.N.Y. 2012)). By contrast, the evidence in *Fernandez* was thin at best—there was no evidence of a national directive to limit overtime expense and the plaintiffs failed to identify *any* "specific, concrete, management directive concerning plaintiffs' off-the-clock work or any purported requirement not to record hours worked," and their sole evidence that "defendants enacted a policy that deemed overtime pay 'no longer permissible'" was a single email from one manager. 2013 WL 4540521, at *5-6. In stark contrast, Plaintiffs have assembled a litany of evidence from states coast-to-coast (including New York and Illinois branch managers, area managers, and PBs) strongly supporting the existence of the "no overtime" policy being implemented in the relevant states. *See* Pls.' Opp. Br. at 4-16.

## III.   INDIVIDUALIZED ISSUES DO NOT PREDOMINATE OVER COMMON ONES.

Defendant tacitly concedes that bifurcation is an efficient tool to address any individualized damages issues or defenses. In fact, Defendant's brief entirely fails to address the Magistrate's specific order bifurcating discovery in this case into two Phases: Phase One addressing class-wide liability, and Phase Two targeting individual damages issues and defenses. The very reason the Magistrate bifurcated the case in this fashion was to address Defendant's Due Process concerns. *See* Ex. 155 at 4-8.

Defendant nonetheless complains that its Due Process rights would be violated if it were unable to individually defend against each PB's overtime claim. However, the "'right to defend against individualized claims on an individual basis, rather than collectively … must be balanced with the rights of the plaintiffs—many of whom would likely be unable to bear the costs of an individual trial—to have their day in court.'" *Johnson v. Wave Comm GR LLC*, No. 6:10-CV-346, 2014 WL 988512, at *5 (N.D.N.Y. Mar. 14, 2014) (citing *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1026 (D. Minn. 2007)) (ellipses in original). Further, most of Citibank's

defenses, such as statute of limitations and *de minimis* work, are capable of determination on a class-wide basis. *See* Pls' Opp. Br. at 28-33.

Concerning damages, Plaintiffs detailed a methodology for calculating damages, including data to be used (representative testimony, audit logs, and alarm records). Citibank *concedes* that the formula for calculating damages is susceptible to class treatment. Defendant's damages argument is based on solely the assumption that Plaintiffs will be required to provide specific facts regarding each instance they worked unpaid overtime, and that they cannot provide those specifics because some amounts of overtime went unreported.

However, in *Anderson*, the Supreme Court addressed this very situation—where Citibank's own policies resulted in underreporting of overtime, either by branch managers altering time records or PBs underreporting time under threat of discipline. *See* 328 U.S. at 688 ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the [law].")). Though Defendant claims that *Anderson* should not apply because PBs "deliberately" chose not to report overtime, Citibank cannot avoid liability where it intimidated PBs into underreporting overtime. A contrary conclusion flies in the face of both the law and logic. *No* rational person would willingly deny themselves overtime compensation. Thus, Plaintiffs need only provide the "basis for a reasonable inference as to the extent of the damages." *Id.* at 688 (citations omitted).[12]

Moreover, Plaintiffs have the necessary means to provide the basis for their damages by just and reasonable inference. In fact, Plaintiffs and Opt-Ins provided Defendant with estimates

---

[12] Defendant's cases do not change this result. In *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007), there was no genuine dispute that inaccurate time records were "solely due to plaintiffs' deliberate failure to accurately record the time they worked." Here, PBs' time record inaccuracies are directly linked to Citibank's *de facto* overtime policy. In *Joza v. WW JFK LLC*, No. 07-CV-4153, 2010 WL 3619551, at *7 (E.D.N.Y. Sept. 10, 2010), no evidence suggested that the employer facilitated the failure to record overtime. Accordingly, the court did not afford plaintiff the relaxed standard of proving damages under *Anderson*, and instead required specific facts. *Id.*

9

of unpaid overtime on a weekly basis (*see* interrogatory 2).[13] Plaintiffs also can reconstruct

substantial amounts of overtime worked using Citibank's audit logs and alarm records. *See* Pls.'

Opp. Br at 14, 30-31.

