```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                       :
DIGNA RUIZ, on behalf of herself and all               :
others similarly situated,                             :
                                                       :
                             Plaintiff,                :
                                                       :
               v.                                      :   10 Civ. 5950 (KPF)(RLE)
                                                       :
CITIBANK, N.A.,                                        :
                                                       :
                             Defendant.                :
                                                       :
------------------------------------------------------X
                                                       :   OPINION AND ORDER
FREDRICK WINFIELD, et al.,                             :
                                                       :
                             Plaintiffs,               :
                                                       :
               v.                                      :   10 Civ. 7304 (KPF)(RLE)
                                                       :
CITIBANK, N.A.,                                        :
                                                       :
                             Defendant.                :
                                                       :
------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 4, 2015

KATHERINE POLK FAILLA, District Judge:

By Opinion and Order dated March 19, 2015, the Court denied Plaintiffs' motion to certify three statewide classes under state overtime wage laws and granted Defendant's motion to decertify a conditionally certified nationwide collective action under the Fair Labor Standards Act (the "FLSA").[1]  *Ruiz* v.

---

[1] Familiarity with the facts detailed, and conclusions reached, in the Court's March 19, 2015 Opinion and Order is assumed.  Except where indicated otherwise, docket entry numbers refer to the Ruiz Action, No. 10 Civ. 5950, rather than the Winfield Action, No. 10 Civ. 7304.  Plaintiffs' supporting memorandum is referred to as "Pl. Recon. Br." (Dkt. #222); Defendant's opposing memorandum is referred to as "Def. Recon. Opp."

*Citibank, N.A.* ("*Ruiz I*"), — F. Supp. 3d —, 2015 WL 1254820 (S.D.N.Y. Mar. 19, 2015). Plaintiffs have moved for reconsideration of that decision pursuant to Rule 6.3 of the Local Rules for the Southern and Eastern Districts of New York. For the reasons set forth in the remainder of this Opinion, the motion is denied.

## APPLICABLE LAW

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 403 n.6 (S.D.N.Y. 2011) (quoting *Patterson* v. *United States*, No. 04 Civ. 3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)). Under Local Rule 6.3, the moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (internal citations omitted) (noting that the standard for granting motions for reconsideration is "strict"). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for

---

(Dkt. #225); and Plaintiffs' memorandum in reply is referred to as "Pl. Recon. Reply" (Dkt. #226).

The parties' materials submitted in connection with their prior motions for certification and decertification are referred to as in the prior Opinion: the parties' declarations are cited as "[Name] Decl."; deposition testimony is cited as "[Name] Dep."; Defendant's opening brief in support of the motion for decertification is referred to as "Def. Decert. Br." (Dkt. #179); Plaintiffs' opposition as "Pl. Decert. Opp." (Dkt. #188); and Defendant's reply brief as "Def. Decert. Reply" (Dkt. #200). Plaintiffs' opening brief in support of the motion for certification is referred to as "Pl. Cert. Br."; Defendant's opposition as "Def. Cert. Opp." (Dkt. #190); Plaintiffs' reply as "Pl. Cert. Reply" (Dkt. #197); Defendant's sur-reply as "Def. Cert. Sur-Reply" (Dkt. #204); and Plaintiffs' sur-sur-reply as "Pl. Cert. Sur-Sur-Reply" (Dkt. #209).

2

relitigating issues already decided by the Court." *Davidson* v. *Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001) (citing *Shrader*, 70 F.3d at 257).  Such a motion should not be made to "reflexively [] reargue those issues already considered when a party does not like the way the original motion was resolved." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d at 387 (quoting *Makas* v. *Orlando*, No. 06 Civ. 14305 (DAB) (AJP), 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (internal quotation marks omitted)).  Above all, "[r]econsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish* v. *Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).

## DISCUSSION

Plaintiffs identify six grounds for reconsideration: (i) the Court improperly looked for nationwide evidence of a common pattern or practice of denial of overtime, rather than a pattern or practice limited to New York and Illinois; (ii) the Court accordingly overlooked evidence demonstrating such a pattern or practice in New York and Illinois;[2] (iii) the Court incorrectly applied a trial standard of proof to the class certification question; (iv) the Court improperly applied the Supreme Court's decision in *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S.