Though Defendant claims that audit logs "do not reflect when a PB starts work, or stops

work" (Def's Opp. Br. at 24), Citibank *itself* used audit logs to ensure the accuracy of employee

time records in its internal audit process. Citibank *required* branch managers to use audit logs in

2006 and 2007 to confirm the accuracy of employee time records as part of its audits. Ex. 189,

CR-008277 (instructing branch managers to check if ███████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████). Citibank's representative testified that its semiannual

audit review utilized audit logs to verify the accuracy of time records:

> Q. What is the basis of your understanding that a semiannual review or audit was conducted that involved use of audit logs to confirm the accuracy of time records?...
>
> A. ...I believe that it was used to double-check the accuracy of a manual process because back at that point in time, the users filled out a paper timesheet and then another person did the entries of the timesheet. So there was a possibility for error to occur between the recording of the time and the entering it into the time system at that time.[14]

Citibank has used the audit logs to ascertain that employees worked uncompensated overtime.

*See* Ex. 124 ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[13] Defendant's accusation that Plaintiffs and Opt-Ins "refused" to calculate damages because it would be unduly burdensome (Def.'s Opp. Br. at 30) is false—each provided estimates of their unpaid weekly overtime hours. To the extent Defendant demanded more specificity, Plaintiffs objected that this request was premature (*see* interrogatory 3) because, at that time, Citibank had not produced all relevant records. Linthorst Decl., Exs. 1-37.

[14] Ex. 190, Bodt Dep. 34:18-35:12. Bodt also confirmed that there is no reason to believe that the log-in and log-off data contained in the audit logs is unreliable. *Id*. 49:15-20.

███████████████████████████████████████████████████

████████████████████████████████████

Having relied upon audit logs to cross-check the accuracy of employee time entries during its audits—*and to actually determine that its employees had worked uncompensated overtime*—Citibank cannot credibly argue that the use of such data is somehow unreliable now.[15] In fact, Citibank's chief criticism of use of audit logs is that it may *understate* the OT compensation to which the PBs are entitled. Def.'s Opp. Br at 24. In truth, the audit logs show significant discrepancies between log-in and log-off times and time entries—clear evidence of unpaid overtime. For example, time records show no time entries for Opt-In Peragine on January 20 and 29, 2011 (Ex. 191, CR-250567-568). However, audit logs show that he logged-in at 9:31a.m. and logged-off at 5:59p.m. on January 20, 2011, and logged-in at 8:51a.m. and logged-off at 1:01p.m. on January 29, 2011—time worked for which Citibank failed to compensate him. *Compare* Ex. 192, CR-249494-501 *with* Ex. 193, CR-249418-420. Comparison of time records and audit logs for other PBs shows similar results.[16]

Defendant's arguments concerning the alarm records are equally specious. Citibank concedes that it has records capturing the times that PBs armed and disarmed branch alarms if they were assigned a code (*see* Def.'s Opp. Br. at 24), but argues that PBs possibly might have

---

[15] Citibank cites **no** authority for the proposition that Plaintiffs may not rely upon the same analytical method and data that the employer had utilized for the very same purpose. *Cf. In re Bank of Am. Wage & Hour Employment Litig.*, 286 F.R.D. 572 (D. Kan. 2012); *Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516 (C.D. Cal. 2011); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) (cited in Def.'s Opp. Br. at 25-26).

[16] *Compare* Ex. 194, CR-024262 (Adler time entry 8:15a.m.–5:00p.m. on Oct. 29, 2009) *with* Ex. 195, CR-215753-754 (Oct. 29, 2009 audit log shows log-on at 8:06a.m. and log-off at 5:59p.m.). *Compare* Ex. 196, CR-000915 (Ruiz time entry 8:30a.m.–5:00 p.m. on Oct. 13 and Oct. 14, 2009) *with* Ex. 197, CR-097668-699 (Oct. 13, 2009 audit log shows log-on at 8:35a.m. and log-off at 5:52p.m.; Oct. 14, 2009 audit log shows log-on at 8:33a.m. and log-off at 6:02p.m.). *Compare* Ex. 198, CR-024707-708 (Jeudy time entry 8:00 a.m.–5:00 p.m. on Nov. 23, 2009) *with* Ex. 199, CR-204656-661 (Nov. 23, 2009 audit log shows log-on at 8:19a.m. and log-off at 6:34p.m.). *Compare* Ex. 200, CR-027502 (Moline time entry 8:30a.m.–5:30 p.m. on Aug. 18, 2011) *with* Ex. 201, CR-062108-113 (Aug. 18, 2011 audit log shows log-on at 8:36a.m. and log-off at 5:58p.m.). *Compare* Ex. 202, CR-195530 (Lindsey time entry 8:00a.m.–6:00p.m. on June 9, 2009) *with* Ex. 203, CR-181994-182000 (June 9, 2009 audit log shows log-on at 8:19a.m. and log-off at 7:00p.m.).