---

[2]     Plaintiffs originally moved to certify classes in New York, Illinois, and the District of Columbia.  (Pl. Cert. Br. 1).  Plaintiffs do not seek reconsideration of the Court's denial of certification of the District of Columbia class, which rested upon the additional ground of lack of numerosity.  (Pl. Recon. Br. 1 n.3; *Ruiz I*, 2015 WL 1254820, at *14).

Ct. 2541 (2011), to Plaintiffs' wage and hour claims; (v) the Court overlooked the *Mt. Clemens* doctrine in determining the susceptibility of damages to classwide proof; and (vi) the Court overlooked its ability to modify the class definition and create subclasses instead of denying certification altogether. None of these claims is properly the subject of a motion for reconsideration; rather, Plaintiffs seek reflexively to reargue issues already considered and decided against them in *Ruiz I*. Nevertheless, the Court addresses each argument in turn.

### A.   The Court Did Not Improperly Look to Nationwide Rather than Statewide Evidence

Plaintiffs argue that the Court improperly required that Plaintiffs show a common nationwide pattern or practice of Citibank, rather than statewide patterns or practices within New York and Illinois. (Pl. Recon. Br. 4-7). Plaintiffs' argument significantly mischaracterizes the Court's opinion in *Ruiz I*. The Court did not "erroneously conflate[]" Plaintiffs' opposition to decertification of the nationwide FLSA class with their motion to certify the state classes (Pl. Recon. Br. 4); rather, examining and citing exclusively Plaintiffs' briefs in support of their certification motion, the Court found that "rather than prove a common policy or practice within each relevant state, Plaintiffs seek to demonstrate a nationwide policy that can be imputed to each state." *Ruiz I*, 2015 WL 1254820, at *6 n.8 (citing Pl. Cert. Br. 2 ("The directive against overtime expense came from top management and thus was common to [personal bankers] nationwide."), 5 ("[Personal bankers] across the country testified that they were subject to this disciplinary procedure[.]"), 11 ("Branch

4

managers delivered and strictly enforced the national 'no overtime' directive from management."), 11 (citing evidence from Florida and California), 13 (Texas)).

Throughout Plaintiffs' briefing in support of certification, they indiscriminately intermingled the testimony of New York and Illinois personal bankers and managers with the testimony of Citibank employees in other states. (*See, e.g.*, Pl. Cert. Br. 5 n.13 (citing testimony of personal bankers from California, Florida, New Jersey, Texas, and Virginia), 5 n.14 (California three times, Florida twice, Maryland, New York six times, Texas)), 6 (citing "one Los Angeles area director"), 8-9 (citing multiple New York area directors, Citibank's Illinois President, an Illinois area director, a director for Citibank's West Region, a Los Angeles area director, and a Texas area director), 11 ("Other [Personal Bankers] from Florida, New York, Illinois and California testified similarly."), 13-14 (citing Illinois, California, New York, and Texas branch managers)). In fact, in arguing for commonality, Plaintiffs specifically highlighted the "geographical disparity" of the sample of Opt-In Plaintiffs from which they drew their evidence, arguing that the "strikingly consistent" nature of the sample Opt-Ins' testimony helped demonstrate the existence of centralized, nationwide policies. (Pl. Cert. Br. 22).

Plaintiffs additionally attempt to demonstrate a conflict between *Ruiz I* and two prior orders issued in the case. First, they argue that it was unduly prejudicial to find insufficient the evidence from the sample group of Opt-In Plaintiffs after the limitation of discovery to that group was already approved by

5

Magistrate Judge Ronald L. Ellis.  (Pl. Recon. Br. 4 n.4).  Yet Magistrate Judge Ellis was granting *Plaintiffs'* request to limit the scope of discovery, and in doing so he in no way prejudged the outcome of the motion for class certification.  (Dkt. #123).  In any event, what was more important to the Court, as is clear from *Ruiz I*, was the lack of uniformity within the sample group: "Moreover, even if this number of anecdotal accounts were sufficiently large to confidently be extrapolated to the class as a whole, the contradictions and heterogeneity *within* the group suggest the lack of a common answer."  *Ruiz I*, 2015 WL 1254820, at *9 (emphasis in original).