provided codes to other employees. In light of stringent opening and closing security procedures, Citibank offers no explanation why PBs would exchange codes. Remarkably, Citibank also asserts that the alarm records would "only show [PBs] either disarming or arming the alarm, it would not show their start and stop work times at the beginning and end of the day, or for their unpaid lunch break." Def.'s Opp. Br. at 25. This argument ignores that a PB's work time would begin with disarming the alarm and end with arming the alarm. Indeed, it is difficult to imagine a scenario in which a PB would arm or disarm the alarm system, but would not be working.[17]

Citibank erroneously argues that, standing alone, the audit logs and alarm records are inadequate to impute constructive knowledge of unpaid overtime. On the contrary, numerous bases exist imputing such knowledge: (1) PBs testified that their managers knew or should have known they were working overtime; (2) a 2008 investigation found that Brooklyn PBs were pressured to work unrecorded overtime to meet their goals; (3) Citibank was sued in other cases filed by PBs, business bankers and other employees alleging a policy and practice denying overtime compensation; and (4) Citibank strictly monitored all overtime to extreme levels as part of its nationwide initiative to reduce overtime, and flagged branches showing more than minimal amounts of overtime. Pls.' Class Cert. Br. at 17-18, 29.

Though Defendant claims that managers merely corrected time entry inaccuracies (a merits argument inappropriate at this stage), Citibank's actual or constructive knowledge is evidenced by consistent testimony of PBs that time entries were altered by branch managers, or that PBs were pressured to alter time entries, to eliminate overtime. *See* Pls.' Opp. Br. at 6-11. Thus, the audit logs and alarm records constitute common proof of actual time worked by PBs.

## IV.   RUIZ, WINFIELD AND MUNIZ ARE ADEQUATE REPRESENTATIVES.

---

[17] Citibank's assertion that the alarm records are "sporadic" information regarding PB work hours (Def.'s Opp. Br. at 25) misses the point. The alarm records provide additional evidence regarding the overtime worked.

To determine whether a named plaintiff will adequately represent the class, courts inquire "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citation omitted). Citibank concedes that Plaintiffs' counsel is adequate and that Plaintiffs' interests are not adverse to the putative class.

Defendant argues that Ruiz is inadequate as "she is likely to lose her claim" based on certain supposed admissions. Def.'s Opp. Br. at 9, 30. *First*, whether Ruiz would prevail is a merits issue that has ***no*** effect on class certification. *Second*, in truth, Ruiz testified that she was not properly compensated for all overtime worked due to Citibank's *de facto* policy. Further, Defendant's selective citation of Ruiz's testimony ignores other evidence.[18] Ruiz testified she was effectively forced to work overtime because of demanding job duties, that she discussed working through lunch with her manager and was praised for it (Ex. 204, Ruiz Dep. 195:7-17, 322-323) and for being the first to arrive and last to leave (*id.* at 345:20–346:12), that security cameras enabled managers to monitor PBs (*id.* at 328:2-8), that managers left the branch knowing PBs continued to work (*id.* at 344:19–345:14), but insisted that branches not incur more than minimal overtime expense. *See id.* at 99:1-8 ("The reality is that sometimes we are forced to work extra time in order for us to meet our goals. However, in many -- in many instances, we were just coached not to incurring overtime. Overtime would not be allowed."); 344:2-13 (Ruiz feared reporting overtime because it "[was] something that they look at very closely"); 159:25–160:9 ("I was forbidden to have overtime. In our sales meetings, one of the things that they will use was overtime is not allowed unless it is approved by managers and has to same token I knew

---

[18] This argument also ignores voluminous evidence in the record—including the testimony of PBs in the representative sampling group, many of whom are from New York, and who were chosen to represent the much larger body of potential class members—evidencing Citibank's systematic failure to pay overtime actually worked.

overtime was not accepted, and yet I also knew within that time frame, I will not be able to accomplish my goals.").[19]

Defendant argues that Winfield is inadequate supposedly because of his inconsistent testimony and complaints about his conduct. *First*, Winfield's testimony is consistent regarding Citibank's practice to deny overtime to PBs. Ex. 205, Winfield Dep. 189:14-16, 210:2-15, 215:11-16, 221:11-14, 279:21–280:14. *Second*, with respect to hearsay allegations, the truth of which Plaintiffs dispute,[20] "[w]hether the Court should examine the named plaintiffs' overall character or should restrict its inquiry to their credibility, *it is clear that the Court may not find them inadequate for conduct that does not touch upon the central issues in this litigation*." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 364 (E.D.N.Y. 2009) (emphasis added).