Second, Plaintiffs argue that Judge John G. Koeltl's decision conditionally certifying the FLSA collective action "set the law of the case … rejecting Defendant's arguments that its facially lawful policies precluded conditional certification."  (Pl. Decert. Br. 6).  The Court extensively discussed the differences between Judge Koeltl's inquiry at the conditional certification stage and the Court's inquiry when adjudicating the motion to decertify the FLSA collective action; it noted in particular the more stringent standard at this second stage (to say nothing of the still higher burden under Rule 23[3]), as well as the substantial evidence that Citibank had accumulated during

---

[3]  Plaintiffs argue that the Court overlooked another court's favorable impression of the evidence presented in this case at the conditional certification stage. (Pl. Recon. Br. 11 n.22 (citing *Fernandez* v. *Wells Fargo Bank, N.A.*, Nos. 12 Civ. 7193 (PKC), 12 Civ. 7194 (PKC), 2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013)).  Yet Judge P. Kevin Castel was distinguishing the instant case, where Plaintiffs had made the "modest factual showing" necessary to conditionally certify a collective action under the FLSA, from *Fernandez*, where they had not.  2013 WL 4540521, at *17.  Neither finding suggests, let alone compels the Court to accept, that Plaintiffs have met the Rule 23 requirements for class certification.

6

discovery to undercut Plaintiffs' narrative of a uniform national policy.  *Ruiz I*, 2015 WL 1254820, at *15-16.  The Court did not find that Citibank's facially lawful policies precluded class certification; rather, class certification was barred by Plaintiffs' failure to demonstrate by a preponderance of the evidence "a common plan or scheme to subvert these policies," or to "demonstrate[e] that appropriate policies have reliably translated themselves into inappropriate managerial behavior across the width and breadth of the class."  *Id.* at *12.

B.  **The Evidence Does Not Demonstrate Commonality or Predominance Within New York and Illinois**

Plaintiffs seek now to do what they never did in arguing for certification: amass the evidence within New York and Illinois to demonstrate commonality within the bounds of the proposed Rule 23 classes.  (Pl. Recon. Br. 7-11).  Yet Plaintiffs are incorrect to state that the Court "did not reach the question of whether the relevant evidence in those states supported a finding of the plausible existence of a pattern or practice of overtime violations in those states" (*id.* at 7):

> If Plaintiffs seek to prove uniformity of experience solely within the three state classes, only 15 of these 31 plaintiffs worked at branches in New York (11), Illinois (3), or the District of Columbia (1); thus, the 15 relevant anecdotal accounts represent only one in 156 class members (or, more precisely, one in 182 for New York, one in 110 for Illinois, and one in 16 for the District of Columbia).  This sort of scattershot evidence does not meet the requirements of Rule 23 as envisioned in *Dukes.*

*Ruiz I*, 2015 WL 1254820, at *9 (internal citations and footnote omitted).  The Court thus already found the testimony of eleven New York personal bankers

7

and three Illinois personal bankers insufficient to demonstrate commonality across a class of over 2,000 New York personal bankers and 330 Illinois personal bankers.

Furthermore, as the Court found for Plaintiffs' evidence generally, variation within the sample of Opt-In Plaintiffs is independently fatal. For example, Plaintiffs point to the testimony of, among others, New York personal bankers Drago, Ho, and Pikulin. (*See* Pl. Recon. Br. 9). Yet the Court previously identified those personal bankers' testimony as significantly undercutting Plaintiffs' claim of common pressures to work unpaid overtime. *Ruiz I*, 2015 WL 1254820, at *9 (citing Drago Dep. 57 (testifying to different practices with regard to overtime at different branches), 167-68 (no written warning for repeatedly missing sales targets); Ho Dep. 82-83 (testifying that Citibank sent her on several all-expenses-paid trips for her sales performance), 148 ("[I]n Jackson Heights branch it is always busy…. You won't think about you won't meet your [sales] goal. I never think about that because it is so busy. It is so easy to meet the goal."), 160-62 (testifying that she made her performance goals in 79 of 87 months, at times met multiples of her goal, and received tens of thousands of dollars in performance bonuses over her seven years at Citibank); Pikulin Dep. 98, 127-28 (recalling being told to record all time worked, and unable to remember any instance of not recording all time or being paid for all time)). Other New York and Illinois personal bankers' depositions further undercut Plaintiffs' argument that a common practice pervaded the branches within those states. (*See* Drews Dep. 81 (Illinois

8

personal banker stating that he could meet or exceed his sales goals while working under 40 hours per week, and did not need to work more than 40 hours), 126 (stating that he was expected to record any overtime worked, and manage his hours in advance so that he did not accrue overtime); Hurler Dep. 110 (New York personal banker stating that he could not recall ever meeting his sales goals), 252 (stating that he could not recall ever receiving discipline for failing to meet his sales goals)).