Defendant challenges Muniz's adequacy because she allegedly "forg[ed] her husband's signature on a check from a closed account…." Def.'s Opp. Br. at 30. In Illinois, check forgery only occurs where the actor is not authorized to possess, transfer, negotiate or present the instrument. 720 Ill. Comp. Stat. 5/17-1(B) (2011). Muniz signed checks from her husband's account to pay their household bills.[21] No evidence exists that she "forged" a check, only Defendant's baseless accusations besmirching Muniz's character to divert the Court's attention from Citibank's failure to compensate her for overtime worked.[22]

## V.   RULE 23 GOVERNS D.C. WAGE ACT[23] CLAIMS IN FEDERAL COURT.

Rule 23 governs class actions in federal court, unless application offends the Rules Enabling Act's, 28 U.S.C. § 2072 ("REA"), prohibition on a procedural rule abridging,

---

[19] Reliance on *In re Community Bank of N. Va.*, 622 F.3d 275, 295 (3d Cir. 2010), is misplaced—it held that "fatal statute-of-limitations defenses" *may* be relevant to adequacy because others might not suffer from timeliness problems. Here, Ruiz does not have a timeliness issue.

[20] *See* Ex. 205, Winfield Dep. 285:11-25, 287:8-19.

[21] Ex. 206, Muniz Dep. 166:7-25.

[22] Ex. 206, Muniz Dep. 49:11-14, 52:6-11, 54:4-14, 112:8-13, 179:15-23.

[23] *See* D.C. Minimum Wage Act, D.C. Code Ann. § 32-1012 (2013) ("D.C. Wage Act").

enlarging, or modifying substantive rights. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 429-31 (2010). Like the FLSA, the D.C. Wage Act provides employees with the substantive right to bring class claims for unpaid overtime. Because the D.C. Wage Act provides a procedural "opt-in" mechanism for bringing class claims similar to the FLSA, the D.C. Wage Act's opt-in provision should be construed consistently with the FLSA. *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 6 (D.D.C. 2010) (holding that, where the acts have similar provisions, the D.C. Wage Act should be construed consistent with the FLSA).

Although *Driscoll v. George Washington Univ.*, No. 12-0690, 2012 WL 3900716, at *7 (D.D.C. Sept. 10, 2012), found that the D.C. Wage Act opt-in provision confers a substantive right, many courts have found that the identical FLSA opt-in provision is a procedural rule, and that the difference between the opt-in provision and Rule 23's opt-out provision is "a mere *procedural* difference." *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 424 (D.C.C. 2006) (emphasis in original); *see also Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349-51 (4th Cir. 2008); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164-65 (S.D.N.Y. 2008).

The D.C. Wage Act provides employees with the right to engage in concerted activity, but its opt-in provision is a procedural rule, *Lindsay*, 448 F.3d at 424, that does not create substantive rights for employees. *Long John Silver's*, 514 F.3d at 351 ("[N]o court has explicitly ruled that the 'opt-in' provision of the § 16(b) provision creates a substantive, nonwaivable right."). It does not change a statute of limitations, damages, defenses, or burden of proof, nor alter an employee's right to seek redress. *See Shady Grove*, 559 U.S. at 425-26. Therefore, applying Rule 23 to D.C. Wage Act claims in federal court does not offend the REA.

**VI.   CONCLUSION**

Thus, Plaintiffs respectfully request that the Court grant the motion for class certification.

15

Dated: June 20, 2014

Respectfully submitted,

**POMERANTZ LLP**

_/s/ Murielle J. Steven Walsh_
Murielle J. Steven Walsh
Star M. Tyner
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
mjsteven@pomlaw.com
smtyner@pomlaw.com

_**Attorneys for Plaintiff Digna Ruiz**_

**RIGRODSKY & LONG, P.A.**
Timothy J. MacFall
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
tjm@rigrodskylong.com

**GAINEY MCKENNA & EGLESTON**
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY  10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
egleston@gme-law.com

_**Attorneys for Plaintiffs Fredrick L. Winfield,
Zulma G. Muniz, James Steffensen and
Adoram Shen**_

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on this 20th day of June 2014, a true and correct copy of

the foregoing document was served via electronic mail upon the following counsel of record:

Thomas A. Linthorst, Esq.
Stephanie R. Reiss, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Attorneys for Defendant

*/s/ Murielle J. Steven Walsh*
Murielle J. Steven Walsh