Plaintiffs also now isolate the emails from branch and area managers within New York and Illinois that they believe demonstrate a de facto policy of denying overtime compensation. (Pl. Recon. Br. 8). Yet these same fragmentary email excerpts were presented to the Court when briefing *Ruiz I*. The Court identified a number of deficiencies in this evidence:

> Plaintiffs' evidence of such a de facto policy consists of inferences drawn from a comparatively miniscule quantity of emails among branch and area managers[.] As previously noted, many of the emails contain explicit admonitions that any overtime incurred must be paid. Those emails that lack such admonitions overwhelmingly maintain their focus on minimizing the amount of overtime worked, rather than declining to pay for overtime already accrued.

*Ruiz I*, 2015 WL 1254820, at *10 (footnotes omitted). That a portion of the email evidence comes from New York and Illinois — and not, the Court notes, any of the more damning emails suggesting a desire not to compensate previously incurred overtime — does not ameliorate the inability of such evidence to provide common answers to common questions that are capable of driving the resolution of the litigation.

9

### C. The Court Did Not Apply an Improper Standard of Proof or Improperly Apply *Dukes* to Wage and Hour Claims

Plaintiffs' related arguments that the Court applied too stringent a standard at the class certification stage, or erred in applying *Dukes* at all, are not proper subjects for a reconsideration motion. The Court extensively discussed the impact of *Dukes* on certification of off-the-clock claims. *See Ruiz I*, 2015 WL 1254820, at *5-7. As the Court acknowledged, in this context "[t]he ramifications of *Dukes* are still being teased out by the courts," *id.* at *6; nevertheless, such uncertainty does not allow Plaintiffs to "reflexively [] reargue those issues already considered when a party does not like the way the original motion was resolved," *In re Optimal U.S. Litig.*, 813 F. Supp. 2d at 387.

In rearguing the issue, Plaintiffs continue to misunderstand the nature of the burden they bear at class certification. The Court nowhere required Plaintiffs to conclusively *prove* a pattern of wage violations; it merely held them to their burden to establish commonality by a preponderance of the evidence, as required by precedent predating *Dukes*. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) ("Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."). Plaintiffs have decried the "rigorous analysis" required by longstanding Supreme Court precedent, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982), as too similar to the inquiry on the merits that would follow certification (*see* Pl. Recon. Br. 12-13). Yet the Supreme Court has noted that "[f]requently that 'rigorous analysis' will entail some overlap with the merits of

10

the plaintiff's underlying claim," *Dukes*, 131 S. Ct. at 2551, and the Second Circuit has held that the burden at class certification "is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement," *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

Plaintiffs also misunderstand what is required by Rule 23(a)(2)'s stricture that there be "questions of law or fact common to the class." As in their original briefing, Plaintiffs have identified a common question: "whether a pattern or practice of overtime violations existed in New York and Illinois." (Pl. Recon. Br. 12 (emphasis removed); *see also* Pl. Cert. Br. 22). What Plaintiffs have failed to do is demonstrate "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Ruiz I*, 2015 WL 1254820, at *7 (alteration in original) (quoting *Dukes*, 131 S. Ct. at 2551). "Quite obviously, the mere claim by employees of the same company that they have suffered [a similar injury] gives no cause to believe that all their claims can productively be litigated at once." *Dukes*, 131 S. Ct. at 2551. Plaintiffs have failed to show either a de facto policy to violate overtime laws or a common practice arising in response to the entirely legal and appropriate companywide formal policies. The common question, then, is not susceptible to common answers, and accordingly Plaintiffs have not demonstrated that "the state classes share common questions, susceptible to classwide proof, that advance the litigation to a sufficient extent to justify 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named

11

parties only.'" *Ruiz I*, 2015 WL 1254820, at *6 (quoting *Califano* v. *Yamasaki*, 442 U.S. 682, 700-01 (1979)).

## D. The Court Did Not Overlook the *Mt. Clemens* Doctrine

Plaintiffs argue that the Court overlooked the import of the Supreme Court's burden-shifting test set out in *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), which held that where an employer has kept inaccurate or unclear records, the employee need only "prove[] that he has in fact performed work for which he was improperly compensated and … produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"; at that point, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. (Pl. Recon. Br. 18-20).

Plaintiffs are correct that, if they *could* prove that the classmembers performed work for which they were improperly compensated (and thus that Citibank had not kept accurate records), the *Mt. Clemens* doctrine might allow each classmember to put forward the audit records as preliminary evidence of excess hours worked.[4] Accordingly, the damages inquiries might not be quite

---

[4] It is worth noting that courts have split over whether evidence similar to Citibank's audit logs does suffice to give rise to a just and reasonable inference of hours worked under *Mt. Clemens*. *Compare Stiller* v. *Costco Wholesale Corp.*, 298 F.R.D. 611, 629 (S.D. Cal. 2014) (finding insufficient "the approach used in *Mt. Clemens*" where Plaintiffs sought to use cash register data to establish, "as a matter of just and reasonable inference," the average frequency and length of unpaid detention time), *leave to appeal denied* (Aug. 22, 2014), *with Nehmelman* v. *Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 757 (N.D. Ill. 2011) (allowing conditional FLSA certification based upon time cards).

as onerous as the Court assumed (though Defendants would still be entitled "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence," *Mt. Clemens*, 328 U.S. at 687-88).  Yet as multiple courts have found, *Mt. Clemens*'s "relaxed burden applies only to damages, not liability — it does not help plaintiffs show that there was a violation under the FLSA; it only allows them to prove damages by way of estimate, if they had already established liability."  *Gomez* v. *Tyson Foods, Inc.*, 295 F.R.D. 397, 400 (D. Neb. 2013); *see also O'Brien* v. *Ed Donnelly Enters., Inc.*, 575 F.3d 567, 602 (6th Cir. 2009) ("*Mt. Clemens Pottery* and its progeny do not lessen the standard of proof for showing that a FLSA violation occurred.  Rather, *Mt. Clemens Pottery* gives a FLSA plaintiff an easier way to show what his or her damages are."); *Stiller* v. *Costco Wholesale Corp.*, 298 F.R.D. 611, 629 (S.D. Cal. 2014) ("[W]hile the *Mt. Clemens* approach may offer a classwide basis of proving damages, proving liability in this case first requires individuals to show they performed uncompensated 'work' as a result of the Alleged Policy."), *leave to appeal denied* (Aug. 22, 2014).

The Court found, in discussing both commonality and predominance, that Plaintiffs could not demonstrate liability on a classwide basis, a finding that *Mt. Clemens* does nothing to alter.  *See, e.g.*, *Babineau* v. *Fed. Exp. Corp.*, 576 F.3d 1183, 1192 (11th Cir. 2009) ("[T]he district court reasonably concluded that punch clock records do not provide common proof of any uncompensated work during gap periods — particularly in light of employee

13

testimony regarding the various non-work-related activities that took place during the gap periods and the various personal reasons that employees listed for coming in early and staying late."); *id.* at 1194 ("There is simply no way to tell from the tracker data how long an employee worked during a break. Furthermore, the concerns about the accuracy of the data suggest that the data might not be sufficient to prove that an employee actually worked during a break, and therefore, further individualized inquiries might be necessary."); *In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. 572, 588 (D. Kan. 2012) ("[Transactional data] is not sufficiently reliable to show, on a classwide basis, that violations occurred. Evidence of the Bank's liability, then, would necessarily vary from member to member.").

### E.     The Court Did Not Overlook Its Ability to Modify the Class

Plaintiffs argue that the Court could have "amended the [class] definitions at its discretion" rather than denying certification altogether. (Pl. Recon. Br. 20). Plaintiffs, in their reply brief in support of certification, offered two potential avenues by which defects in the proposed class might be corrected: first, by bifurcating the case so that liability was determined on a classwide basis and damages on an individualized basis (Pl. Cert. Reply 8-12), and second, by striking from the class definition any class members who had not improperly been denied overtime compensation (*id.* at 3 n.7).

Bifurcation can be an efficient method of resolving concerns over the manageability of a class or collective action, but it requires that significant common questions going to liability be resolvable on a classwide basis,

14

and — for a Rule 23(b)(3) class — that those common questions predominate over the individualized injuries. Yet the Court found an absence of such common questions giving rise to common answers. *Ruiz I*, 2014 WL 1254820, at *7-12. Moreover, any such common answers would be swamped by the individualized questions going not merely to *damages*, but also to *liability*. *See id.* at *12 (noting "a significant number of necessarily individualized inquiries into liability that confirms the impracticability of proceeding as a class, largely concerning the questions of whether personal bankers worked unreported overtime, at whose direction, and with whose knowledge").[5] Individualized questions of damages presented merely an additional hurdle to demonstrating the predominance of classwide questions and the superiority of proceeding as a class. Bifurcation thus would not solve the core defects of Plaintiffs' proposed class.

Nor, as the Court noted in *Ruiz I*, could the Court define a class by excluding those members who were not improperly denied overtime. *See* 2015 WL 1254820, at *13. Such "fail-safe classes" present myriad problems, including the risk that plaintiffs might effectively litigate their claims without the risk of an adverse judgment: either they "win" and are in the class, which by definition cannot lose its claim, or they "lose" and are outside the class, and

---

5   Plaintiffs further suggest, in their reply brief in support of reconsideration, bifurcating for individualized determinations of defenses to liability as well. (Pl. Recon. Reply 10). Such a proposal, in addition to heightening the predominance and superiority concerns entailed by individualized damages inquiries, would still not remedy the absence of evidence of a common pattern or practice, and thus the class would still fail to meet the Rule 23(a)(2) requirement of commonality.

thus are not bound by an adverse decision.  *See generally* William B. Rubenstein, *Newberg on Class Actions* § 3:6 (5th ed. rev. 2015).  Perhaps more fundamentally, such a class definition would require an adjudication of the merits of each individual's claim to determine whether they are within the class, squandering whatever efficiency gains might be had from mass litigation.

Finally, Plaintiffs did raise the possibility of the creation of subclasses in their opposition to decertification of the FLSA collective action.  (Pl. Decert. Opp. 35).  Yet the Court considered and rejected this possibility in *Ruiz I*:

> [T]here is no apparent subdivision that would correct the fatal flaws in Plaintiffs' attempt to maintain a collective action.  As Citibank notes, looking at the 37 named Plaintiffs and Sample Opt-Ins who participated in discovery, there is only a single branch manager who oversaw more than one member of this group, having supervised three different Sample Opt-Ins at varying points in time.  Though consideration of the full class of 436 opt-in plaintiffs would no doubt reveal additional overlap, their employment would still have taken place at hundreds of branches scattered across the country under an even greater number of branch managers.  And even branch location might not suffice as a class metric, given the potential individualized defenses to liability.  Given that the number of necessary subclasses would likely approach the number of plaintiffs, there are no apparent efficiencies to be gained from proceeding collectively rather than by individual suit.

2015 WL 1254820, at *17.  Aside from urging the Court once more to find common classwide questions of liability, Plaintiffs offer the Court no reason to reconsider this reasoning or to doubt its equal applicability to the creation of multitudinous subclasses within New York and Illinois.

## CONCLUSION

For the reasons set forth in this Opinion, Plaintiffs' motion for reconsideration is DENIED. The Clerk of Court is directed to terminate Docket Entry 222.

The remaining parties are directed to appear before the Court for a status conference on **August 18, 2015, at 10:00 a.m.**, in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007.

SO ORDERED.

Dated: August 4, 2015
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge